

AO 241(Rev. 1/15) (Conviction, INND Rev. 8/16)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

*[This form is for prisoners to challenge <u>one</u> State court conviction or <u>one</u> probation/parole revocation proceeding.*
*If you want to challenge more than one, you must file a separate form for each one.*
*If you are challenging a prison disciplinary proceeding or a federal conviction, you need a different form.]*

AMENDED
## 28 U.S.C. § 2254 HABEAS CORPUS PETITION BY A PERSON IN STATE CUSTODY

| Name (under which you were convicted): | Case No. [*For a new case in this court, leave blank. The court will assign a case number.*] |
|---|---|
| Eric Benson Skeens | 3:21-CV-692-DRL-MGG |
| Place of Confinement : Indiana State Prison | |

*[Once you know your case number, it is <u>VERY IMPORTANT</u> that you include it on <u>everything</u> you send to the court for this case.*
*<u>DO NOT</u> send more than one copy of anything to the court. <u>NEATLY</u> print in ink (or type) your answers.]*

## CONVICTION AND SENTENCE

1. What State court entered the judgment you are challenging? Huntington Circuit Court

Criminal case number: 35C01-0812-FA-00073 . Did you plead guilty? ○ Yes. ● No.

Length of sentence: 187 years . Date of sentencing: 08 / 31 / 2009

Crime(s) for which you were sentenced: Child molesting,

_____

_____

## PROBATION/PAROLE REVOCATION

2. Are you challenging a probation/parole revocation? ● No. ○ Yes, the revocation hearing was held on: ___/___/_____

by _____ and I was revoked because _____

_____

*[For a challenge to a revocation proceeding, list <u>only</u> direct appeals, post-conviction relief petitions, and other collateral attacks that were associated with challenging the revocation.]*

## DIRECT APPEAL [*Do not include post-conviction relief petitions or other collateral attacks in this section.*]

3. Did you directly appeal to the Court of Appeals of Indiana? ○ No. ● Yes, case number: 35A05-0909-CR-515

Result: Affirmed & Reversed in part; remanded to 90 years . Date of result: 08 / 25 / 2010

Did you seek transfer to the Indiana Supreme Court? ○ No. ● Yes, case number: N/A

Result: Petition to transfer jurisdiction, denied . Date of result: 11 / 03 / 2010

Did you petition for certiorari to the United States Supreme Court? ● No. ○ Yes, case number: _____

Result: _____ . Date of result: ___/___/_____

*[<u>DO NOT</u> write in the margins or on the back of any pages. Attach additional pages if necessary.]*

AO 241(Rev. 1/15) (Conviction, INND Rev. 8/16)                                                                  page 2

## FIRST POST-CONVICTION RELIEF PETITION

4. Did you file a post-conviction relief petition in State court? ○ No. ● Yes, case number: 35C01-1101-PC-00004

Name of court: Huntington Circuit Court _____ . Date of filing: 01 /27 /2011

Result: Denied with prejudice _____ . Date of result: 12 /17 /2019

Did you appeal to the Court of Appeals of Indiana? ○ No. ● Yes, case number: 20A-PC-00686

Result: The judgement of the post-conviction court affirmed . Date of result: 11 /30 /2020

Did you seek transfer to the Indiana Supreme Court? ○ No. ● Yes, case number: N/A

Result: Petition to transfer jurisdiction, denied . Date of result: 07 /19 /2021

## OTHER COLLATERAL ATTACKS

5. Other than the cases listed above, have you filed anything else in State court challenging this conviction or revocation?

○ No. ● Yes, I filed: Successive Petition for Post-Conviction Relief . Case number: 21A-SP-01659

Name of court: Court of Appeals of Indiana _____ . Date of filing: 08 /02 /2021

Result: Declined to authorize the filing of petition . Date of result: 09 /02 /2021

Did you appeal to the Court of Appeals of Indiana? ○ No. ● Yes, case number: 21A-SP-01659

Result: Declined to authorize the filing of petition . Date of result: 09 /02 /2021

Did you appeal to the Indiana Supreme Court? ○ No. ● Yes, case number: N/A

Result: N/A _____ . Date of result: N/A / /

6. Have you challenged this conviction or revocation in federal court? ● No. ○ Yes, case number: _____

Name of court: _____ . Result: _____

7. Have you challenged this conviction or revocation in any other case or appeal? ● No. ○ Yes. [*Attach an additional sheet listing the nature of the proceeding, court, case number, file date, judgment date, and result.*]

## FILING FEE [*The fee for filing this habeas corpus petition is $5.00.*]

8. Are you paying the $5.00 filing fee?

● Yes, I have authorized prison officials to deduct the money from my prisoner trust fund account and send it to the court.

○ Yes, the money will be paid for me by _____ .

○ No, I am filing a Prisoner Motion to Proceed In Forma Pauperis because I have less than $15.00 in my inmate trust account AND I have received less than $15.00 a month during the past six months.

# GROUNDS RAISED IN THIS HABEAS CORPUS PETITION

[*State every ground on which you are being held in violation of the Constitution, laws, or treaties of the United States. Write the facts supporting each ground. Use simple English words and sentences. Do not use legal terms or quote from cases or statutes. If you want to submit a legal brief or arguments, attach a separate memorandum.*
**CAUTION:**
**If you do not present every ground in this petition, you may be barred from doing so later.**]

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

AO 241(Rev. 1/15) (Conviction, INND Rev. 8/16)                                                                    page 3

**GROUND ONE**: *[Briefly describe your claim.]* See attached pages

Supporting Facts: *[Do not argue or cite law. Just state the specific facts that support your claim.]*

Did you present Ground One to the Indiana Supreme Court?  ○ Yes - Explain when and how.  ○ No - Explain why not.

**GROUND TWO**: *[Briefly describe your claim.]* See attached pages

Supporting Facts: *[Do not argue or cite law. Just state the specific facts that support your claim.]*

Did you present Ground Two to the Indiana Supreme Court?  ○ Yes - Explain when and how.  ○ No - Explain why not.

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

AO 241(Rev. 1/15) (Conviction, INND Rev. 8/16)                                                    page 4

**GROUND THREE**: [*Briefly describe your claim.*] See attached pages

Supporting Facts: [*Do not argue or cite law. Just state the specific facts that support your claim.*]

Did you present Ground Three to the Indiana Supreme Court?  ◯ Yes - Explain when and how.  ◯ No - Explain why not.

**GROUND FOUR**: [*Briefly describe your claim.*] See attached pages

Supporting Facts: [*Do not argue or cite law. Just state the specific facts that support your claim.*]

Did you present Ground Four to the Indiana Supreme Court?  ◯ Yes - Explain when and how.  ◯ No - Explain why not.

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

AO 241(Rev. 1/15) (Conviction, INND Rev. 8/16)                                                              page 5

## TIMELINESS OF PETITION

> The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides that:
> (1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

9. Explain why this petition is timely under the provisions of 28 U.S.C. § 2244(d).

This petition was filed within the one-year period of limitation in accordance with 28 U.S.C. § 2244 (d)(2).

## RELIEF

I ask for the following relief: Vacate all five felony convictions and exonerate Skeens from all these child molesting charges _____ or any other relief to which I may be entitled.

## DECLARATION AND SIGNATURE

I placed this petition in the prison mail system on ____/____/20____ at _____ am/pm.
   [Do not fill in this date and time until you give this petition to prison officials to send to the court.]

I declare under penalty of perjury that all of the statements in this petition are true.

Eric Benson Skeens                                              196051
Signature                                                      Prisoner Number

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

GROUND ONE: The Huntington Circuit Court, through its agents (i.e. prosecutor, court reporter, judge), obstructed justice when it intentionally tampered with the audio recording of Skeens' trial, resulting in the loss of an important and substantial portion of testimony. Had it not been tampered with, the higher courts would have vacated Skeens' convictions because it tainted the jury pool and jury, causing a structural error that prevented a fair trial. Due to this illegal misconduct, the issue is now a procedural, fundamental and structural error that denied Skeens fundamental due process, a fair trial, appellate review and the effective assistance of trial, appellate and post-conviction counsel, thus violating the Indiana Constitution and the

Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Furthermore, the post-conviction court's decision was clearly erroneous because this claim is/was supported with multiple sources of corroberating evidence; and the Indiana Court of Appeals erred when it declined Skeens permission to file a successive petition for post-conviction relief in order to fully develop the facts to demonstrate that he is confined illegally and is entitled to relief, thus violating Bracy v. Gramley, 520 U.S. 899 (U.S. June 9, 1997). A FEDERAL INVESTIGATION AND REVIEW IS NECESSARY TO PREVENT A FUNDAMENTAL MISCARRIAGE OF JUSTICE!

Supporting Facts:

According to the "AFFIDAVIT OF BRENDA WAITE,"

PCR Exhibit 16; PCR Tr. Vol. II p. 4, Brenda Waite (Waite) was seated in the jury box being questioned as a potential juror during voir dire when she made the following statements to the courtroom:

"I was married to a police officer for about ten years. I worked security at Marshall Fields for twelve years. Ninety-nine percent of the time there is no evidence of sexual abuse but one-hundred percent of the time it occurred. I don't need to see any evidence to know he's guilty, because I know for a fact he is. Nobody makes up stories about being sexually abused. He is guilty beyond a reasonable doubt, he doesn't deserve a trial, and he should go straight to jail. I am

familiar with cases similar to this and they didn't have any evidence either but they were guilty. I have a friend who is a nurse at the Fort Wayne Sexual Assault Unit. She told me there is almost never any evidence in these types of cases and that is why people like him almost always get away with it."

Skeens recorded the majority of this testimony, in his notes, when it occurred, because: (1) it seemed illegal; (2) the prosecutor shook her head "no" to the court reporter; and (3) the court reporter reacted to said "no". Approximately six years later, Skeens received his transcript and discovered an important and substantial portion of Waite's testimony was missing after "Ninety-nine percent"

(DA Tr. p. 259). Skeens petitioned the court for the audio recording and found it missing from it as well. Upon further review, Skeens discovered that the judge wanted to punish Waite for "the rest of the afternoon" because she went into what trial counsel argued to begin with (DA Tr. p. 289-290); in his "Motion for Individual Voir Dire" (DA Tr. Appendix of Appellant Vol. II p. 215-216; DA Tr. p. 248-249). The current audio recording and transcript provides NO reason or justification for such remarks from the judge, thus corroberating Waite's affidavit.

Skeens reported all of the above-mentioned facts to his post-conviction counsel, Cynthia M. Carter (Carter). Carter found and spoke with Waite, wherein Waite confessed that she

made all of those statements, as recorded in her affidavit, and she even told Carter that she would say it all "AGAIN!".

Skeens repeatedly asked Carter to: (1) depose Waite, the jury, jury pool, trial counsel, court reporter and judge to corroborate Waite's affidavit; (2) subpoena them to testify at his hearing; (3) ask Waite to be present at his hearing, since Carter claimed she could not subpoena her to come to Indiana, due to Michigan law; (4) have the audio recording of his trial analyzed by an expert to corroborate it was tampered with; and (5) raise and present this issue in his appeal from the denial of his petition for post-conviction relief. Carter refused to obtain any of this favorable evidence because, as she

confessed to Skeens' mother, Carter believed Waite's affidavit was sufficient. Carter expressed the importance of Waite's affidavit in her letter to Skeens but "forgot" it at his hearing, wherein Skeens had to remind her to present it (PCR Tr. Vol. III p. 243). However, the Court found Waite's affidavit unreliable because the State argued that it never had the opportunity to depose her; nor was she present in the courtroom to testify. Therefore, Skeens was prejudiced because Carter denied him all of this evidence, all due to Carter's false belief that Waite's affidavit would be sufficient; thus failing to properly address this issue resulting in Skeens convictions being upheld because Carter denied him the evidence to prove he is confined

illegally and is entitled to relief. Further, Carter went against Skeens' express instruction when she failed to present this issue on appeal, thus denying Skeens appellate review and the ability to address it in his "Petition To Transfer" to the Indiana Supreme Court.

Furthermore, the post-conviction court's cure was clearly erroneous because it did NOT address the issue, that is clearly supported with multiple sources of corroberating evidence, that Waite's testimony was tampered with, thus missing from the audio recording and transcript of Skeens' trial. PCR Tr. Vol. III p. 243-247.

The Indiana Court of Appeals erred when it declined Skeens permission to file a successive petition for post-conviction relief in order to

fully develop the facts to prove that the audio recording of his trial was tampered with, thus denying him the evidence needed to demonstrate that he is confined illegally and is entitled to relief. This Court is now liable for all such crimes by the Huntington Circuit Court because it chose to ignore a "whistle-blower" and all the aforementioned evidence without the slightest investigation into this illegal misconduct.

Did you present Ground One to the Indiana Supreme Court?

YES. On September 13, 2021, Skeens put in the prison mailing system an "Emergency Petition to Transfer" to the Indiana Supreme Court from the denial of the Court of Appeals of Indiana's decision to decline Skeens authorization to file a successive petition for post-conviction relief (Cause No.: 21A-SP-01659). Skeens has not yet received a cause number or filing date from the Indiana Supreme Court and assumes the result is pending.

GROUND TWO: The trial proceedings were in violation of Brady v. Maryland and Napue v. Illinois, when by official misconduct, the State's agent, then-detective Melbourne Hunnicutt committed perjury multiple times and his false testimony led to a critical and outcome determinative violation; and when the prosecutor, Amy C. Richison, committed prosecutorial misconduct when she knowingly and repeatedly lied to the Court and further elicited this false testimony from its agent (Hunnicutt) to suppress exculpatory and impeaching evidence from discovery. This illegal misconduct obstructed justice, violated the Confrontation Clause, caused a procedural, fundamental and structural error, thus denying Skeens fundamental due process, a fair trial and the effective assistance of counsel. This is in violation of the Indiana

Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## Supporting Facts:

On December 5, 2008, during K.W.'s forensic interview, K.W. disclosed being subjected to numerous pornographic films, including one titled "real sex" and another with "four different couples doing it, one out in the pool, one in the living room, one in a bedroom and one in a different living room," K.W. further testified about these same films at trial; PCR Exhibit 7 and DA Tr. p. 539, 543.

On December 10, 2008, the State searched Skeens' apartment and seized his computer, Playstation, rolls of undeveloped film, DVD's, CD's, 32 VHS tapes and much more (PCR Exhibit 11;

PCR Tr. Vol. II p. 66-67). All of these items were analyzed by the State and no pornographic items were found (PCR Exhibit 5; PCR Tr. Vol II p. 43 and PCR Exhibit 14; PCR Tr. Vol. II p. 91-93).

However, K.W.'s mother admitted that she watches pornographic films on her computer and that K.W. had access to them (PCR Brief of Appellee p. 27). On March 30, 2009, a hearing was held in order to obtain and search mother's computers to find the film "real sex" and the other with "four couples" along with the others K.W. described. Skeens needed this evidence to confront and cross-examine K.W. to impeach her, thus mounting a strong defense by proving Skeens did not show her these films and to explain how K.W. could testify the way she did.

The State first tried to suppress mother's computers by claiming Skeens did not pass the "three-part test" (DA Tr. p. 81-82). After Skeens overcame this hurdle, the State then tried to suppress mother's computers by claiming Skeens was on a "fishing expedition" (DA Tr. p. 83). After Skeens overcame this second hurdle, the TRIAL JUDGE deemed mother's computers "material" evidence and said the films must be somewhere else because Skeens did NOT have them. Knowing this must be true, the State committed prosecutorial misconduct when it knowingly and repeatedly lied to the Court and claimed that K.W. never claimed to be subjected to pornography in Huntington and that all the computers and items seized from Skeens' apartment only pertain to

Kosciusko County (DA Tr. p. 89-91, 133). It further committed prosecutorial misconduct when it knowingly allowed and elicited false testimony from Hunnicutt to keep mother's computers suppressed (PCR Brief of Appellant p. 11-28, 43, 46; PCR Reply Brief of Appellant p. 4-10, 12). Skeens would have overcome this third hurdle, had Hunnicutt testified truthfully. Instead, Hunnicutt committed official misconduct when he committed perjury numerous times using the same lie that the State iniated, thus helping the prosecution suppress this material evidence (DA Tr. p. 103-117).

   Again, the TRIAL JUDGE, in his ORDER, stated, "The defense argued that the victim described movies and that gave relevance to its request to examine the computers," but he denied the

motion because Hunnicutt testified the "Computers had to do with a Kosciusko County case, and not the matter before the court" (DA Tr. Appendix of Appellant Vol. 1 p. 86). The State now concedes that Hunnicutt's perjury was the sole, direct, and proximate cause for the trial court's denial of the non-party discovery request to obtain mother's computers (PCR Brief of Appellee p. 24).

Now, the State has the audacity to claim a Brady violation did not occur because "Skeens offers no evidence that the State ever possessed or searched mother's computers." That is NOT the issue! The issue is that the State did NOT want to possess or search mother's computers, especially since the State did NOT find the pornography they were looking for in Skeens' apartment.

The State had full Knowledge that the only other logical place that the films, K.W. watched, could be were on mother's computers; Knowing this and that if Skeens were to obtain such exculpatory and impeaching evidence, it would have severely diminished their case against Skeens. With this in mind, the State placed Skeens in grave peril when it Knowingly and repeatedly: (1) lied to the Court; and (2) elicited false testimony from Hunnicutt; in order to suppress such favorable evidence as to change the outcome of the trial. Again, the State had full Knowledge that it was preventing all of the films K.W. identified from being discovered and with them, the Knowledge and insight she gained from watching them. The full extent of what K.W. accessed and when could only have been acertained

by examining mother's computers.

Furthermore, Hunnicutt did NOT testify at trial because he had huge credibility problems, including: (1) tampering with and planting evidence; (2) falsifying reports; (3) grooming K.W.; (4) committing perjury on multiple occassions and at multiple pre-trial hearings, in order to: (a) obtain a search warrant; (b) suppress favorable evidence; and (c) distance himself from K.W. on specific dates; and (5) watching pornographic films, at the police department, while on duty, during his investigation of Skeens (PCR Tr. p. 145). All of these claims are corroberated with the following information:

On December 5, 2008, K.W. met with the prosecutor, Hunnicutt and interviewer (DA Tr. p. 436-437). They took K.W. to the "back" by

herself (DA Tr. p. 481). Wherein K.W. was subjected to "interviews" (PCR Exhibit 2; PCR Tr. Vol. II p. 9-10). The interviewer used the term "specific interview" (DA Tr. p. 438), indicating multiple interviews with K.W. During these off-camera interviews, K.W. was groomed when she answered their questions in the "spiral notebook with a black cover" (notebook), which was entered into an evidence locker, according to the "Huntington Police Department Evidence Continuity Record" (HPDEC Record). Along with the notebook, four other items were entered into the same locker on December 5, 2008; the difference being, the notebook is not seen in K.W.'s videotaped interview, like the other four items, thus corroberating an off-camera interview.

Further, in Hunnicutt's narrative report, he

claims he spoke to K.W. on December 8, 2008,
when he claims he asked K.W. if she kept a record
of what Skeens did to her and that is when K.W.
gave him the notebook (PCR Exhibit 12; PCR Tr.
Vol. II p. 84). This proves: (1) Hunnicutt tampered
with and planted evidence, because the notebook
was collected and entered into an evidence locker
three days earlier on December 5, 2008 as
recorded in the HPDEC Record; (2) he falsifyed
his report to make it appear as if K.W. kept a
record of being molested to corroborate her
allegations and to hide the fact she was groomed;
and (3) he committed perjury when he said he had
NOT spoke to K.W. since December 5, 2008 (DA Tr.
p. 95) and when he said he never spoke to her
prior to December 10, 2008 (DA Tr. p. 118); but

he spoke to her and drove her to her medical exam on December 8, 2008, which is after the 5th and prior to the 10th.

Furthermore, the State repeatedly tried to have Skeens' original petition for post-conviction relief dismissed but when it failed, it lied, again, and claimed Skeens requested it be dismissed. This illegal misconduct dismissed his petition. Skeens repeatedly tried to fix this issue but the Court would not respond to any of his letters; only once counsel was obtained was the issue resolved. See the "State's Response To Motion To Amend Petition" filed on December 28, 2018, for a summary of this cover-up.

Due to all this illegal misconduct by the State and its agents, which included: (1)

suppressing, tampering with, planting and withholding favorable evidence; (2) lies; (3) perjury; (4) falsifying documents; (5) grooming the child victim (the sole witness) and (6) all the other reasons detailed in this petition, the State should now be estopped from asking Skeens to overcome any "hurdle". Skeens cannot explain how or why K.W. gave such details because the State and its agents literally interfered in every aspect of the investigation to hinder Skeens' defense because the State wanted its victory no matter the cost.

Did you present Ground Two to the
Indiana Supreme Court?

Yes. Skeens filed his "Petition To Transfer"
to the Indiana Supreme Court on June 29,
2021.

GROUND THREE: The State violated Indiana Rule of Trial Procedure 26, specifically 26(B)(4)(a)(i), when it withheld expert witness testimony that was specifically requested for on multiple occassions, thus denying Skeens to properly prepare for and confront its expert witnesses, which prevented Skeens the effective assistance of counsel. This further violated U.S.C.S. Federal Rule of Criminal Procedure 16 and specifically 16(a)(1)(G), along with LR 35-CR-21-39, the local rule of the Huntington Court for the same reason. Furthermore, the local rule was in conflict with Rule 26 and 16 because Skeens had to provide all of his witnesses testimonies to the State. This denied Skeens fundamental due process, a fair trial, and the effective assistance of counsel. This violated the Confrontation Clause, the Indiana Constitution and the Fifth, Sixth and Fourteenth Amendment of the

United States Constitution. This is a procedural, fundamental and structural error and was in violation of Brady v. Maryland. This further prejudiced Skeens' decision making process during plea negotiations.

Supporting Facts:

On December 16, 2008, and March 5, 2009, Skeens' trial counsel filed motions requesting "verbatim" written statements and opinions of expert witnesses (DA Tr. Appendix of Appellant Vol. 1 p. 22-23, 56-57). The State refused to provide such evidence because it was part of its "trial strategy" (DA Tr. Appendix of Appellant Vol. 1 p. 145). The State chose to violate all of said rules when it provided only the names and addresses of its experts (DA Tr. Appendix of Appellant Vol. 1 p. 111-112). However, Skeens was forced to obey said local rule, even

though it conflicted with said Rules 26 and 16,
when Skeens provided all of his witnesses testimonies
to the State (DA Tr. Appendix of Appellant Vol. 1 p
150-151, 123-125, 201-203).

To further hinder Skeens' defense, the State
provided him with a report of K.W's forensic
medical exam that repeatedly noted "NO INJURY" from
head to toe and specifically noted K.W's hymen
"cresentic, smooth edges" (DA Tr. Appendix of Appellant
Vol. II p. 325-327). This led trial counsel to convince
not to hire a doctor but instead to use the State's
expert that performed said exam because it would
be best for the defense; he told Skeens their expert
would testify that "everything she [K.W.] said"
is "medically inconsistent," which led Skeens to
believe it would prove that K.W. was a virgin (PcR

Exhibit 8; PCR Tr. Vol. II p. 50, 56). Trial counsel further convinced Skeens that "normally cases like this they have a lot of good hard evidence, they have trauma to the vagina, the anus and they have porn on the computer and... witnesses" (PCR Exhibit 6; PCR Tr. Vol. II p. 45).

Finally, at trial, the State revealed its expert's testimony, when it explained to the jury K.W.'s said exam; the expert told the jury that she teaches doctors about myths (DA Tr. p. 566), for example, the hymen or "cherry" doesn't have to "pop" at intercourse (DA Tr. p. 587-588). "The most recent study out currently says ninety to ninety-five percent of pre-pubertal children, females, do not have any type of genital injury" (DA Tr. p. 592) and for these reasons "I did not" expect to find any injuries to

K.W.'s genitals (DA Tr. p. 594).

The State argues that its violations of said rules did not prejudice Skeens because his trial counsel "anticipated" this expert's testimony (PCR Tr. Vol. III p. 85). However, this contradicts all of what trial counsel told Skeens, as documented above. Whether or not trial counsel anticipated this expert's testimony, Skeens was prejudiced because the State and trial counsel misled Skeens as shown above; it further prejudiced Skeens because it caused Skeens to deny a plea agreement for a 40 year sentence instead of his 187 year sentence. It is possible that Skeens could have negotiated a much better plea agreement than the 40 years, which he would have, had the State not withheld this experts testimony.

The State should now be estopped from claiming Skeens was not prejudiced when it withheld its experts testimony, thus violating said rules as part of its "trial strategy" in order to mislead the defense so that it could not properly prepare for and confront its expert, thus preventing Skeens the effective assistance of counsel (i.e. DA Tr. p. 592).

Did you present Ground Three to the

Indiana Supreme Court?

Yes. Skeens filed his "Petition To Transfer"

to the Indiana Supreme Court on June 29, 2021.

GROUND FOUR: Ineffective assistance of trial counsel. Trial counsel, Richard J. Thonert, failed to properly represent Skeens during pre-trial and trial proceedings, thus preventing a fair trial and violating the Indiana Constitution and the United States Constitution's Sixth Amendment.

## Supporting Facts:

(1) Trial counsel failed to object and move for a mistrial after Waite tainted/poisoned the jury pool and jury with her testimony as recorded in her affidavit. Skeens renews all of the supporting facts in ground one to support this issue.

(2) He failed to preserve issues related to mother's computers. Skeens renews ground two in support of all that should have been presented to the Court and jury; further, he failed to obtain this "material" evidence simply because he did not present Hunnicutt's report to him, as accomplished at PCR Tn. Vol. III p. 152.

(3) He failed to obtain police disciplinary records that were contemporaneous with the case at bar. Skeens renews ground two in support of all that should have been presented to the Court and jury; and the cumulative effect of all this illegal misconduct prejudiced Skeens, thus preventing a fair trial.

(4) He failed to properly prepare for and object to expert witness testimony. Skeens renews ground three in support of all that should have been presented to the Court to obtain a mistrial and other relief.

(5) He bolstered K.W's credibility and diminished the prosecutions' burden to prove guilt when, in closing, he told the jury, "I believe her, it's more likely than not," (DA Tr. p. 673); afterwards, the State told the jury "if you believe her" too "you return a verdict of guilty" (DA Tr. p. 686). This certainly influenced the jury,

especially the ones teetering on the scales of guilty or innocent.

(6) He failed to prepare for and lodge a vigorous defense, which should have included exculpatory witnesses and the cross-examination of K.W.

Skeens' son, J.S., was a fact and occurrence witness, whose testimony would have been important; because due to the lack of it, the Court of Appeals of Indiana used K.W.'s false testimony to uphold Skeens' convictions. K.W. testified that he would lock J.S. out of the room to molest her (DA Memorandum Decision p. 5; DA Brief of Appellee p. 4). However, J.S. testified that Skeens never locked him out of any room (PCR Tr. Vol. II p. 175, 180).

First, the State argues it was trial strategy not to call J.S. as a witness due to his age (less than

20 days from his 7th birthday) and his ability to testify. However, trial counsel never met with or spoke to J.S. to determine his ability to testify or to find what his testimony would have been; as J.S. testified, No attorney ever spoke to him (PCR Tr. Vol. III p. 174), therefore, his trial strategy was guesswork.

Second, the State argues J.S. is now bias due to time and life experiences. However, J.S. testified that he would "absolutely not" make stuff up to help Skeens and that all of his testimony is from his own "personal Knowledge" (PCR Tr. Vol. III p. 180). Further, J.S. demonstrated his excellent memory by providing detailed memories and events that occurred when he was four, five and six years old; thus passing the State's exam (PCR Tr. Vol. III p. 175-177).

Finally, the actual reason that trial counsel

never spoke to J.S. is because, as he told the jury, he believed K.W. (DA Tr. p. 673) and he reiterated this fact multiple times. He told Skeens "watch that DVD, they will find you guilty" (PCR Exhibit 8; PCR Tr. Vol. II p. 55) and again to his post-conviction counsel and the Court when he said "her own statement indicated that there was an indentation" (PCR Tr. Vol. III p. 108). This is why he believed it would have been "risky" to call J.S. (PCR Tr. Vol. III p. 86); it had nothing to do with his age and ability to testify, it all boiled down to trial counsels personal belief and prejudice, thus creating a conflict of interest that denied Skeens impeaching evidence and his right to confront and cross-examine K.W.

Therefore, the State should now be estopped from such arguments as these, especially in light

of all of its misconduct of which Skeens now renews

herein using all of Ground One, Two and Three.

Furthermore, trial counsel, again, denied Skeens

his right to confront and cross-examine K.W. as

he admitted (PCR Tr. Vol. III p. 108). Skeens told trial

counsel that there is no "indentation" on his penis as

K.W. described. However, Skeens explained to him in

detail, that he had a birthmark, in the shape of a

ring, around the shaft of his penis and discoloration

on the head of it. Trial counsel compared K.W.'s

ability to describe his penis with that of a "line-up".

He warned Skeens that if he asked her and she described

these details, it would "nail your coffin." Then he asked

Skeens, do you want me to ask her? Skeens replied,

"YEAH! ask her." Then he said he would (PCR

Exhibit 8; PCR Tr. Vol. II p. 56, 58).

Instead, trial counsel chose to deny Skeens this "line-up", thus denying him impeaching evidence and his right to confront and cross-examine K.W.; all due to trial counsel's personal belief and prejudice, as he further indicated (PCR Tr. Vol. III p. 107-108). Further, K.W.'s drawing and description as "really hairy" (PCR Exhibit 15; PCR Tr. Vol. II p. 94 and PCR Exhibit 7) did not remotely match that of Skeens.

(7) He failed to investigate K.W.'s claim about being molested by somebody at school; if found false, could have been impeaching evidence (PCR Exhibit 7).

(8) Trial counsel failed to investigate K.W.'s claims that: (a) she did not have sex with Skeens; and (b) her best-friend, M.H., had sex with her father and told K.W. about it (PCR Exhibit 7).

If K.W.'s claim is true, that she did NOT

have sex with Skeens and if her testimony is true, that Skeens did not penetrate her with his finger (DA Tr. p. 530-532; DA Brief of Appellant p. 10), then that would explain why K.W.'s hymen was "perfect" (DA Tr. p. 590) and why "No INJURY" was found.

If K.W.'s other claim is true, that M.H. told her about her abuse, that would explain K.W.'s ability to testify with such details. The knowledge and insight K.W. gained from M.H. is unknown and for this reason, so are the answers that the State continues to ask Skeens to provide. The full extent of what K.W. was exposed to by M.H. and how often she was exposed to it could only have been ascertained by interviewing M.H. and K.W.

44

Did you present Ground Four to the Indiana

Supreme Court?

Yes. Skeens filed his "Petition To Transfer" to

the Indiana Supreme Court on June 29, 2021.

GROUND FIVE: Ineffective assistance of appellate counsel.

Appellate counsel, Jeremy Nix, failed to properly represent Skeens in his direct appeal thereby violating the Indiana Constitution and the United States Constitution's Sixth Amendment right to counsel and prejudiced the outcome of the proceedings, resulting in Skeens' convictions being upheld.

## Supporting Facts:

(i) He failed to properly represent Skeens in order to preserve evidence and to pursue the issues in this petition, when he knowingly went against the known wishes and express directions of Skeens because as he stated, "it was not part of my contract" (PCR Tr. Vol. III p. 118-119). This prejudiced Skeens because some, if not all, of the eyewitnesses, including Brenda Waite, have either relocated and/or

is unable to testify to corroberate Waite's affidavit and her outburst as recorded in Ground One; and mother's computers are now unobtainable pertaining to Ground Two. It further prejudiced Skeens because of the passage of time to obtain funds to hire counsel, thus resulting in loss of evidence, witnesses, faded memories, etc.

(2) He failed to raise any issues preserved at trial, specifically "a mistrial" (DA Tr. p. 584) and to "studies" (DA Tr. p. 592) by an expert who was never disclosed as requested by trial counsel, prior to trial, thus violating all of said rules in Ground Three; of which Skeens renews, herein.

(3) Herein, Skeens renews Ground Four and applies them to appellate counsels failure.

47

Did you present Ground Five to the Indiana
Supreme Court?

Yes. Skeens filed his "Petition To Transfer" to
the Indiana Supreme Court on June 29, 2021.

GROUND SIX: Ineffective assistance of post-conviction counsel. Post-conviction counsel, Cynthia M. Carter, failed to properly represent Skeens during post-conviction proceedings and forwent meritorious claims against the known wishes of her client and these acts, errors and omissions worked to Skeens' actual and substantial disadvantage, resulting in his convictions being upheld.

Supporting Facts:

Carter was ineffective for not prevailing on Grounds One, Two, Three, Four, Five and Nine in this petition because her arguments were so vague and non-cogent, the Courts were unable to properly address them; the Court of Appeals of Indiana even made a similar statement (PCR Memorandum Decision p. 5).

She failed to argue and present evidence, that Skeens paid her to present and that Skeens signed off on, in her amended petition for post-conviction relief. Skeens needed these arguments and evidence to properly address the illegal misconduct he addressed in this petition and specifically in Ground Two; had this been done, Skeens would not have had to submit his motion to expand the record on September 16, 2021. This prejudiced Skeens because this evidence is currently unavailable.

Herein, Skeens renews all the Grounds in this petition, excluding Seven and Eight, and applies them to her failure.

Did you present GRound Six to the Indiana Supreme Court?

No, in part. Skeens could not address this issue because he was being represented by this attorney at these proceedings.

Yes, in part. Skeens filed an Emergency Petition to Transfer to the Indiana Supreme Court, which addressed her failures in Ground One. Skeens put this emergency petition in the prison mailing system on September 13, 2021 and he doesn't Know if its been filed yet.

GROUND SEVEN: The State did not present sufficient evidence that Skeens committed five acts of child molesting where there was no physical evidence supporting the convictions which were based solely on the uncorroborated testimony of the nine-year-old victim and where the victim testified that he did not penetrate her sex organ with an object. The decision of the Court of Appeals of Indiana conflicts with the precedent of the Indiana Supreme Court and the United States Supreme Court.

Supporting Facts:

There was insufficient evidence to find that Skeens penetrated the sex organ of K.W. with an object, or that he committed any other act that would constitute child molesting under the Indiana Code. Although even the slightest evidence of

penetration is sufficient to establish criminal deviate conduct, K.W. testified that Skeens touched the outside of her privates with his finger and there was no physical evidence to support a finding that Skeens penetrated K.W.'s sex organ. In addition, K.W.'s testimony was the sole evidence that Skeens committed any act that would constitute child molesting. K.W.'s testimony was completely incredulous, as she testified that much of the abuse occurred while Skeens five/six-year-old son was present in the home. Thus, the State failed to present sufficient evidence that Skeens committed the offense of child molesting.

Did you present Ground Seven to the Indiana

Supreme Court?

Yes. Skeens, by counsel, filed his Petition

To Transfer to the Indiana Supreme Court

on September 24, 2010.

GROUND EIGHT: The Trial Court and the Court of Appeals of Indiana abused its discretition and entered an inappropriate sentence for Skeens when they failed to consider mitigating circumstances clearly supported by the record and considered improper aggravating circumstances and imposed enhanced, consecutive sentencing that is inappropriate and conflicts with prior decisions of these Courts and the precedent of the Indiana and United States Supreme Courts.

Supporting Facts:

Skeens submitted several proposed mitigating factors that were supported by the record. Several of these sentencing factors were set out in Indiana Code § 35-38-1-7.1 (b)(2009). Those factors included a complete lack of criminal and juvenile

history ((b)(6)), the likelihood that he would respond positively to probation ((b)(7)), the low adult risk assessment score (of three) as provided by the probation department ((b)(7)), that the offence was unlikely to recur ((b)(2)), that he had custody of his son, which would result in undue hardship if imprisoned for a substantial period of time ((b)(10)), and that he had a steady employment history. I.C. § 35-38-1-7.1 (b). After considering the proposed factors, it was found that only the lack of criminal history was mitigating. However, the balance of the mitigating factors proposed were valid and supported by the record.

In regard to aggravating circumstances, the trial court listed "position of trust; position of care; custody and control; repeated acts; age of

victim being 7/8 years-old"; threats to the victim"
(DA Tr. p. 715-716). It is well settled that a trial
court may not use elements of a crime to enhance
a sentence. In this case, the age of K.W. being less
than fourteen years of age, was an element of each
count of child molesting. Skeens indicated to the
court that the age of the victim was an element of
the crime and an improper aggravating circumstance
(DA Tr. p. 714). In some cases, the trial court can use
the age of the victim as an aggravating circumstance
if it was also an element of the crime, but the
trial court must articulate particularized circumstances
related to the crime before it can do so. In this case
the court simply stated, "Um, the victim was less than
twelve years of age that the statute speaks of, but
in fact in this case the victim was between seven and

eight years old, which is very young. Uh, much younger than the statute even requires (DA Tr. p. 715). However, the court did not articulate how the age of the victim, being younger than that by statute, created a particularized circumstance that made the crime more severe. Thus, the age of K.W. cannot serve as an aggravating circumstance.

The court stated at sentencing that, "I find that there were aggravators and those include the position of trust, which I give great weight. Position of care, control and custody which goes along with the trust, which I give great weight" (DA Tr. p. 715). One statutory aggravating circumstance is that "the person was in a position having care, custody, or control of the victim of the offense" (Ind. Code § 35-38-1-7.1 (2009)). In fact, the State specifically cited section 7.1 when

it referred to the "position of trust" aggravating circumstance (DA Tr. p. 712). The position of trust aggravator is frequently cited by sentencing courts where an adult has committed an offense against a minor and there is at least an inference of the adult's authority over the minor. However, the court did not articulate how the "position of trust" and the "position of care, custody and control" were distinguished as aggravating circumstances. The court simply listed both factors and indicated, multiple times, that it gave both aggravating circumstances "great weight". The Court of Appeals of Indiana has reviewed the "position of care" aggravator under the same decisions reviewing the "position of trust" aggravator. The two aggravating circumstances are synonymous and should not have been considered two seperate

aggravating circumstances. Thus, it was an abuse of discretion for these courts to list both "position of trust" and "position of care, custody and control" as aggravating circumstances and to assign them both "great weight."

60

Did you present Ground Eight to the Indiana Supreme Court?

Yes. Skeens, by counsel, filed his Petition To Transfer to the Indiana Supreme Court on September 24, 2010.

61

GROUND NINE: The cumulative effect of all the
Grounds in this petition including: (1) obstruction
of justice; (2) illegal misconduct by the State
and its agents; and (3) ineffective assistance of
counsel, etc. prejudiced Skeens. The total effect
of all of this prevented Skeens from obtaining
the proper relief from the Courts.

Supporting Facts:

Herein, Skeens renews all of the Grounds in this
petition and presents to this Honorable Court, that
had true justice prevailed, Skeens' convictions
would have been vacated on appeal or
perhaps prevented altogether.

62

Did you present Ground Nine to the
Indiana Supreme Court?
Yes. Skeens filed his Petition To Transfer to
the Indiana Supreme Court on June 29, 2021.

# Course of Proceedings

On July 23, 2009, Petitioner was found guilty by a jury of four counts of Class A felony child molesting and one count of Class C felony child molesting (DA App. 6-7). On August 21, 2009, Petitioner received consecutive sentences of 45 years on each Class A felony conviction and seven years for the Class C felony conviction (DA App. 301-02). Petitioner's convictions were affirmed on direct appeal, but his sentence was found to be inappropriate. Skeens v. State, No. 35A05-0909-CR-515, slip op. at 27-28 (Ind. Ct. App. Aug. 25, 2010). The Court of Appeals of Indiana remanded with instructions that the trial court impose a sentence of 90 years. Id. The Indiana Supreme Court denied Petitioner's request for further review on transfer (DA Docket).

On January 27, 2011, Petitioner filed a pro se Petition for Post-Conviction Relief (PCR App. Vol. II 16-35). The State filed its Answer to the pro se petition on February 1, 2011. Public Defender Emily Witney entered her appearance on behalf of Petitioner on March 24, 2011. On April 8, 2013, Public Defender J. Jeffreys Merryman entered his Substitution of Appearance on behalf of Petitioner but filed a motion to withdraw appearance on June 27, 2013. Skeens proceeded pro se for a few years. On January 13, 2014, Petitioner filed a pro se Motion for Indefinite Continuance and the Court granted this motion on January 27, 2014. On April 12, 2017, Attorney Cynthia M. Carter entered her Appearance on behalf of petitioner. Petitioner filed amended PCR petitions on November 20, 2018, and July 23, 2019 (PCR App. Vol. II 112-22, 198-206). Following a bifurcated evidentiary hearing on August 13 and September 24, 2019, the PCR Court issued findings of fact and conclusions of law on December 17, 2019, denying relief (PCR App. Vol. II 13-14, III 61-84). Petitioner filed a motion to correct error on January 16, 2020, which was denied on February 24, 2020

(PCR App. Vol. II 14-15, III 85-89, 94). On March 20, 2020, Petitioner timely filed his Notice of Appeal but the Court of Appeals of Indiana affirmed the judgement of the post-conviction Court on November 30, 2020. On December 21, 2020 Skeens sought transfer to the Indiana Supreme Court. On January 26, 2021 Petitioner was notified of a defect and Petitioner corrected the defect on the same day and it was filed on February 2, 2021. On June 29, 2021, the Indiana Supreme Court granted Petitioners "Motion for Leave to Proceed on Appeal in Forma Pauperis (filed May 12) and his "Verified Petition for Permission to File Belated Petition to Transfer and his "Petition To Transfer" (filed February 2) and was directed to transmit this case on transfer. On July 19, 2021, the Indiana Supreme Court denied Petitioner's request for further review on Transfer (DA Docket).

On August 2, 2021, Petitioner filed a "Form for Successive Petition for Post-Conviction Relief Rule 1 Petitions" and a Successive petition to the Court of Appeals of Indiana seeking permission to file this petition but this court denied him permission on September 2, 2021. On September 13, 2021, Petitioner put in the prison mailing system an Emergency Petition to Transfer to the Indiana Supreme Court seeking permission to file a successive petition for post-conviction relief because of the illegal misconduct of the State and its agents; the file date and result is unknown to Petitioner as of this day of September 27, 2021.

On September 16, 2021, Petitioner E-filed his "28 U.S.C. § 2254 Habeas Corpus Petition By A Person in State Custody" with the United States District Court, Northern District of Indiana along with the #5⁰⁰ filing fee via the prison remittance slip. Petitioner further filed with this petition: (a) a petition to proceed in Forma Pauperis; (b) a motion to appoint counsel; (c) and a motion to expand the record. On September 21, 2021 the Court "Strikes the Petition" and denies the remaining but grants Petitioner

until October 22, 2021, to file an amended habeas corpus petition on the appropriate form. The Court, further, in its Order stated Petitioner needs to "provide the relevant dates for all of his State Court filings," thus this "Course of Proceedings."