

FILED

JAN ~ 0 2010

CLERK OF THE
INDIANA SUPREME COURT
COURT OF APPEALS

**IN THE INDIANA COURT OF APPEALS**

**CAUSE NO. 35A05-0909-CR-00515**

| | |
|---|---|
| Eric Benson Skeens | )   **Appeal from the Huntington Circuit Court** |
|     **Appellant-Defendant below** | ) |
| | ) |
| **V.** | )   **Lower Court Cause No. 35C01-0812-FA-00073** |
| | ) |
| **State of Indiana** | )   **The Honorable Thomas M. Hakes, Judge** |
|     **Appellee-Plaintiff below** | ) |

## BRIEF OF APPELLANT

Jeremy K. Nix
Attorney ID#24330-35

MATHENY, HAHN, DENMAN & NIX, L.L.P.
45 West Market Street
P.O. Box 191
Huntington, IN 46750
Telephone: (260) 356-7030

Attorney for Appellant

FILED
JAN 20, 2010

# IN THE INDIANA COURT OF APPEALS

## CAUSE NO. 35A05-0909-CR-00515

| | |
|---|---|
| **Eric Benson Skeens** | ) **Appeal from the Huntington Circuit Court** |
| **Appellant-Defendant below** | ) |
| | ) |
| **V.** | ) **Lower Court Cause No. 35C01-0812-FA-00073** |
| | ) |
| **State of Indiana** | ) **The Honorable Thomas M. Hakes, Judge** |
| **Appellee-Plaintiff below** | ) |

## BRIEF OF APPELLANT

Jeremy K. Nix
Attorney ID#24330-35

MATHENY, HAHN, DENMAN & NIX, L.L.P.
45 West Market Street
P.O. Box 191
Huntington, IN 46750
Telephone: (260) 356-7030

Attorney for Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... ii

I.   STATEMENT OF THE ISSUES ...........................................1

II.  STATEMENT OF THE CASE .............................................1

III. STATEMENT OF THE FACTS ...........................................4

IV.  SUMMARY OF THE ARGUMENT ......................................8

V.   ARGUMENT ..............................................................9

     A.  THERE WAS INSUFFICIENT EVIDENCE TO FIND THE DEFENDANT
         COMMITTED CHILD MOLESTING. ...................................9

         1. There was no evidence that Skeens penetrated the sex organ of K.W.
         with an object. ....................................................8

         2. The uncorroborated testimony of K.W. was insufficient to prove that
         Skeens committed child molesting .................................11

     B.  THE TRIAL COURT ABUSED ITS DISCRETION AND ENTERED AN
         INAPPROPRIATE SENTENCE FOR SKEENS ...........................13

         1. The Trial Court failed to consider mitigating circumstances clearly
         supported by the record and considered improper aggravating
         circumstances. ...................................................13

         2. The 187- year sentence imposed inappropriate in light of the nature of
         the offenses and Skeens' character. ...............................16

VI.  CONCLUSION .......................................................19

i

## TABLE OF AUTHORITIES

**INDIANA CASES**                                                                 **Pages**

Anglemyer v. State, 868 N.E.2d 482 (Ind. 2007)                                      13

Buchanan v. State, 767 N.E.2d 967 (Ind. 2002)                                       18

Dinger v. State, 540 N.E.2d 39 (Ind. 1989)                                          9

Edrington v. State, 909 N.E.2d 1093 (Ind. Ct. App. 2009)                            16

Harris v. State, 897 N.E.2d 927 (Ind. 2008)                                         18

Johnson v. State, 687 N.E.2d 345 (Ind. 1997)                                        15

Kien v. State, 782 N.E.2d 398 (Ind. Ct. App. 2003)                                  14

Laster v. State, 918 N.E.2d 428 (Ind. Ct. App. 2009)                                14, 18

Link v. State, 648 N.E.2d 709 (Ind. Ct. App. 1995)                                  9

Monegan v. State, 756 N.E.2d 499 (Ind. 2001)                                        13

Monroe v. State, 886 N.E.2d 578 (Ind. 2008)                                         19

Neale v. State, N.E.2d 635 (Ind. 2005)                                              17

Perry v. State, 638 N.E.2d 1236 (Ind. 1994)                                         9

Rivers v. State, 915 N.E.2d 141 (Ind. 2009)                                         14, 17, 18

Rodriguez v. State, 785 N.E.2d 1169 (Ind. Ct. App. 2003) trans. denied.            16

Rodriguez v. State, 868 N.E.2d 551 (Ind. Ct. App. 2007)                             15-16

Smith v. State, 432 N.E.2d 1363 (Ind. 1982)                                         11

Spurlock v. State, 675 N.E.2d 312 (Ind. 1997)                                       9

Taylor v. State, 681 N.E.2d 1105 (Ind. 1997)                                        9

ii

## **CONSTITUTION, STATUTES, AND RULES**

Indiana Code § 35-38-1-7.1 (2009)                                                  13, 15

Indiana Code § 35-42-4-3 (2009)                                                    15

Indiana Constitution Article VII, Section 6 (2005)                         16

Indiana Supreme Court Appellate Rule 7(B)                                 16

## IN THE INDIANA COURT OF APPEALS

### CAUSE NO. 35A05-0909-CR-00515

| | |
|---|---|
| **Eric Benson Skeens** | )   **Appeal from the Huntington Circuit Court** |
|    **Appellant-Defendant below** | ) |
| | ) |
| **V.** | )   **Lower Court Cause No. 35C01-0812-FA-00073** |
| | ) |
| **State of Indiana** | )   **The Honorable Thomas M. Hakes, Judge** |
|    **Appellee-Plaintiff below** | ) |

## BRIEF OF APPELLANT

## I.

## STATEMENT OF THE ISSUES

A.      Whether the State presented sufficient evidence that Defendant committed five acts of child molesting where there was no physical evidence supporting the convictions which were based solely on the uncorroborated testimony of the nine-year-old victim, and where the victim testified that Defendant did not penetrate her sex organ with an object.

B.      Whether the trial court erred when it failed to find mitigating circumstances clearly supported by the record, found improper aggravating circumstances, and imposed enhanced, consecutive sentences totaling 187 years, which was inappropriate in light of the nature of the offenses and the character of the Defendant.

## II.

## STATEMENT OF THE CASE

On December 10, 2008, the State of Indiana filed five charges against Eric Skeens ("Skeens") alleging that he committed the offenses of child molesting against a single victim.

(App. p. 1, 9-13). The informations alleged that between March of 2007 and December of 2008, Skeens, who was over twenty-one (21) years of age, engaged in sexual intercourse with (Count I), performed oral sex on (Count II), submitted to oral sex from (Count III), penetrated, with an object, the sex organ of (Count IV), and touched or fondled in order to arouse or satisfy his own sexual desires or that of (Count V), a child less than fourteen years of age. (App. p. 13). Counts I through IV were each class A felonies and Count V was a class C felony. Skeens filed a Demand for Jury Trial on December 16, 2008. (App. p. 22). Skeens also filed a Notice of Alibi on January 12, 2009. (App. p. 29). The State filed its response to the Notice or Alibi on January 13, 2009, wherein it stated that time was not of the essence and that the charging informations were sufficiently specific based on the memory of an eight-year-old child. (App. p. 30). The case was set for a three day jury trial that commenced on July 21, 2009.

After the State rested, Skeens moved for a directed verdict on Count IV arguing there was no evidence that K.W.'s sex organ was penetrated with an object. (Tr. p. 637). The trial court denied the motion for a directed verdict. (Tr. p. 639). On July 23, 2009 the jury found Skeens guilty of all five counts. The trial court directed the Huntington County Probation Department to prepare and file a Presentence Investigation Report and set the matter for sentencing on August 31, 2009. (Tr. p. 703). On August 10, 2009 Skeens requested court-appointed counsel for his sentencing hearing. (App. p. 290). The trial court granted the request (App. p. 7) and granted trial counsel's subsequent Motion to Withdraw. (App. p. 292). On Counts I-IV, each child molesting as a class A felony, Skeens was sentenced to the advisory term of thirty (30) years, with fifteen (15) years added for aggravating circumstances. On Count V, child molesting as a class C felony, Skeens was sentenced to the advisory sentence of four (4) years, with three (3)

2

years added for aggravating circumstances. The trial court ordered the sentences on the five

counts to run consecutively, for a total executed sentence of 187 years, no part of which was

suspended. (Tr. p. 717).

At the sentencing hearing, the trial court stated,

I've gone back through the um, file. I would note that we were here for was it three days? Something like that of trial. I've gone through all the reports, gone through all the records. Uh, there's been a judgment of conviction entered on the matters Counts one through five and in looking it all over, I find that there were aggravators and those include the position of trust, which I give great weight. Position of care, control and custody which goes along with the trust, I give great weight. There were repeated acts. Um, the victim was less than twelve years of age that the statute speaks of, but ... fact in this case the victim was between seven and eight years old, which is very young  Uh, much younger than the statute even requires. And there was a threat to the child if she told what was going on when the child tried to make an effort to tell. I find those are very strong aggravators. I do consider the mitigators, and I do know that there is no criminal history, although I, I did see there was a pending charge the Court doesn't take that into consideration, and I do find no criminal history as a mitigator. Uh, I have considered the others likely uh, likelihood that he would respond to probation. Uh, the adult report risk being three. The offense unlikely to reoccur, that he has another child, and that he was employed. But in considering those, I don't find those to be mitigators. I find that the mitigators strongly outweigh the aggravators. Great weight is given to position of trust. When I heard the evidence the child had no place to go. She described waking up in the mornings and mom would be at work and dad, albeit stepdad would get her up so she could go to school. And the testimony was that he would engage in sexual acts with her prior to her going to school. And he was the one that she looked to protect her. Position of trust carries great weight. I have also looked over uh, the uh definition of restricted felon, and I find that he is a child molester as set out by statute. That he is older than age twenty-one, and that the child is younger than twelve, and I do a finding on those facts. On Count one I sentence you to thirty years and I add fifteen for aggravating circumstances. On Count two I sentence you to thirty years and add fifteen for aggravating circumstances. On Count three I sentence you to thirty years and add fifteen for aggravating circumstances. And on Count four I sentence you to thirty years and add fifteen for aggravating circumstances. And on Count five I sentence you to four years and add three years for aggravating circumstances. I suspend none of that time, all time to run consecutive. You have the right to appeal this conviction. If you wish to appeal, you need file either a motion for that, uh within thirty days of that, this date and I am appointing Jeremy Nix for purposes of appeal.

(Tr. p. 715-717).

3

On September 1, 2009, Skeens filed his Notice of Appeal and Praecipe for Transcript. (App. p. 302-303). The trial court appointed appellate counsel for Skeens. (App. p. 7). The trial court clerk filed her Completion of Clerk's Record on September 15, 2009 and her Notice of Completion of Transcript on December 21, 2009. (App. p. 7, 304). This Brief is filed in support of Skeens' appeal.

## III.

### STATEMENT OF THE FACTS

Eric Skeens, his wife, Rachel, and his stepdaughter, K.W., moved to Huntington, Indiana in May of 2005. (Tr. 450). K.W. was five years of age at the time and enrolled in Flint Springs Elementary. (Tr. p. 451). Skeens and Rachel divorced on June 30, 2006, but continued to live together. (Tr. p. 451). In September of 2007, Skeens, Rachel, and K.W. moved into a home located at 338 William Street in Huntington. (Tr. p. 453). Following the move, K.W. transferred to Horace Mann Elementary in March of 2008 while in the second grade. (Tr. p. 455). Rachel and K.W. continued to live with Skeens on William Street until June of 2008 when Rachel left him. (Tr. p. 456).

Rachel became a Certified Nursing Assistant (CNA) in September of 2007. (Tr. p. 457). Her first job as a CNA was on third shift at Norwoods Nursing Home, where she worked from 11:00 p.m. to 7:00 a.m. (Tr. p. 458). Rachel then worked at Parkview Home Health & Hospice, where she had to be at her patient's house by 8:00 a.m. during the week and typically worked every third weekend. (Tr. p. 462). When Rachel had to leave early for work, Skeens' would put K.W. on the bus. (Tr. p. 461). Skeens would also watch K.W. while Rachel worked on the weekends. (Tr. p. 463). Even after Rachel left Skeens, Skeens maintained a relationship with

4

K.W. and would have her for visits on some weekends. K.W. did not have a relationship with her biological father and considered Skeens as her father. (Tr. p. 464).

On December 5, 2008, the school counselor at Horace Mann Elementary showed a video to K.W.'s third grade class titled, "Breaking the Silence, Children Against Child Abuse." (Tr. p. 411). The video contained a segment on sexual abuse. (Tr. p. 412). The general theme of the video was that if abuse was occurring against a child, the child should tell an adult. If the adult does nothing, the child should tell another adult until someone provided help. (Tr. p. 412). The school counselor instructed the students to write in their reflection journals following the video. The students were told that if they needed help, they should write the word "help" on their journal paper. (Tr. p. 413). While the counselor was observing the children writing in their journals, K.W. indicated she wanted to talk to the counselor. (Tr. p. 414). After speaking with K.W., the school counselor called the Huntington County Department of Child Services. (Tr. p. 416).

After receiving the initial report, the Huntington County Department of Child Services ("HCDCS") decided to investigate the report immediately. (Tr. p. 434). Caseworker Nicole Allen ("Allen") spoke to the child's mother at the HCDCS headquarters. (Tr. p. 435). Allen contacted law enforcement, the Prosecutor's Office, and McKenzie's Hope Child Advocacy Center to schedule an interview later that day. (Tr. p. 437). Following the interview, an appointment was scheduled for K.W. to be examined at the Fort Wayne Sexual Assault Treatment Center. (Tr. p. 441).

At the Fort Wayne Sexual Assault Treatment Center, K.W. was examined by Sharon Robison ("Robison"), a sexual assault nurse examiner. Robison testified at trial that K.W. had a

5

normal examination, meaning her hymen was perfect with no injury and her anus was also

perfect. (Tr. p. 590). Robison further testified that in ninety to ninety-five percent of children

examined there will be no physical injury noted. She testified that injuries heal quickly because

the female sex organ is very vascular so there is a lot of blood flow. (Tr. p. 593). Robison

testified that based on the minor's medical history and time from the last alleged assault, she did

not expect to find any medical evidence of sexual assault. (Tr. p. 593).

K.W. testified at trial against Skeens. K.W. testified Skeens touched her on her private

parts while living at 338 William Street in Huntington. The touches occurred while they were in

the living room, bathroom, and her parents' bedroom. (Tr. p. 516). K.W. testified that Skeens sat

her on the bathroom sink on a towel that he later used to wipe up the white stuff that came out of

her private. (Tr. p. 518). While she sat on the sink, Skeens put his private inside her private. It

hurt when he did so. (Tr. p. 521). He would move around and white stuff came out of his private.

(Tr. p. 522). It looked kind of white and a little bit bubbly. He would then take a towel and wipe

it off. (Tr. p. 522). When she went to the bathroom after this happened it burned. (Tr. p. 523).

K.W. also testified that Skeens touched her private with his tongue and with his fingers.

(Tr. p. 523). The touching of her private with his tongue and fingers occurred in the living room

and her parents' bedroom. (Tr. p. 524). K.W. testified that she would lay on her back with

Skeens below her and under her legs, which were separated. (Tr. p. 526). Skeens would then lick

her private with his tongue, which felt wet and weird. (Tr. p. 527). K.W. further testified that

Skeens would touch her privates with his finger while in the living room, bathroom, and her

parents' bedroom. (Tr. p. 529). She indicated he touched the outside of her private and would

rub. (Tr. p. 530). Skeens would use one finger on both hands to rub her privates in circles. (Tr.

6

p. 531). He would touch where she goes potty. (Tr. p. 531). K.W. also testified Skeens would put his private in her mouth. (Tr. p. 533). That occurred in the living room and her parents' bedroom. (Tr. p. 533). She would lay on her back while Skeens was on his belly on top of her like a push up. (Tr. p. 534). He would put his private in her mouth. (Tr. p. 535). Finally, K.W. indicated that Skeens would touch her boobs with his finger and mouth. (Tr. p. 537). He would rub her boobs with his fingers and lick them with his tongue. (Tr. p. 538).

K.W. described Skeens' privates as a long type of mushroom shape with a hole. (Tr. p. 538-39). She indicated that Skeens would show her pornographic movies, one of which was called "Real Sex." These movies would be shown on the flat screen television in the living room and on the television in the playroom. (Tr. p. 541-42). Skeens would touch her privates with his tongue, finger, and his privates while they were watching the movies. (Tr. p. 542).

On one occasion, K.W. tried to leave the bedroom while the abuse was occurring. However, Skeens told her that if she did not come back he would call the police and they would tell her mom. K.W. testified she went back because she was scared. (Tr. p. 544). K.W. testified that the intercourse, oral sex, and fondling occurred in the home located at 338 William Street in Huntington. (Tr. p. 548).

After K.W. was examined at the Sexual Assault Treatment Center, she was referred to the Bowen Center in Huntington for counseling. K.W.'s counselor testified that it was very common for children to delay before talking about sexual abuse. (Tr. p. 622). The counselor further testified that K.W. was able to sort out reality and that it had been very uncomfortable for her to talk about what happened. (Tr. p. 626-27).

7

## IV.

## SUMMARY OF THE ARGUMENT

A.      There was insufficient evidence to find that Skeens penetrated the sex organ of

K.W. with an object, or that he committed any other act that would constitute child molesting

under the Indiana Code. Although even the slightest evidence of penetration is sufficient to

establish criminal deviate conduct, K.W. testified that Skeens touched the outside of her privates

with his finger and there was no physical evidence to support a finding that Skeens penetrated

K.W    : organ. In addition, K.W.'s testimony was the sole evidence that Skeens committed

any act that would constitute child molesting. K.W.'s testimony was completely incredulous, as

she testified that much of the abuse occurred while Skeen's five-year-old son was present in the

home. Thus, the State failed to present sufficient evidence that Skeens committed the offense of

child molesting.

B.      The trial court failed to find valid mitigating circumstances supported by the

record, found improper aggravating circumstances, and imposed a sentence that was inappropriate

given the nature of the offenses and the character of Skeens. Skeens had absolutely no criminal

history prior to his conviction in this case. He had served as the only father figure to K.W. for a

substantial period of time before the molestation was found to have occurred. Skeens had been

employed for a long period of time and had full custody of his five-year-old son at the time of his

arrest. The offense was unlikely to recur as Skeens was divorced from K.W.'s mother and has no

more contact with K.W. He also scored low on the probation department's Adult Risk

Assessment Instrument. The trial court failed to consider any mitigating factor other than Skeens'

lack of criminal history when it sentenced Skeens to enhanced, consecutive sentences totaling 187

8

years. The sentence imposed by the trial court was disproportionate to sentences for similar offenders imposed by the Indiana Court of Appeals and the Indiana Supreme Court. Thus, Skeens's sentence must be revised.

## V.

## ARGUMENT

## A.   THERE WAS INSUFFICIENT EVIDENCE TO FIND THE DEFENDANT COMMITTED CHILD MOLESTING.

... sufficiency of the evidence claims, the court on appeal will not reweigh the evidence nor judge the credibility of witnesses. Perry v. State, 638 N.E.2d 1236, 1242 (Ind. 1994). The court will look to the evidence that supports the verdict and all reasonable inferences that can be drawn therefrom. Taylor v. State, 681 N.E.2d 1105, 1110 (Ind. 1997). The court will affirm a conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of a child victim is sufficient to support a conviction for child molesting. Link v. State, 648 N.E.2d 709, 713 (Ind. Ct. App. 1995).

### 1. There was no evidence that Skeens penetrated the sex organ of K.W. with an object.

Evidence of a touching without more does not support a conviction for child molesting as a class A felony, which requires "penetration of the female sex organ." See Spurlock v. State, 675 N.E.2d 312, 315 (Ind. 1997). Proof of the slightest penetration is enough to support a conviction. See Dinger v. State, 540 N.E.2d 39, 40 (Ind. 1989). However, there must be proof of even the slightest penetration.

In this case, Skeens was charged with performing sexual intercourse with K.W. in Count I

9

and performing deviate sexual conduct with K.W. by penetrating, with an object, her female sex

organ in Count IV. The State submitted a jury instruction that a finger is an "object" for purposes

of the criminal statute defining deviate sexual conduct and argued that Skeens should be convicted

of Count IV for penetrating K.W.'s sex organ with his finger. The nurse examiner who performed

the sexual assault examination of K.W. indicated that there was no physical evidence that K.W.

was the victim of sexual abuse. The nurse examiner testified that K.W. had a normal

examination, meaning her hymen was perfect with no injury. The only evidence that could

establish penetration of K.W.'s sex organ by Skeens' finger was the testimony of K.W. On direct

examination, K.W. was specifically asked by the State, "Did he touch your private with his finger

on the outside or the inside or ....," to which K.W. replied, "The outside." (Tr. p. 530). The State

subsequently asked K.W., "Did he ever touch the inside of your private with his finger?" K.W.

replied, "Mm, not really." (Tr. p. 531). When K.W. was asked "Did he ever touch the, the part of

your private where you go potty or anywhere like that?" K.W. replied, "Yes." (Tr. p. 531).

However, K.W. never distinguished her "private" and the part "where she goes potty." When

subsequently asked, K.W. reiterated that Skeens "touched the outside of it (her private)." (Tr. p.

532). The testimony of K.W. never established that Skeens penetrated her sex organ with his

finger. She specifically described rubbing in soft circles on the outside of her private. The

touching or rubbing of her private by Skeens would only support a conviction for child molesting

as a class C felony. Thus, the State failed to present sufficient evidence that Skeens' finger

penetrated, even slightly, the sex organ of K.W. to sustain a conviction for Count IV, child

molesting as a class A felony.

10

## 2. There was insufficient evidence that Skeens committed Child Molesting against K.W.

It is well settled that the uncorroborated testimony of the prosecuting witness is sufficient

to sustain a conviction for child molesting, even though the victim in a minor. Smith v. State, 432

N.E.2d 1363, 1372 (Ind. 1982). However, in this case, the testimony of K.W. was wholly

incredible and unsupported by any physical evidence.

At the time of the alleged molestation, K.W. was approximately eight years of age. She

described Skeens engaging in sexual intercourse with her while she sat on the bath.    n sink. She

described that he would put his private in her private and move around. After he did this, white

stuff would come out of his private. However, during her sexual assault examination, K.W.

indicated she only saw two small drops of blood following the intercourse, and that it burned

when she went pee. (Tr. p. 523, 595). Otherwise, her examination was completely normal and

her hymen was intact. It was wholly incredible that Skeens, a twenty-seven-year-old man, could

engage in sexual intercourse as described by K.W., an eight-year-old girl, without more injury

than a few drops of blood and burning during urination. It must be noted that K.W. also testified

that she has watched pornography. (Tr. p. 541). The pornography showed three or four people

touching each others privates. (Tr. p. 543). The most plausible explanation for what K.W.

described was what she saw on the pornographic movies.

K.W. further testified that Skeens put his private in her mouth. She described that she was

on her back and Skeens was on his arms like a push-up. (Tr. p. 535). She described that he would

"just keep it in my mouth" and "he would sort of push." (Tr. p. 536). Just placing his private in

K.W.'s mouth without more does not indicate any intent to satisfy the sexual desires of either

party. The description given by K.W. is wholly incredible and more plausibly explained by her

11

viewing pornographic movies, but not understanding what she observed.

Rachel testified that she watched pornography with Skeens when the two of them were alone in the home. They watched the pornography on the computer in the dining room, which could also be viewed on the big screen television using the computer. (Tr. p. 486). Rachel also allowed K.W. to use that same computer. (Tr. p. 486).

K.W. also described that Skeens' five-year-old son was present in the home when the molestation would occur. She indicated that Skeens would send his son to play with his cars while he molested her. She also indicated that Skeens' son would try to get Skeens to play while he was molesting K.W., and that Skeens would stop to play with his son for a few minutes before he would come back and touch her privates. (Tr. p. 545). It is wholly incredible that Skeens would alternate between playing with his five-year-old son and molesting his eight-year-old stepdaughter.

K.W. testified that a wide range of sexual acts occurred between her and twenty-seven-year-old Skeens. She indicated that Skeens would alternate between molesting her and playing with his five-year-old son. However, K.W. also described watching pornographic videos where those same sexual acts were portrayed. The pornographic videos were shown on the computer in the dining room, which K.W.'s mother allowed K.W. to use. Despite the age and size difference between K.W. and Skeens, there was no physical evidence of sexual assault found during K.W.'s examination. Thus, the testimony of K.W. was wholly incredible and does not support Skeens' convictions for child molesting.

12

## B. THE TRIAL COURT ABUSED ITS DISCRETION AND ENTERED AN

## INAPPROPRIATE SENTENCE FOR SKEENS.

### 1. The Trial Court failed to consider mitigating circumstances clearly supported by the

### record and considered improper aggravating circumstances.

Sentencing decisions rest within the discretion of the trial court and are reviewed for an

abuse of discretion. Monegan v. State, 756 N.E.2d 499, 501 (Ind. 2001). It is generally within the

trial court's discretion to determine whether an advisory sentence will be enhanced due to

aggravating factors. An abuse of discretion occurs when the decision is clearly against the logic

and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007).

In this case, Skeens submitted several proposed mitigating factors that were supported by

the record. Several of those sentencing factors were set out in Ind. Code § 35-38-1-7.1(b) (2009).

Those factors included a complete lack of criminal or juvenile history ((b)(6)), the likelihood that

he would respond positively to probation ((b)(7)), the low adult risk assessment instrument score

provided by the probation department ((b)(7)), that the offense was unlikely to recur ((b)(2)), that

he had custody of his son, which would result in undue hardship if Skeens was imprisoned for a

substantial period of time ((b)(10)), and that he had a steady employment history. I.C. § 35-38-1-

7.1(b). After considering those proposed factors, the trial court found that only the lack of any

criminal history was mitigating. However, the balance of the mitigating factors proposed were

valid and supported by the record.

The Huntington County Probation Department included the Adult Risk Assessment

Instrument as part of the presentence investigation report. (App. p. 359). On that instrument,

13

Skeens scored a total of three points, which indicated a low level of supervision was needed. Two points were given for Skeens' failure to earn above a high school diploma, although he had taken courses at Ivy Tech. (App. p. 353). The third point was assessed based on the probation officer giving no expectation of Skeens complying with probation. (App. p. 359). Skeens had never been on probation, so he had no prior probation violations.

The probation officer noted that Skeens had been employed full-time for at least nine months before his arrest. (App. p. 359). Skeens argued that he had been employed .... a substantial period of time and had been a productive member of society. (Tr. p. 709). That State did not dispute that Skeens was engaged in full-time work, but argued that the factor should not be given mitigating weight. (Tr. p. 711-712). However, this Court and the Indiana Supreme Court have found that a steady employment history was a proper mitigating factor. See Laster v. State, 918 N.E.2d 428 (Ind. Ct. App. 2009), and Rivers v. State, 915 N.E.2d 141 (Ind. 2009).

Skeens also argued that he had custody of his six-year-old son, and that his son would suffer undue hardship if he was imprisoned for a substantial period of time. The mother of Skeens' son wrote to the trial court that Skeens was "the best dad ever," and that his son "needs his dad." (App. p. 294). Finally, Rachel testified at trial that she left Skeens in June of 2008. As Skeens was not the biological father of K.W., he has no legal right any further contact with her, making the crime unlikely to recur. That State acknowledged that Skeens will no longer have contact with K.W.. (Tr. p. 711). Thus, the trial court's failure to find the statutory mitigating circumstances supported by the record and those mitigating circumstances recognized by this Court and the Indiana Supreme Court was an abuse of discretion.

In regard to aggravating circumstances, the trial court listed "position of trust; position of

14

care; custody and control; repeated acts; age of victim being 7 & 8 years old; threats to the victim." (App. p. 301). It is well settled that a trial court may not use elements of a crime to enhance a sentence. See Johnson v. State, 687 N.E.2d 345, 347 (Ind. 1997). In this case, the age of K.W., being less than fourteen years of age, was an element of each count of child molesting. See Ind. Code § 35-42-4-3(a)-(b) (2009). Skeens indicated to the trial court that the age of the victim was an element of the crime and an improper aggravating circumstance. (Tr. p. 714). In some cases, the trial court can use the age of a victim as an aggravating circumstance if it was also an element of the crime, but the trial court must articulate particularized circumstances related to the crime before it can do so. Kien v. State, 782 N.E.2d 398, 414 (Ind. Ct. App. 2003). In this case, the trial court simply stated, "Um, the victim was less than twelve years of age that the statute speaks of, but in fact in this case the victim was between seven and eight years old, which is very young. Uh, much younger than the statute even requires." (Tr. p. 715). However, the trial court did not articulate how the age of the victim, being younger than that required by statute, created a particularized circumstance that made the crime more severe. Thus, the age of K.W. cannot serve as an aggravating circumstance.

The trial court stated at sentencing that "I find that there were aggravators and those include the position of trust, which I give great weight. Position of care, control and custody which goes along with the trust, I give great weight." (Tr. p. 715). One statutory aggravating circumstance is that "[t]he person was in a position having care, custody, or control of the victim of the offense." Ind. Code § 35-38-1-7.1 (2009). In fact, the State specifically cited section 7.1 when it referred to the "position of trust" aggravating circumstance. (Tr. p. 712). "The position of trust aggravator is frequently cited by sentencing courts where an adult has committed an

15

offense against a minor and there is at least an inference of the adult's authority over the minor."
Rodriguez v. State, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). However, the trial court did not
articulate how the "position of trust" and the "position of care, custody and control" were
distinguished as aggravating circumstances. The trial simply listed both factors and indicated,
multiple times, that it gave both aggravating circumstances "great weight." This Court has
reviewed the "position of care" aggravator under the same decisions reviewing the "position of
trust" aggravator. See Edrington v. State, 909 N.E.2d 1093, 1100 (Ind. Ct. App. 2009) (citing
Edgecomb v. State, 673 N.E.2d 1185, 1198 (Ind. 1996) reh'g denied.). The two aggravating
circumstances are synonymous and should not have been considered as two separate aggravating
circumstances. Thus, it was an abuse of discretion for the trial court to list both "position of
trust" and "position of care, custody and control" as aggravating circumstances and to assign them
both "great weight."

## 2. The 187- year sentence imposed was inappropriate in light of the nature of the offenses and Skeens' character.

The Indiana Constitution was amended in 1970 to grant the appellate courts the authority
to "provide in all cases an absolute right to ... the... review and revision of sentences for
defendants in all criminal cases." Indiana Constitution Article VII, Section 6 (2009). The
purpose of the amendment was to provide more uniformity in sentencing. Rodriguez v. State, 785
N.E.2d 1169, 1174 (Ind. Ct. App. 2003), trans. denied. Pursuant to this authority, the Indiana
Supreme Court adopted Appellate Rule 7 to guide the courts in reviewing and revising sentences
for defendants. Appellate Rule 7(B) provides that "[t] he court may revise a sentence authorized
by statute if, after due consideration of the trial court's decision, the court finds that the sentence

16

is inappropriate in light of the nature of the offense and the character of the offender."

App.R.7(B). When the Indiana Supreme Court made the change to Appellate Rule 7(B), the thrust was changed from a prohibition on revising sentences unless certain narrow conditions are met to an authorization to revise sentences when certain broad conditions are satisfied. Neale v. State, 826 N.E.2d 635, 639 (Ind. 2005).

In this case, Skeens was convicted of five counts of child molesting. Any act of child molesting is heinous. However, K.W. testified that all of the offenses occurred while she lived at 338 William Street in Huntington. K.W. lived at that address with her mother and Skeens for ten months, from September of 2007 until June of 2008. Skeens, Rachel and K.W. had all lived together for over five years, from May of 2003 until June of 2008. During that time, Skeens had acted as her father, as K.W. had no relationship with her biological father. Even after Rachel and K.W. moved out of Skeens' home, K.W. and Skeens continued to have a relationship. There was a long period of time where the relationship between Skeens and K.W. was constructive prior to the alleged molestation. See Rivers v. State, 915 N.E.2d at 143.

There was no evidence that Skeens inflicted substantial physical injuries on K.W.. In fact, the nurse examiner noted that K.W.'s genitalia were perfect. There was also no evidence that Skeens used force or threatened to use force to compel K.W. to participate, with the exception of one incident where K.W. indicated that Skeens threatened to tell the police, who would tell her mom, if she told anyone about the abuse. Thus, the nature of the offenses do not justify the imposition of a enhanced sentences, with the sentences to run consecutively.

The character of Skeens was shown by his complete lack of prior criminal convictions. He had custody of his five-year-old son at the time of his arrest, and had maintained steady

17

employment for a substantial period of time.  Skeens was not given the opportunity to be placed

on probation, although his adult risk assessment instrument score showed a low level of

supervision was needed.  Thus, the character of Skeens does not support the imposition of

enhanced, consecutive sentences totaling 187 years.

In reviewing the appropriateness of sentences revised by this Court and the Indiana

Supreme Court, a sentence at the advisory level for each count, to be served concurrently, is more

appropriate and would provide uniformity between Skeens' sentence and that of similarly situated

defendants.  See Rivers v. State, 915 N.E.2d 141 (The defendant's sentence was revised to

concurrent terms of thirty years on two class A felonies for child molesting and a class C felony

for child molesting where the defendant molested his seven or eight-year-old niece on two

occasions, had no prior convictions, maintained steady employment, and served as a father figure

to the victim for a number of years before committing his crimes.);  Laster v. State, 918 N.E.2d

428 (The defendant's sentence was revised to concurrent terms of thirty-six years on two class A

felony convictions for child molesting and six years on four class C felony convictions for child

molesting where defendant repeatedly molested one five-year-old child, but there was no evidence

the child sustained any injuries, defendant was in a position of trust, but defendant had no criminal

history and maintained steady employment).  Buchanan v. State, 767 N.E.2d 967, 974 (Ind. 2002)

(The defendant's 50 year sentence was reduced to 40 years where the defendant molested a five-

year-old girl that he babysat, the defendant had maintained gainful employment throughout his

adult life, and had a remote felony criminal history.); Harris v. State, 897 N.E.2d 927, 930 (Ind.

2008) (The defendant's sentence was revised from consecutive to concurrent sentences of 50

years each for two counts of child molesting as class A felonies where the defendant was in a

18

position of trust when he repeatedly molested an eight-year-old girl and defendant had a prior criminal history); Monroe v. State, 886 N.E.2d 578, 580 (Ind. 2008) (The defendant's sentence was revised from five consecutive twenty-two year sentences with two years suspended, totaling 100 years, to five concurrent sentences of fifty years on five counts of child molesting as class A felonies, where the defendant was in a position of trust with his victim who he molested repeatedly over two years, and the defendant's criminal history was driving-related.) Therefore, Skeens requests that this court exercise its power under the Constitution of the State of Indiana and Appellate Rule 7(B) to review, revise, and reduce his sentence to the advisory sentence on each count, with the counts to run concurrently with each other.

## VI.

## CONCLUSION

For the foregoing reasons, Eric B. Skeens respectfully requests that this honorable Court find that there was insufficient evidence to support his convictions, or in the alternative, find that the trial court erred when it failed to find valid mitigating circumstances, found improper aggravating circumstances, and imposed a sentence that was inappropriate in light of the nature of the offenses and character of Skeens and that was completely disproportionate to similarly situated defendants, and to exercise its authority under the Constitution of the State of Indiana, Article VII, Section 6, and Indiana Appellate Rule 7(B), and review, revise, and reduce his sentence, and for all other just and proper relief in the premises.

Respectfully submitted,

MATHENY, HAHN, DENMAN & NIX, L.L.P.

By: _____
　　Jeremy K. Nix, Attorney for Appellant

19

## APPEALED JUDGMENT OR ORDER

STATE OF INDIANA          IN THE HUNTINGTON CIRCUIT COURT
                          SS:
COUNTY OF HUNTINGTON

                                    )
STATE OF INDIANA                    )
        Plaintiff                   )
        VS.                         ) CAUSE NO.35C01-0812-FA-00073
                                    )
ERIC B. SKEENS                      )
        Defendant                   )

### SENTENCING ORDER

State appears by Prosecutor Amy Richison. The Defendant appears in person and by counsel, Jeremy Nix. Matter comes on for sentencing. The pre-sentence report has been filed with the court and is made a part of the sentencing hearing record.

The defendant having been found guilty by a jury on the 23ed day of July, 2009, to the crimes of count I through count IV, Child Molesting, each a class A felony and count V, Child Molesting, a class C felony, the court entered judgment of conviction.

The Court finds and considers the following factors as aggravating: Position of trust; position of care; custody and control; repeated acts; age of victim being 7 & 8 years old; threats to the victim.

The Court finds and considers the following factors as mitigating: Lack of criminal history.

The Court finds that the aggravating factors outweigh the mitigating factors for the following reasons: Aggravator of position of trust is given great weight.

It is Ordered and Adjudged that the Defendant, Eric Skeens, be and he hereby is sentenced to the Indiana Department of Correction on counts I, II, III and IV for a period of thirty (30) years to which fifteen (15) years will be added for aggravating circumstances for each count; and on count V for a period of four (4) years to which three (3) years will be added for aggravating circumstances. The counts shall be served consecutive to each other.

The defendant shall receive 264 days credit for time incarcerated prior to sentencing; said time was calculated from the 10th day of December, 2008 to the 31st day of August, 2009.

The Court advises the defendant of his right to appeal.

DNA sample ordered as required by statute.

So ORDERED this 31st day of August, 2009.

Thomas M. Hakes, Judge
Huntington Circuit Court

The document to which this certificate is attached is a
full, true and correct copy of the original on file and of
record in my office. Book _____ Page _____

Fran Felts, Clerk Huntington Circuit
and Huntington County Courts, State of Indiana

Identification No _____
Date _____ 2010

## CERTIFICATE OF SERVICE

I certify that service of a true and complete copy of the above and foregoing Brief of Appellee was served by depositing the same in the United States Mail, properly addressed and with first-class postage affixed, this 20th day of January, 2010, to:

Gregory F. Zoeller
Indiana Attorney General
Criminal Appeals Division
C553 Government Center S.
402 W. Washington Street
Indianapolis, IN 46204-2770
Attorney for Appellant

Jeremy K. Nix