ORIGINAL



IN THE

# COURT OF APPEALS OF INDIANA

CAUSE NO. 35A05-0909-CR-515

ERIC SKEENS,

    *Appellant* (*Defendant below*),

*v.*

STATE OF INDIANA,

    *Appellee* (*Plaintiff below*).

Appeal from the Huntington Co   Circuit Court,

Cause No. 35C01-0812-FA-00073,

Hon. Thomas M. Hakes, Judge.

## BRIEF OF APPELLEE

GREGORY F. ZOELLER
Attorney General of Indiana
Atty. No. 1958-98

Ann L. Goodwin
DEPUTY ATTORNEY GENERAL
Atty. No. 22365-53
Office of Attorney General
Indiana Government Center
   South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709

RECEIVED
Attorneys for Appellee STATE OF INDIANA
CLERK OF COURTS

MAR 0  10

IN THE

# COURT OF APPEALS OF INDIANA



CAUSE NO. 35A05-0909-CR-515

---

ERIC SKEENS,

    *Appellant* (*Defendant below*),

*v.*

STATE OF INDIANA,

    *Appellee* (*Plaintiff below*).

Appeal from the Huntington County Circuit Court,

Cause No. 35C01-0812-FA-00073,

Hon. Thomas M. Hakes, Judge.

## BRIEF OF APPELLEE

GREGORY F. ZOELLER
Attorney General of Indiana
Atty. No. 1958-98

Ann L. Goodwin
DEPUTY ATTORNEY GENERAL
Atty. No. 22365-53
Office of Attorney General
Indiana Government Center
  South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709

Attorneys for Appellee

# **TABLE OF CONTENTS**

Table of Authorities...............................................................................................ii

Statement of the Issues ...........................................................................................1

Statement of the Case .............................................................................................1

Statement of the Facts ............................................................................................2

Summary of the Argument ......................................................................................7

Argument:

      I. The evidence sustained the jury's verdicts.................................................8

          A. The evidence showed that Skeens penetrated K.W.'s sex
            organ with his finger.....................................................................9

          B. K.W.'s testimony was not incredibly dubious.....................10

      II. The trial court properly assessed the mitigating and aggravating
         circumstances. ........................................................................................12

          A. The trial court did not overlook any proper mitigators. .......13

             *i) Adult Risk Assessment*................................................13

             *ii) Employment History*....................................................14

             *iii) Undue Hardship*..........................................................15

             *iv) Circumstances Unlikely to Recur*................................16

          B. The trial court did not consider any improper aggravators..17

         C. Even if the trial court relied upon one improper aggravating
           factor, the Court should uphold Skeens' sentence................19

      III. Skeens' sentence, which is not the maximum for the offenses, is not
        inappropriate given the nature of his offenses and his character.............21

         A. The nature of Skeens' offenses merits the sentence
           Imposed. ........................................................................................21

B. Skeens' character also merits the substantial sentence
   imposed............................................................................................... 24

Conclusion   ....................................................................................................... 27

Certificate of Service................................................................................................ 28

## Table of Authorities

### Cases

*Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007)................................................12, 13, 19, 20, 21

*Bennett v. State*, 787 N.E.2d 938 (Ind. Ct. App. 2003) ..................................................14

*Book v. State*, 880 N.E.2d 1240 (Ind. Ct. App. 2008) ..................................................21

*Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008) ..........................................................13

*Carter v. State*, 711 N.E.2d 835 (Ind. 1999) ................................................................13

*Clark v. State*, 728 N.E.2d 880 (Ind. Ct. App. 2000) .....................................................9

*Comer v. State*, 839 N.E.2d 721 (Ind. Ct. App. 2005).................................................15

*Dinger v. State*, 540 N.E.2d 39 (Ind. 1989)....................................................................9

*Dowdell v. State*, 720 N.E.2d 1146 (Ind. 1999)............................................................15

*Fajardo v. State*, 859 N.E.2d 1201 (ind. 2007) ............................................................11

*Garland v. State*, 855 N.E.2d 703 (Ind. Ct. App. 2006).............................................17

*Hart v. State*, 829 N.E.2d 541 (Ind. Ct. App. 2005 ....................................................20

*Hillenburg v. State*, 777 N.E.2d 99 (Ind. Ct. App. 2002)...........................................16

*Hines v. State*, 856 N.E.2d 1275 (Ind. Ct. App. 2006) ................................................18

*Kien v. State*, 782 N.E.2d 398 (Ind. Ct. App. 2003)....................................................23

*Kile v. State*, 729 N.E.2d 211 (Ind. Ct. App. 2000)....................................................17

*McCoy v. State*, 856 N.E.2d 1259 (Ind. Ct. App. 2006)..........................................19, 22

*McHenry v. State*, 820 N.E.2d 124 (Ind. 2005) ..........................................................9, 10

*McKinney v. State*, 873 N.E.2d 630 (Ind. Ct. App. 2007)...........................................14

*Mitchum v. State*, 685 N.E.2d 671 (Ind. 1997)...........................................................22

*Murray v. State*, 761 N.E.2d 406 (Ind. 2002)..............................................................11

*Newsome v. State*, 797 N.E.2d 293 (Ind. Ct. App. 2003) ............................................14

*Rhodes v. State*, 896 N.E.2d 1193 (Ind. Ct. App. 2008)..............................................13

*Rivers v. State*, 915 N.E.2d 141 (Ind. 2009)................................................................25

*Roney v. State*, 872 N.E.2d 192 (Ind. Ct. App. 2007) .................................................15

*Scott v. State*, 771 N.E.2d 718 (Ind. Ct. App. 2002) ..................................................10

*Sherwood v. State*, 702 N.E.2d 694 (Ind. 1998) ..........................................................20

*Singer v. State*, 674 N.E.2d 11 (Ind. Ct. App. 1996)...................................................20

*Stewart v. State*, 555 N.E.2d 121 (Ind. 1990)................................................................9

*Storey v. State*, 875 N.E.2d 243 (Ind. Ct. App. 2007)................................................21

*Ware v. State*, 816 N.E.2d 1167 (Ind. Ct. App. 2004)................................................20

*Wilkins v. State*, 500 N.E.2d 747 (Ind. 1986) ............................................................13

*Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008) ............................................26

## Statutes

I.C. § 11-8-8............................................................................................................16
I.C. § 35-41-1-9(2)....................................................................................9
I.C. § 35-42-4-3(a).................................................................................2, 12
I.C. § 35-42-4-3(b)..................................................................................2
I.C. § 35-42-4-10 to -13...........................................................................16
I.C. § 35-50-2-2(b)(4)(H) .........................................................................26
I.C. §§ 35-50-2-4, -6.................................................................................21

## Rules

Ind. Appellate Rule 7(B) ...................................                 ....................21

IN THE

# COURT OF APPEALS OF INDIANA

CAUSE NO. 35A05-0909-CR-515

| | |
|---|---|
| ERIC SKEENS, | Appeal from the Huntington County Circuit Court, |
| *Appellant (Defendant below)*, | |
| STATE OF INDIANA, | Cause No. 35C01-0812-FA-00073, |
| *Appellee (Plaintiff below)*. | Hon. Thomas M. Hakes, Judge. |

## BRIEF OF APPELLEE

### STATEMENT OF THE ISSUES

I.     Whether the State produced sufficient evidence that Skeens committed fours acts of class A felony child molesting and one act of class C felony child molesting.

II.     Whether the trial court abused its discretion by overlooking any proper mitigators or by considering any improper aggravators when it sentenced Skeens.

III.     Whether the sentence imposed is inappropriate in light of Skeens' offenses and his character.

### STATEMENT OF THE CASE

*Nature of Case*

Skeens appeals from his convictions for four counts of class A felony child molesting and one count of class C felony child molesting.

*Course of Proceedings*

On December 10, 2008, the State charged Skeens with four counts of class A felony child molesting[1] and with one count of class C felony child molesting.[2] (Appellant's App. 1, 9-13). Skeens' jury trial took place on July 21-23, 2009, and the jury found him guilty as charged. (Appellant's App. 6-7). On August 31, 2009, the trial court sentenced Skeens to forty-five years for each of the class A felonies and to seven years for the class C felony, to be served consecutively, for an aggregate sentence of 187 years. (Appellant's App. 302)

Skeens filed his Notice of Appeal on September 1, 2009. (Appellant's App. 303-04). The Notice of Completion of the Clerk's Record was filed on September 15, 2009. (Appellant's App. 305). The Notice of Completion of the Transcript was filed on December 21, 2009. (Appellant's App. 307). Skeens timely filed his Brief of Appellant on January 20, 2010, and served the State with a copy *via* United States mail. On February 17, 2010, the State filed a verified motion to set a new due date for the Brief of Appellee, due to the fact that no transcript had been released to the State. The Court ruled upon the State's motion as a request for extension of time and ordered the State to file its Brief on or before March 9, 2010.

## STATEMENT OF FACTS

K.W. was two years old in 2002 when her mother met Eric Skeens. (Tr. 447-48).[3] Skeens and K.W.'s mother married in 2004. (Tr. 449). K.W. thought of Skeens as her father and called him "Dad." (Tr. 464, 510).

---

[1] Ind. Code § 35-42-4-3(a).

[2] Ind. Code § 35-42-4-3(b).

[3] As noted above, the State's motion for a new due date for the Brief of the Appellee was based upon the fact that the Clerk of Courts had not yet released the transcript to the undersigned Deputy. As of the filing of this Brief, the transcript has still not been released. However, shortly after being served with a copy of the State's motion for a new due date, opposing appellate counsel forwarded an unofficial digital file of the transcript to the undersigned Deputy. In light

Beginning in September of 2007, Skeens, K.W.'s mother, K.W., and Skeen's four-year-old son lived together in a two-story home in the 300 block of Williams Street in Huntington. (Tr. 455-56, 470). K.W.'s mother worked during the week and on the weekends, so she left K.W. in Skeens' care. (Tr. 458-63, 544). While K.W. was in Skeens' care, Skeens subjected K.W. to sexual intercourse by placing her on top of the bathroom sink on a towel and inserting his penis in her vagina until he ejaculated. (Tr. 517-18, 521-22, 544). After subjecting K.W. to painful sexual intercourse, Skeens directed K.W. to urinate, whereupon K.W. observed that urinating ⸋ ....∵, she was "leaking," and that she was bleeding. (Tr. 521, 523, 580).

Skeens also subjected K.W. to oral sex by placing his tongue on her vagina. (Tr. 523, 527). This took place in the living room, the bedroom that Skeens shared with K.W.'s mother, and in the bathroom. (Tr. 524-25, 528). In addition, Skeens placed his penis in K.W.'s mouth. (Tr. 533, 536). This occurred in the living room and in the parental bedroom. (Tr. 533, 536).

Skeens also digitally penetrated K.W.'s sex organ. (Tr. 531-32). This took place in the living room, the parental bedroom, and the bathroom. (Tr. 529). Skeens also touched K.W.'s chest with his finger and tongue while both were undressed. (Tr. 515-16, 537-38). This occurred in the living room, the parental bedroom, and in the bathroom. (Tr. 516).

During these offenses, Skeens would at times molest K.W. while showing her pornographic movies depicting multiple participants. (Tr. 539, 542-43). On one occasion when K.W. refused to be molested and walked away from Skeens, he threatened to call the police and to tell her mother unless she came back so that he could finish what he was doing to her. (Tr.

---

of the Court's order that the State file its Brief by March 9, 2010, the State has prepared its Brief using the unofficial transcript at its disposal. The State respectfully reserves the right to amend or supplement its Brief should the official transcript, when it is released to the State, reveal any discrepancies with the unofficial transcript used by the State in completing its Brief.

3

543-44). Skeens' threat frightened K.W. into submission. (Tr. 544). In addition, Skeens directed K.W. not to tell anyone about the offenses. (Tr. 549-50).

At times Skeens' son was present in the home when Skeens molested K.W. (Tr. 545-46). Skeens would direct his son to another area of the home before molesting K.W. (Tr. 545-46). On one occasion, Skeens began playing with some new toys cars with his son in one room, left his son in that room, and then went to his bedroom to molest K.W. (Tr. 545). Skeens' son knocked on the locked bedroom door while Skeens was molesting K.W., demanding to be let in. (Tr. 545-.-).

K.W.'s mother moved out of the Williams Street home in June of 2008 and took K.W. with her. (Tr. 455-56). K.W.'s mother continued to allow Skeens to visit with and care for K.W. (Tr. 464-65). K.W. would at times spend up to three nights a week with Skeens. (Tr. 465). Skeens continued to molest K.W. during this time. (Tr. 546). Skeens moved to Warsaw in September of 2008. (Tr. 466). K.W. also continued to visit Skeens in Warsaw and last had contact with him shortly before Thanksgiving of 2008. (Tr. 467).

On December 5, 2008, K.W. saw a video in her third-grade class about sexual abuse. (Tr. 411). After viewing the video, K.W. told her teacher that what they learned about in the video had happened to her. (Tr. 413-14). Later that day, K.W. disclosed the offenses to a Department of Child Services employee. (Tr. 423, 436, 439-40). On December 8, 2008, K.W. was examined at the Fort Wayne Sexual Assault Treatment Center. (Tr. 553, 574). In addition to other acts of molestation, K.W. reported during her physical examination that Skeens rubbed his penis on her anus and that he inserted his fingers inside her "private." (Tr. 580, 584; Defense Exhibit A; Appellant's App. 327). K.W. further reported that Skeens had been doing these things to her since she was five years old. (Tr. 580, 582).

4

On December 10, 2008, the State charged Skeens with four counts of class A felony child

molesting and with one count of class C felony child molesting. (Appellant's App. 1, 9-13). At

Skeens' July 21-23, 2009, jury trial, K.W. testified that Skeens had placed his penis in her mouth

and fondled her chest when she was in first grade. (Tr. 549). K.W. further related that Skeens

touched the outside of her "private", rubbing it sometimes with one finger and sometimes with

two. (Tr. 530-31). The following exchange then took place between K.W. and the prosecutor:

> State: He rubbed it. And when he would rub it, is that in the part
> where you go potty?
> K.W.: Mmm,
> State: Or somewhere else on your private?
> K.W.: On the part where I go prat (sic), potty.
> State: The part where you go potty? And is that a different part of
> your private then when you talking about him using one finger on
> each hand?
> K.W. What?
> State: Okay. We're talking about your private okay? You have
> different parts to your private all right? Then you talked about he
> would touch the part where you go potty. Did he ever tart [sic],
> touch any other parts of your private then too?
> K.W.: Um, he would touch the outside of it.

(Tr. 531-32). The sexual assault nurse who examined K.W. explained that in the vast majority of

child molestation cases, even in those wherein an adult penetrates a child, no physical evidence

of genital injury is found. (Tr. 592, 611). K.W.'s mother reported that, although K.W. continued

to be in therapy, she experienced behavioral problems and had nightmares that caused K.W. to

wet the bed. (Tr. 482-83). The jury found Skeens guilty on all counts. (Tr. 698-99).

Skeens' pre-sentence investigation report (PSI) was filed on August 25, 2009, and

revealed the following. (Green App. 352). Skeens was approximately twenty-eight years old

when he committed the instant offenses. (Green Appendix 352). On February 12, 2009, Skeens

was charged in Kosciusko County with an additional count of class A felony child molesting

against K.W. (Green App. 354; Appellant's App. 328-30). Skeens reported no employment

5

information in his PSI. (Green App. 356-57). Skeens characterized his childhood as the "[b]est days of my life." (Green App. 356).

At his August 31, 2009, sentencing hearing, Skeens made no additions to his PSI and provided no sworn testimony or allocution apart from denying his guilt. (Tr. 707-08). A letter from K.W.'s mother in which she called Skeens a "monster" and described her guilt at not detecting the offenses was entered into the record. (Tr. 708; Appellant's App. 299-300). Skeens argued that his lack of criminal history, his low Adult Risk Assessment score, the fact that the offenses were the result of circumstances unlikely to recur, undue hardship to his son, and his employment history were all mitigating factors. (Tr. 708-09). The trial court found as a mitigating circumstance that Skeens had no prior criminal record. (Tr. 716). The trial court specifically stated that it considered but rejected the other mitigating factors offered by Skeens. (Tr. 716).

The trial court found as aggravating circumstances that Skeens was in a position of trust with K.W., a factor that it stressed it gave "great weight." (Tr. 715-16). The trial court also found as "very strong" aggravating circumstances that K.W. was in a position of care, control, and custody with K.W., that Skeens had subjected K.W. to repeated sexual acts, that K.W. was "very young...much younger than the statute even requires," and that Skeens had threatened K.W. when she resisted. (Tr. 715-16). The trial court found that the aggravators "strongly outweighed" the mitigator and sentenced Skeens to forty-five years for each of the class A felonies and to seven years for the class C felony, to be served consecutively, for an aggregate sentence of 187 years. (Tr. 716-17; Appellant's App. 302).

6

## SUMMARY OF THE ARGUMENT

I.      The State produced substantial and credible evidence that Skeens committed the

offenses. The evidence at trial was that Skeens used his finger to touch K.W.'s private where she

went potty and that he placed his fingers inside her private. This evidence supports his

conviction for sexual deviate conduct.

What is more, K.W.'s testimony regarding the offenses was not incredibly dubious. She

unequivocally testified regarding the acts of molestation. Skeens does not contend that her

testimony was internally inconsistent or the result of coercion. His argument on appeal consists

of requesting the Court to reweigh the evidence and to reassess K.W.'s credibility, something

that it will not do. Skeens' convictions should be upheld.

II.     The trial court did not overlook any proper mitigating factors. None of Skeens'

proffered mitigating circumstances were both supported by the record and significant for

sentencing. In addition, the trial court did not consider any improper aggravating circumstances,

in that it made a particularized finding as to why K.W.'s age was an aggravating circumstance in

this case, and the evidence supported finding both Skeens' position of trust and his position of

care, custody, and control as aggravators.

However, even if the trial court found an improper aggravator, the Court may confidently

uphold Skeens' sentence. The trial court placed great weight upon Skeens' position of trust, a

factor that, along with the aggravators that Skeens committed repeated acts and threatened K.W.,

Skeens does not challenge on appeal. In addition, the trial court properly found K.W.'s age to be

aggravating. Set against these four weighty aggravating circumstances is the sole mitigator of

Skeens' lack of criminal history, the significance of which is greatly undercut by the many

uncharged acts of molestation he committed against K.W. over a period of a year. Given the

7

weight and number of the aggravators and the relative insignificance of the mitigator, remand is not required.

III.    The nature of Skeens' crimes merits the enhanced, consecutive sentences imposed here. Skeens, a father figure to K.W., committed at least five acts of molestation against her over the period of approximately a year. These discrete acts deserve separate punishments since they occurred over a period of time and Skeens had more than enough opportunity to consider what he was doing. Evidence that Skeens committed repeated and uncharged offenses against K.W., Skeen's presence in the home during some of the offenses, Skeens' threat to K.W. to tell the police and her mother if she refused to submit, and the lasting, grave effect his crimes had on his K.W. further support the imposition of the substantial sentence imposed here.

Furthermore, nothing about Skeens' character renders his sentence inappropriate. Unlike so many other child molesters, Skeens was not the victim of former abuse, nor was he a drug addict or alcoholic. His character is simply that of a predator of children. Indeed, the fact that Skeens took the time to exhibit pornography to K.W. while molesting her indicates that his offenses were subject to some degree of planning on his part. There is no evidence that Skeens would have ceased the molestation of his own accord. Furthermore, K.W. never indicated that her relationship with Skeens was constructive, and the importance of his lack of criminal history is greatly diminished here, given the evidence that he committed many other uncharged acts against K.W. and was, thus, not living a law-abiding life apart from the charged crimes.

## ARGUMENT

### I. The evidence sustained the jury's verdicts.

The State produced sufficient evidence that Skeens subjected K.W. to sexual intercourse, placed his penis in her mouth, placed his mouth on her vagina, digitally penetrated her sex organ,

and fondled her chest with an intent to arouse his sexual desires. In reviewing a challenge to the sufficiency of the evidence, this Court does not reweigh the evidence or assess the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). This Court considers only the evidence favorable to the verdict and all reasonable inferences therefrom. *Id.* This Court will affirm the conviction unless "no rational fact-finder" could have found the defendant guilty beyond a reasonable doubt. *Clark v. State*, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

### A. The evidence showed that Skeens penetrated K.W.'s sex organ with his finger.

Skeens' first challenge to the sufficiency of the evidence supporting his convictions is that there was no evidence that he penetrated K.W.'s sex organ with his finger. (Appellant's Br. 9-10). The State charged Skeens with deviate sexual conduct in relevant part as follows:

> Sometime between September 2007 and December 2008, Eric B. Skeens, who was at least twenty-one years of age, performed deviate sexual conduct with a child under fourteen, to wit: said defendant penetrated, with an object, the female sex organ of a female child whose initials are K.W.

(Appellant's App. 12). Deviate sexual conduct may be defined as the penetration of the sex organ of a person with an object. Ind. Code § 35-41-1-9(2). Our Supreme Court has held that a finger is an object within the meaning of the deviate sexual conduct statute. *Stewart v. State*, 555 N.E.2d 121, 126 (Ind. 1990). Proof of the slightest penetration is sufficient to sustain a conviction for child molesting. *Dinger v. State*, 540 N.E.2d 39, 40 (Ind. 1989).

According to K.W., Skeens touched her "private" where she goes "potty." (Tr. 531-32). K.W.'s testimony at trial showed that the area where she went potty was inside her private, as she differentiated that area from the outside of her private. (Tr. 531-32). In addition, the sexual assault nurse who examined K.W. testified that K.W. reported that Skeens had put his fingers inside her private. (Tr. 584; Def. Ex. A; Appellant's App. 327). This was sufficient evidence of

9

penetration of K.W.'s sex organ to support his conviction for sexual deviate conduct. *See Scott v. State*, 771 N.E.2d 718, 714-25 (Ind. Ct. App. 2002) (upholding a conviction for sexual deviate conduct based upon the victim's testimony that the defendant put his finger inside her private and touched the area where she used the restroom).

On appeal, Skeens first directs the Court to K.W.'s testimony describing another, uncharged act of molestation by Skeens wherein he touched the outside of her "private," and he points to K.W.'s statement that Skeens did "not really" touch the inside of her private. (Appellant's Br. 10). This was evidence of another sexual act that does not support the jury's verdict as to the sexual deviate conduct charge, and thus will not be considered by this Court when reviewing the evidence sustaining the actual charged offense. *McHenry*, 820 N.E.2d at 126. In addition, contrary to Skeen's assertion on appeal, K.W.'s subsequent testimony clearly established that Skeens also touched her on the inside of her private. (Appellant's Br. 10). After K.W. testified that Skeens touched her where she went potty, the prosecutor asked her, "[d]id he ever tart [sic], touch any *other* parts of your private then too?" (Tr. 531-32) (Emphasis added). K.W. responded, "[u]m, he would touch the outside of it." (Tr. 532). Skeens' arguments on appeal are thus nothing more than an invitation to the Court to reweigh the evidence, something that this Court refuses to do. *Id.* Because the State produced substantial, credible evidence that Skeens' finger penetrated K.W.'s sex organ, the Court should affirm his conviction for sexual deviate conduct.

### B. K.W.'s testimony was not incredibly dubious.

Next, Skeens claims that his convictions cannot stand because K.W.'s testimony regarding the offenses was "wholly incredible." (Appellant's Br. 11). Thus, Skeens apparently seeks to apply the "incredible dubiosity" rule to K.W.'s testimony. According to that rule, an

appellate court will impinge upon the responsibility of the fact-finder to judge the credibility of witnesses only when confronted with inherently improbable, coerced, equivocal, or wholly uncorroborated testimony of incredible dubiosity. *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002). Put another way, application of this rule is limited to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a complete lack of circumstantial evidence of the appellant's guilt. *Id.* Thus, the rule is rarely applied, and is limited to cases in which "the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007).

K.W.'s testimony was not incredibly dubious. She unequivocally testified that Skeens subjected her to sexual intercourse, oral sex, digital penetration, and the fondling and licking of her chest. (Tr. 515-18, 520-23, 527, 531-33, 536-38). There was nothing inherently improbable about K.W.'s description of these acts. Skeens points to no internal inconsistencies within her testimony, and he does not claim on appeal that she was coerced into disclosure or her testimony. (Appellant's Br. 11-12). Thus, the incredible dubiosity rule does not apply to K.W.'s testimony.

Nevertheless, on appeal, Skeens attempts to impugn K.W.'s credibility in a number of ways, none of which is persuasive. (Appellant's Br. 11-12). First he claims that it is "wholly incredible" that Skeens could have subjected K.W. to sexual intercourse without causing her more serious injury. (Appellant's Br. 11). However, injury is not an element of any of the offenses for which Skeens was convicted, and there was evidence presented at trial that in the vast majority of child molesting cases, even those involving penetration of a child by an adult, there is no evidence of injury. (Appellant's App. 9-13; Tr. 591, 611). Thus, a mere lack of

11

injury does not undermine the State's case, nor does it render K.W.'s testimony inherently improbable.

Skeens also makes a general claim that K.W.'s testimony regarding the offenses, including her testimony that Skeens placed his penis in her mouth,[4] is more plausibly explained by the fact that K.W. "has watched pornography." (Appellant's Br. 11-12). This argument is disingenuous at best, considering that K.W. testified that it was Skeens who exhibited pornography to her. (Tr. 539, 542-43). Moreover, having seen pornography does not render K.W.'s testimony equivocal or inherently improbable.

Lastly, Skeens claims that it is "wholly incredible" he would "alternate between playing with his five-year-old son and molesting his eight-year-old stepdaughter." (Appellant's Br. 12). However, Skeens fails to explain what is wholly incredible about his scheme to distract his son, a potential witness, with toys in order to facilitate the commission of the offenses. In short, because K.W. gave consistent, unwavering testimony regarding the acts of molestation committed by Skeens, and Skeens points to nothing in the record that discredits her testimony so as to render it incredibly dubious, the Court should affirm his convictions.

## II. The trial court properly assessed the mitigating and aggravating circumstances.

The trial court did not abuse its discretion when it identified the mitigating and aggravating circumstances in this case. The trial court's sentencing determination will be reversed only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). An abuse of discretion occurs where the trial court's decision is clearly against the logic and

---

[4] In this portion of his Brief, Skeens also argues that merely placing his penis in K.W.'s mouth does not indicate any intent to satisfy the sexual desires of either party. (Appellant's Br. 11). However, an intent to satisfy sexual desire is not an element of the offense of child molesting by deviate sexual conduct. Ind. Code § 35-42-4-3(a)

effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn. *Id*.

### A. The trial court did not overlook any proper mitigators.

The trial court acted within its discretion when it considered, but specifically rejected, each of mitigating circumstances Skeens argues on appeal that it overlooked. (Tr. 716). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493 (citing *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999), and *Wilkins v. State*, 500 N.E.2d 747, 749 (Ind. 1986)). Here, the mitigators proffered by Skeens were either unsupported by the record, were insignificant for sentencing, or both.

*i) Adult Risk Assessment*

Skeens argues that his low score on the Adult Risk Assessment should have been credited with mitigating weight. (Appellant's Br. 13-14). However, this Court has held that the use of such scoring models for sentencing purposes is improper as a matter of law. *Rhodes v. State*, 896 N.E.2d 1193, 1194-95 (Ind. Ct. App. 2008) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). In so holding, the *Rhodes* Court found that the use of scoring models undercuts the right of a defendant to an individually crafted sentence, involves the duplicative consideration of sentencing factors, and often involves the consideration of factors that are of limited utility for sentencing. *Id*.

Although *Rhodes* dealt with the use of scoring models as aggravating circumstances, the same rationales relied upon by the *Rhodes* Court apply to the determination of mitigating circumstances. In this case, the concern for duplicative consideration of factors renders the use of Skeens' risk assessment score particularly improper for sentencing. For example, the trial

court already found Skeens' lack of a criminal record as a mitigating circumstance, and on appeal, he argues that his employment record merited mitigating weight. (Tr. 716; Appellant's Br. 14). However, six of the ten factors considered in his score stem from his lack of a criminal record, and his employment history was included as part of his score. (Green App. 359). The trial court did not abuse its discretion by refusing to consider a mitigating factor that is currently improper as a matter of law and one that would have constituted "double dipping" of mitigating circumstances.

### ii) Employment History

The trial court also properly refused to credit Skeens' nine-month employment history, as it was unsupported by the record and was insignificant for sentencing. The only evidence provided by Skeens regarding his employment was a notation in his Adult Risk Assessment score that he had been employed for nine of the twelve prior months, presumably those months preceding his arrest in this matter. (Green App. 359). Skeens offered no additional employment information to his PSI investigator and did not testify regarding his employment at his sentencing hearing. (Green App. 356; Tr. 707-08). Thus, the trial court properly rejected this mitigator because it had no evidence to consider regarding the details of Skeens' employment or his success at it. *See Bennett v. State*, 787 N.E.2d 938, 948 (Ind. Ct. App. 2003) (rejecting employment history mitigator where defendant did not present a specific work history, performance reviews, or attendance records).

Furthermore, steady employment is not necessarily a significant mitigating factor. *See McKinney v. State*, 873 N.E.2d 630, 646 (Ind. Ct. App. 2007) (citing *Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003)). Many people are gainfully employed such that a trial court is not required to note it as a mitigating factor. *Id*. Skeens was twenty-eight years old at

14

the time he committed the offenses. (Green App. 352). Nine months of gainful employment is not so stellar a record for someone of that age that it merited mitigating weight. Indeed, this Court has refused to find an abuse of sentencing discretion for failing to accord mitigating weight to employment records much more substantial than Skeens'. *See, e.g., Comer v. State*, 839 N.E.2d 721, 729-30 (Ind. Ct. App. 2005) (upholding the sentencing court's refusal to find mitigating eighteen years of steady employment). Thus, the trial court did not err in refusing to find Skeens' employment record as a mitigator.

### *Undue Hardship*

The factor of undue hardship to Skeens' son was equally unsupported by evidence and insignificant for sentencing. This Court has held that "'many persons convicted of serious crimes may have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship.'" *Roney v. State,* 872 N.E.2d 192, 204-05 (Ind. Ct. App. 2007), *trans. denied* (quoting *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999)). Skeens failed below, and fails here on appeal, to produce evidence of any special circumstances that would entitle him to mitigating weight based upon undue hardship. (Green App. 355-56; Appellant's Br. 14). In addition, even if the trial court had imposed advisory, concurrent sentences for the four class A felonies and one class C felony and Skeens was afforded maximum good-time credit, he would still serve fifteen years. Given that Skeens' son was already six at the time of Skeens' trial, his son would have reached the age of majority before Skeens' release, even if that significantly lesser sentence had been imposed. (Tr. 455-56). Given the lack of evidence in the record of special circumstances in this case and the fact that the hardship to his son would be the same even if a much lesser sentence had been imposed, the trial court did not err in failing to recognize undue hardship as a mitigating factor.

15

### iv) Circumstances Unlikely to Recur

Skeens' last argument pertaining to mitigating circumstances is that the trial court should have recognized that, because he has no legal right to contact with K.W., his crime was unlikely to recur. (Appellant's Br. 14). That factor was not significant for sentencing for several reasons. First, there is no evidence in the record that K.W. had any desire to contact Skeens, and K.W.'s mother believed that Skeens committed the offenses, calling him a "monster" in the letter she submitted to the sentencing court. (Tr. 708; Appellant's App. 299). Given those circumstances, it is highly unlikely that there would ever be any contact between Skeens and K.W., let alone an opportunity to recommit the offenses. It is unclear why Skeens should be accorded mitigating weight towards his sentence due to a factor produced by the effect of the offenses themselves.

Second, as a convicted offender against children, Skeens is required to register as a sex offender, is prohibited by law from working, volunteering, or living near places where children congregate, and is prohibited from contacting children on the internet. Ind. Code §§ 11-8-8 *et seq*; 35-42-4-10 to -13. Thus, his opportunities to meet other children to molest will be greatly reduced due to operation of law, another factor over which he has no control.

Lastly, Skeens cites no case law wherein this Court has found that a sentencing court abused its discretion in failing to recognize this mitigating circumstance in a child molesting context, and the State is unaware of any. (Appellant's Br. 14). Indeed, this Court has noted that, in order for the "unlikely to recur" mitigator to be valid in a child molesting context, it must be supported by significant evidence that renders it "undeniably creditworthy." *Hillenburg v. State*, 777 N.E.2d 99, 109 (Ind. Ct. App. 2002). Skeens presented no such evidence. Because the fact that Skeens will not have the opportunity to reoffend against K.W. and his opportunity to offend

against other children is greatly reduced due to operation of law, this proffered mitigator was not significant for sentencing, and the trial court properly rejected it.

### B. The trial court did not consider any improper aggravators.

The trial court enumerated in its written sentencing order five aggravating factors, namely "position of trust; position of care, custody and control; repeated acts; age of victim being 7 & 8 years old; threats to the victim."[5] (Appellant's App. 301). The trial court did not abuse its discretion by identifying any improper aggravating circumstances.

*i) K.W.'s age*

Contrary to Skeens' argument on appeal, the trial court did not improperly consider K.W.'s age. As Skeens acknowledges in his Brief (Appellant's Br. 15), a trial court may properly consider a victim's age, even if it is an element of the offense, if the trial court specifies why the victim's age is aggravating. *See Garland v. State*, 855 N.E.2d 703, 710 (Ind. Ct. App. 2006). However, Skeens maintains that the trial court did not make a sufficiently particularized statement regarding why K.W.'s age was aggravating. (Appellant's Br. 15).

In *Kile v. State*, 729 N.E.2d 211, 214 (Ind. Ct. App. 2000), the defendant challenged the use of his six year old son's age as an aggravating circumstance in his sentencing for a neglect of a dependent conviction. The Court held that, although the neglect of a dependent statute required the victim to be under the age of eighteen, it did not require the victim to be as young as Kile's son had been. *Id.* Thus, the Court held that the trial court's holding that the son's "young age" was a circumstance sufficiently particularized to that case to render it a proper aggravating circumstance. *Id.*

---

[5] There is a semi colon between the words "care" and "custody" in the trial court's sentencing order. (Appellant's App. 301). However, Skeens contends that only two factors were considered

17

Skeens was convicted of five child molesting offenses, all of which required that K.W. be under the age of fourteen. (Appellant's App. 9-13). K.W. was seven and eight years old when Skeens committed the offenses for which he was convicted. (Appellant's App. 9-13; Tr. 447). The trial court found that K.W.'s age was aggravating because she was "very young…much younger than the statute even requires." (Tr. 715-16). Pursuant to *Kile*, the trial court made a finding particularized to this case explaining why K.W.'s very young age was an aggravating circumstance. Thus, this aggravator was proper as a matter of law and in this case.

### ii) Position of Care, Custody, and Control

Skeens' last challenge to the trial court's finding of aggravating circumstances is that it could not properly find that his position of trust and his position of care, custody, and control over K.W. were both aggravators for sentencing purposes. (Appellant's Br. 15-16). As a preliminary matter, although the trial court listed the two factors separately in its written order (Appellant's App. 301), it stated at Skeens' sentencing hearing that the position of care, custody, and control "goes along" with the position of trust aggravator. (Tr. 715). Thus, Skeens' argument on this issue must fail, as it is not clear that the trial court actually considered those two factors separately.

Nevertheless, the State acknowledges that this Court has sometimes analyzed the position of trust and position of care, custody, and control factors as though they were the same. *See, e.g.*, *Hines v. State*, 856 N.E.2d 1275, 1280 (Ind. Ct. App. 2006), *trans. denied* (upholding the position of trust aggravator where it found that the evidence showed that the victims was in the defendant's care when she spent the night at his house). However, although there may often be overlap between those two factors, they are not necessarily the same. For instance, this Court

by the trial court, namely "position of trust" and "care, custody, and control." (Appellant's Br.

18

has upheld the validity of the position of trust aggravator based merely upon the relationship of the victim to the defendant where the victim knew the defendant as her father her whole life and called him "Dad." *See McCoy v. State*, 856 N.E.2d 1259, 1262 (Ind. Ct. App. 2006). Thus, that aggravator may be established without reference to a defendant's actual care, custody, and control over a victim.

Here, the evidence showed that K.W. considered Skeens to be her father and called him "Dad." (Tr. 464, 510). Based on this evidence, pursuant to *McCoy*, the sentencing court __ __erly concluded that Skeens was in a position of trust with K.W. In addition, the molestation took place while K.W.'s mother was not at home and while she had placed K.W. in Skeens' sole care. (Tr. 458-62, 544). This separate evidence established the care, custody, and control aggravator, and, thus, the trial court did not abuse its discretion, if it did indeed find those two factors to be discrete aggravating circumstances.

## C. Even if the trial court relied upon one improper aggravating factor, the Court should uphold Skeens' sentence.

Even if the trial court improperly found that Skeens' position of care, custody, and control was an aggravating factor, the Court should still uphold his sentence. Remand for resentencing is necessary only if the Court "cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d. at 491. It is clear that the trial court would have imposed the same sentence given the significance of the clearly properly found aggravating circumstances and the comparative insignificance of the lone mitigating circumstance here.

Remand is not necessary here for the reason that Skeens does not challenge the trial court's findings that he was in a position of trust with K.W., that he committed repeated acts of

---

15-16).

19

molestation against K.W., and that he threatened K.W. (Appellant's Br. 14-16). It is well-settled law that the finding of even one valid aggravating factor may support the imposition of enhanced sentences. *Sherwood v. State*, 702 N.E.2d 694, 699 (Ind. 1998). Indeed, the position of trust aggravating circumstance, which the trial court stressed twice at sentencing and once in its written sentencing order that it gave "great weight," is, by itself, sufficient to uphold even the imposition of a maximum sentence for child molesting. (Appellant's Br. 301; Tr. 715-16); *see Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005); *Singer v. State*, 674 N.E.2d 11, 14 (Ind. Ct. App. 1996). In addition, as shown above, the trial court found as a proper aggravating factor that Skeens began molesting K.W. at the extremely young age of seven.

Set against those four weighty aggravating circumstances is the only valid mitigating factor, Skeens' lack of criminal history. (Tr. 716). Although the relative weight ascribed to any sentencing factor is no longer available for review by this Court, *Anglemyer*, 868 N.E.2d at 491, the Court can confidently find that the trial court would have imposed the same sentence despite his lack of criminal history. The significance of that factor was greatly reduced by the fact that Skeens committed repeated uncharged acts of the molestation against K.W. at the Williams Street home over a period of at least a year. (Tr. 455-56, 516, 524-25, 528-29, 533-536546). *See Ware v. State*, 816 N.E.2d 1167, 1179 (Ind. Ct. App. 2004) (holding that Ware's trustworthiness and law-abiding character not significant for sentencing where defendant had an ongoing sexual relationship with his victim over a period of months).

Moreover, at the time of the preparation of his PSI, an additional class A felony child molesting charge involving K.W. was pending against Skeens in Kosciusko County. (Appellant's App. 328-30; Green App. 354). Thus, although Skeens had no previous convictions, there was evidence in the record that he was not leading a law-abiding life apart

from his instant convictions. Given the number and importance of the aggravating factors present here, particularly Skeens' position of trust with K.W., and the diminished importance of the only valid mitigator, the Court should uphold Skeens' sentence.

### III. Skeens' sentence, which is not the maximum for the offenses, is not inappropriate given the nature of his offenses and his character.

Skeens was convicted of four counts of class A felony child molesting and one count of class C felony child molesting. (Appellant's App. 302). Thus, his faced a potential aggregate sentence of 208 years. Ind. Code §§ 35-50-2-4, -6. The trial court sentenced him to rty-five years for each of the class A felonies and to seven years for the class C felony, to be served consecutively, for an aggregate sentence of 187 years. (Appellant's App. 301). Therefore, Skeens' aggregate sentence is twenty-one years short of the maximum sentence he could have received for his offenses. This substantial sentence is entirely appropriate given the nature of Skeens' offenses and his character.

An appellate court may revise a sentence authorized by statute only where the court, after due consideration of the trial court's sentencing decision, finds that the sentence imposed is inappropriate in light of the nature of the offense and the defendant's character. Ind. Appellate Rule 7(B); *Storey v. State*, 875 N.E.2d 243, 252-53 (Ind. Ct. App. 2007), *trans. denied*. Upon reviewing a sentence for appropriateness, an appellate court does not merely substitute its judgment for that of the trial court. *See Book v. State*, 880 N.E.2d 1240, 1252-53 (Ind. Ct. App. 2008), *trans. denied*. The defendant carries the burden to convince the appellate court that the sentence imposed is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007).

### A. The nature of Skeens' offenses merits the sentence imposed.

The nature of Skeens' offenses merits the enhanced, consecutive sentences imposed. The nature of Skeens' offenses was that he subjected K.W., who had always thought of him as her

21

father, to a variety of invasive sexual acts. (Tr. 464, 510). The fact that Skeens was for all intents and purposes K.W.'s father renders his crimes much more egregious than if he had simply been a stranger to her. Indeed, this Court has recognized that acts of molestation committed by father figures involve a violation of "one of the highest positions of trust" possible. *McCoy v. State*, 856 N.E.2d 1259, 1262 (Ind. Ct. App. 2006).

Skeens used his position of trust and his access to K.W. to first subject her to performing oral sex on him and fondling her chest. (Tr. 549). Although he was sentenced for offenses committed during the time K.W. was seven and eight, there is evidence in the record that he began molesting K.W. much earlier, when she was five years old. (Appellant's App. 301; Tr. 549, 580, 582). Up until she was eight years old, Skeens subjected K.W. to sexual intercourse, the giving and receipt of oral sex, digital penetration, and the fondling and licking of her chest. (Tr. 515-16, 520-23, 527, 531-33, 536-38). After performing painful sexual intercourse on K.W., Skeens ejaculated inside her. (Tr. 517-18, 521-22, 580). In the aftermath, K.W. experienced painful urination, and she observed two things that no seven or eight year old girl should ever see, namely that she was bleeding and "leaking." (Tr. 521, 523, 580). Skeens was convicted of only five offenses. (Appellant's App. 302). However, there is an abundance of evidence in the record that he committed each of the charged acts multiple times and that he subjected K.W. to other uncharged acts of molestation, such as the fondling of her anus with his penis and the fondling of the exterior of her vulva with his fingers. (Tr. 516, 524-25, 528-30, 533, 580).

The charged offenses were separate and distinct acts of molestation that support the imposition of consecutive sentences here. *See Mitchum v. State*, 685 N.E.2d 671, 680 (Ind. 1997) (recognizing that the imposition of consecutive sentences rests upon the moral principle

that separate and distinct crimes deserve separate punishments). This is not a case wherein the offenses took place in close proximity in time, rendering the imposition of consecutive sentences inappropriate. *See Kien v. State*, 782 N.E.2d 398, 416 (Ind. Ct. App. 2003) (reversing the imposition of consecutive sentences for two acts of class A felony child molestation because they occurred within a short period of time such that the defendant did not have a chance to reflect upon his heinous crimes). The charged acts took place over the course of at least a year, both before and after the family all lived together at the Williams Street home. (Tr. 455-56, 516, 546-49). Skeens had more than adequate time to reflect upon the propriety of his conduct.

Other circumstances surrounding these offenses further render Skeens' sentence appropriate. Skeens would exhibit pornography depicting group sex to K.W. while molesting her, an additional uncharged act of depravity. (Tr. 539, 542-43). Skeens would also leave his young son unattended after initially distracting him with toys so that he could molest K.W. (Tr. 545-46). The effect on K.W. of listening to her young step-brother pound on the locked door of the room where Skeens was molesting her must have been gravely disturbing. (Tr. 545-46). In addition, on the one occasion when K.W. mustered the courage to resist Skeens, he threatened to alert the authorities and to tell her mother, making it seem as though K.W. were the perpetrator and not he, and making her afraid of two of the most likely sources of help. (Tr. 543-44). Skeens also ordered K.W. not to tell anyone about his crimes, further ensuring that he could continue to molest her. (Tr. 549-50).

As a result of Skeens' offenses, K.W. has behavioral issues and experiences nightmares so vivid that she wets the bed. (Tr. 482-83). K.W. continues to undergo therapy. (Tr. 482). In addition, although K.W. was the direct target of Skeens' crimes, he has obviously also forever changed the life of K.W.'s mother, who believed her daughter's disclosure and keenly feels the

guilt of failing to detect the crimes and to protect K.W. from Skeens. (Tr. 708; Appellant's App. 299-300).

On appeal, regarding the nature of his offenses, Skeens only states that he did not inflict "substantial" physical damage on his victim and used no force against her to accomplish his crimes. (Appellant's Br. 17). However, Skeens does not address the psychological and emotional damage he rendered upon K.W., nor does he seem to grasp that his threatening K.W. and telling her not to reveal his crimes was a type of force that was likely more effective than actual phy      force, as it is not as easily detected by others. Given Skeens' position as a father figure to K.W., the escalating and ongoing nature of the crimes, the repeated and uncharged offenses he committed against K.W., Skeens' son's presence in the home during some of the offenses, his threat to K.W., and the lasting, grave effect his crimes had on his victim, the Court should leave the trial court's sentencing order undisturbed.

### B. Skeens' character also merits the substantial sentence imposed.

Moreover, Skeens' character does not militate for a reduction in his sentence. Skeens makes no claim on appeal, nor is there any evidence in the record, that Skeens was subject to factors often cited to explain child molestation offenses, such as being the former victim of childhood sexual abuse or being under the influence of drugs and alcohol. (Green App. 356-57). Skeens plainly and simply preyed upon K.W. The fact that Skeens took the time and effort to display pornography to K.W. while molesting her indicates that these were not spur of the moment mistakes, but where the product of some degree of premeditation. (Tr. 539, 542).

In addition, there is no reason to believe that Skeens had any intention of discontinuing his molestation. K.W.'s mother, acknowledging what she considered to be the important father figure role that Skeens played in K.W.'s life, continued to allow her to visit Skeens even she

24

moved out of the Williams Street home and even after he moved to Kosciusko County. (Tr. 464-65, 466-67). Since, at the time of his sentencing, there was an additional class A felony child molesting charge pending against Skeens in Kosciusko County also pertaining to K.W., there is some indication in the record that he continued to molest her even after he moved away. (Green App. 354; Appellant's App. 328-30). His acts of molestation only stopped when K.W. was emboldened to disclose the offenses after viewing a sexual abuse presentation at her school. (Tr. 413-14).

It further speaks ill of Skeens' character that he apparently participated little in the preparation of his PSI, after his conviction for the offenses. Skeens failed to supply his PSI investigator with basic information routinely supplied by defendants regarding his relationship with his parents, his siblings, his former marital status, his employment, or his financial status. (Green App. 356). Skeens' most detailed remarks to his PSI investigator entailed expressing dissatisfaction with his trial counsel. (Green App. 357).

On appeal, Skeens first urges the Court to reduce his sentence because, before subjecting K.W. to extremely invasive, repeated sexual abuse, he had a "constructive" relationship with her. (Appellant's Br. 17). In support of his argument, Skeens cites *Rivers v. State*, 915 N.E.2d 141, 143 (Ind. 2009). In that case, the victim testified that her relationship with the defendant had been "good" and that they did many family activities together before he molested her. *Id.* There was no such testimony by K.W. in this case. In addition, the *Rivers* case dealt with sentencing for merely two incidents of molestation over a short period of time, *Id.* at 143-44, circumstances that perhaps convinced the *Rivers* Court to afford more importance to this factor than is merits here, where Skeens committed five charged acts and numerous uncharged acts over a period of years.

25

Next, Skeens contends that his lack of a criminal record should result in a lesser sentence. (Appellant's Br. 17). Although the State is aware that, in reviewing Skeens' sentence under the authority of Appellate Rule 7(B), this Court conducts an independent review, it does so while taking into consideration the unique perspective of the sentencing court. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). Here, the sentencing court already found Skeens' lack of criminal history to be a mitigating factor. (Appellant's App. 301). Furthermore, because Skeens committed multiple uncharged acts of molestation against K.W., he cannot be said to ' ve lived a law-abiding life apart from the charged offenses. (Tr. 516, 524-25, 528-30, 533, 542-43, 580).

Skeens also argues that the fact that he had custody of his son should entitle him to a lesser sentence. (Appellant's Br. 17). However, given that he committed acts of molestation against K.W. his son was in his custody and while his son was merely in another room of the house renders this argument unpersuasive. (Tr. 545-46). In addition, as outlined above, the evidence supporting Skeens' employment for a "substantial" period of time is scanty. (Green App. 356, 359). Lastly, inasmuch as Skeens suggests that his character merited probation, he was not eligible by law to a fully suspended sentence. (Appellant's Br. 18); Ind. Code § 35-50-2-2(b)(4)(H).

In short, nothing about Skeens' character renders his sentence inappropriate. Skeens reported to his PSI investigator that his childhood days were the "[b]est days of my life." (Green App. 356). Because of Skeens' crimes, K.W. will be unable to make the same statement. In light of the egregious nature of his offenses and his poor character, Skeens merits a sentence that will ensure that he never has an opportunity to destroy another childhood.

## CONLUSION

For the foregoing reasons, the State respectfully requests that the Court affirm the trial

court in all respects.

Respectfully submitted,

GREGORY F. ZOELLER
ATTORNEY GENERAL OF INDIANA
Atty. No. 1958-98

By:

Ann L. Goodwin
DEPUTY ATTORNEY GENERAL
Atty. No. 22365-53
*Counsel for Appellee*

27

## **Certificate of Service**

I do solemnly affirm under the penalties for perjury that on March 9, 2010, I served upon the opposing counsel in the above-entitled cause two copies of the Brief of Appellee by causing the same to be deposited in the United States mail first-class postage prepaid, addressed as follows:

Jeremy K. Nix
MATHENY HAHN DENMAN & NIX, LLP
45 West Market Street
P.O. Box 191
Huntington, IN 46750

Ann L. Goodwin
Deputy Attorney General

Office of Attorney General
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Telephone (317) 232-0709