ORIGINAL

## IN THE INDIANA COURT OF APPEALS

### CAUSE NO. 35A05-0909-CR-00515

| | |
|---|---|
| Eric Benson Skeens<br>Appellant-Defendant below | ) Appeal from the Huntington Circuit Court<br>)<br>) |
| V. | ) Lower Court Cause No. 35C01-0812-FA-00073<br>) |
| State of Indiana<br>Appellee-Plaintiff below | ) The Honorable Thomas M. Hakes, Judge<br>) |

FILED SEP 24

## PETITION TO TRANSFER

Jeremy K. Nix
Attorney ID#24330-35

MATHENY, HAHN, DENMAN & NIX, L.L.P.
45 West Market Street
P.O. Box 191
Huntington, IN 46750
Telephone: (260) 356-7030

Attorney for Appellant

FILED
SEP 24, 2010

## IN THE INDIANA COURT OF APPEALS

### CAUSE NO. 35A05-0909-CR-00515

| | |
|---|---|
| **Eric Benson Skeens** ) | Appeal from the Huntington Circuit Court |
|    Appellant-Defendant below ) | |
| ) | |
| V. ) | Lower Court Cause No. 35C01-0812-FA-00073 |
| ) | |
| **State of Indiana** ) | The Honorable Thomas M. Hakes, Judge |
|    Appellee-Plaintiff below ) | |

### QUESTION PRESENTED ON TRANSFER

Whether this Court should grant transfer under Appellate Rule 57(H)(1) and (2) from the decision of the Indiana Court of Appeals that held there was sufficient evidence to support defendant's conviction for child molesting by deviate sexual conduct where the child testified the defendant touched the outside of her privates and where she went potty, and that only reduced the defendant's inappropriate sentence from 187 years to 90 years.

i

## TABLE OF CONTENTS

**QUESTION PRESENTED ON TRANSFER** .............................................. i

**TABLE OF CONTENTS** .................................................................... ii

**PETITION TO TRANSFER**

    I.    **BACKGROUND AND PRIOR TREATMENT OF ISSUES ON TRANSFER** ............................................................1

        A.    **STATEMENT OF THE PROCEDURAL FACTS** .................1

        B.    **STATEMENT OF THE SUBSTANTIVE FACTS** .................3

    II.   **ARGUMENT** ...........................................................7

        A.    <u>The decision of the Court of Appeals was in conflict with this Court's precedent.</u>. ...............................7

        B.    <u>The sentence imposed was inappropriate and conflicts with prior decisions of this Court and the Court of Appeals.</u> ........9

    III.  **CONCLUSION** ......................................................11

IN THE INDIANA COURT OF APPEALS

CAUSE NO. 35A05-0909-CR-00515

| Eric Benson Skeens<br>Appellant-Defendant below | ) Appeal from the Huntington Circuit Court<br>)<br>) |
|---|---|
| V. | ) Lower Court Cause No. 35C01-0812-FA-00073<br>) |
| State of Indiana<br>Appellee-Plaintiff below | ) The Honorable Thomas M. Hakes, Judge<br>) |

## PETITION TO TRANSFER

### I. BACKGROUND AND PRIOR TREATMENT OF ISSUES ON TRANSFER

#### A. STATEMENT OF THE PROCEDURAL FACTS

On December 10, 2008, the State of Indiana filed five charges against Eric Skeens ("Skeens") alleging that he committed the offenses of child molesting against a single victim. (App. p. 1, 9-13). The informations alleged that between March of 2007 and December of 2008, Skeens, who was over twenty-one (21) years of age, engaged in sexual intercourse with (Count I), performed oral sex on (Count II), submitted to oral sex from (Count III), penetrated, with an object, the sex organ of (Count IV), and touched or fondled with the intent to arouse or satisfy his own sexual desires or that of (Count V), a child less than fourteen years of age. (App. p. 13). Counts I through IV were each class A felonies and Count V was a class C felony. The case was set for a three day jury trial that commenced on July 21, 2009.

After the State rested, Skeens moved for a directed verdict on Count IV arguing there was no evidence that K.W.'s sex organ was penetrated with an object. (Tr. p. 637). The trial court denied the motion for a directed verdict. (Tr. p. 639). On July 23, 2009 the jury found Skeens guilty of all five counts. The trial court directed the Huntington County Probation Department to prepare

1

and file a Presentence Investigation Report and set the matter for sentencing on August 31, 2009. (Tr. p. 703).

On Counts I-IV, each child molesting as a class A felony, Skeens was sentenced to the advisory term of thirty (30) years, with fifteen (15) years added for aggravating circumstances. On Count V, child molesting as a class C felony, Skeens was sentenced to the advisory sentence of four (4) years, with three (3) years added for aggravating circumstances. The trial court ordered the sentences on the five counts to run consecutively, for a total executed sentence of 187 years, no part of which was suspended. (Tr. p. 717).

At the sentencing hearing, the trial court stated,

> I've gone back through the um, file. I would note that we were here for was it three days? Something like that of trial. I've gone through all the reports, gone through all the records. Uh, there's been a judgment of conviction entered on the matters Counts one through five and in looking it all over, I find that there were aggravators and those include the position of trust, which I give great weight. Position of care, control and custody which goes along with the trust, I give great weight. There were repeated acts. Um, the victim was less than twelve years of age that the statute speaks of, but in fact in this case the victim was between seven and eight years old, which is very young. Uh, much younger than the statute even requires. And there was a threat to the child if she told what was going on when the child tried to make an effort to tell. I find those are very strong aggravators. I do consider the mitigators, and I do know that there is no criminal history, although I, I did see there was a pending charge the Court doesn't take that into consideration, and I do find no criminal history as a mitigator. Uh, I have considered the others likely uh, likelihood that he would respond to probation. Uh, the adult report risk being three. The offense unlikely to reoccur, that he has another child, and that he was employed. But in considering those, I don't find those to be mitigators. I find that the mitigators strongly outweigh the aggravators. Great weight is given to position of trust. When I heard the evidence the child had no place to go. She described waking up in the mornings and mom would be at work and dad, albeit stepdad would get her up so she could go to school. And the testimony was that he would engage in sexual acts with her prior to her going to school. And he was the one that she looked to protect her. Position of trust carries great weight. I have also looked over uh, the uh definition of restricted felon, and I find that he is a child molester as set out by statute. That he is older than age twenty-one, and that the child is younger than twelve, and I do a finding on those facts. On Count one I sentence you to thirty years and I add fifteen for aggravating circumstances. On Count two I sentence you to thirty years and add fifteen for aggravating circumstances. On Count three I sentence you to thirty years and add fifteen for aggravating circumstances. And on Count four I sentence you to thirty years and add fifteen for aggravating circumstances. And on Count five I sentence you to four years and add three years for aggravating circumstances. I suspend none of that time, all time to run consecutive. You have the

2

right to appeal this conviction. If you wish to appeal, you need file either a motion for that, uh within thirty days of that, this date and I am appointing Jeremy Nix for purposes of appeal.

(Tr. p. 715-717).

On August 25, 2010, the Indiana Court of Appeals issued its Memorandum Decision - Not for Publication. The Court of Appeals found there was sufficient evidence to sustain Skeens' convictions, that the trial court did not abuse its discretion by declining to find Skeens' proposed mitigating factors, and that Skeens' sentence should be reduced from 187 years to 90 years. Slip Op. p. 14, 23 & 27. Skeens now seeks to transfer his case to this Court.

## B. STATEMENT OF THE SUBSTANTIVE FACTS

Eric Skeens, his wife, Rachel, and his stepdaughter, K.W., moved to Huntington, Indiana in May of 2005. (Tr. 450). K.W. was five years of age at the time and enrolled in Flint Springs Elementary. (Tr. p. 451). Skeens and Rachel divorced on June 30, 2006, but continued to live together. (Tr. p. 451). In September of 2007, Skeens, Rachel, and K.W. moved into a home located at 338 William Street in Huntington. (Tr. p. 453). Following the move, K.W. transferred to Horace Mann Elementary in March of 2008 while in the second grade. (Tr. p. 455). Rachel and K.W. continued to live with Skeens on William Street until June of 2008 when Rachel left him. (Tr. p. 456).

Rachel became a Certified Nursing Assistant (CNA) in September of 2007. (Tr. p. 457). Her first job as a CNA was on third shift at Norwoods Nursing Home, where she worked from 11:00 p.m. to 7:00 a.m. (Tr. p. 458). Rachel then worked at Parkview Home Health & Hospice, where she had to be at her patient's house by 8:00 a.m. during the week and typically worked every third weekend. (Tr. p. 462). When Rachel had to leave early for work, Skeens' would put K.W. on the bus. (Tr. p. 461). Skeens would also watch K.W. while Rachel worked on the weekends. (Tr. p. 463). Even

3

after Rachel left Skeens, Skeens maintained a relationship with K.W. and would have her for visits on some weekends. K.W. did not have a relationship with her biological father and considered Skeens as her father. (Tr. p. 464).

On December 5, 2008, the school counselor at Horace Mann Elementary showed a video to K.W.'s third grade class titled, "Breaking the Silence, Children Against Child Abuse." (Tr. p. 411). The video contained a segment on sexual abuse. (Tr. p. 412). The general theme of the video was that if abuse was occurring against a child, the child should tell an adult. If the adult does nothing, the child s̲ ̲ ̲ ̲tell another adult until someone provided help. (Tr. p. 412). The school counselor instructed the students to write in their reflection journals following the video. The students were told that if they needed help, they should write the word "help" on their journal paper. (Tr. p. 413). While the counselor was observing the children writing in their journals, K.W. indicated she wanted to talk to the counselor. (Tr. p. 414). After speaking with K.W., the school counselor called the Huntington County Department of Child Services. (Tr. p. 416).

After receiving the initial report, the Huntington County Department of Child Services ("HCDCS") decided to investigate the report immediately. (Tr. p. 434). Caseworker Nicole Allen ("Allen") spoke to the child's mother at the HCDCS headquarters. (Tr. p. 435). Allen contacted law enforcement, the Prosecutor's Office, and McKenzie's Hope Child Advocacy Center to schedule an interview later that day. (Tr. p. 437). Following the interview, an appointment was scheduled for K.W. to be examined at the Fort Wayne Sexual Assault Treatment Center. (Tr. p. 441).

At the Fort Wayne Sexual Assault Treatment Center, K.W. was examined by Sharon Robison ("Robison"), a sexual assault nurse examiner. Robison testified at trial that K.W. had a normal examination, meaning her hymen was perfect with no injury and her anus was also perfect. (Tr. p.

4

590). Robison further testified that in ninety to ninety-five percent of children examined there will be no physical injury noted. She testified that injuries heal quickly because the female sex organ is very vascular so there is a lot of blood flow. (Tr. p. 593). Robison testified that based on the minor's medical history and time from the last alleged assault, she did not expect to find any medical evidence of sexual assault. (Tr. p. 593).

K.W. testified at trial against Skeens. K.W. testified Skeens touched her on her private parts while living at 338 William Street in Huntington. The touches occurred while they were in the living room, bathroom, and her parents' bedroom. (Tr. p. 516). K.W. testified that Skeens sat her on the bathroom sink on a towel that he later used to wipe up the white stuff that came out of her private. (Tr. p. 518). While she sat on the sink, Skeens put his private inside her private. It hurt when he did so. (Tr. p. 521). He would move around and white stuff came out of his private. (Tr. p. 522). It looked kind of white and a little bit bubbly. He would then take a towel and wipe it off. (Tr. p. 522). When she went to the bathroom after this happened it burned. (Tr. p. 523).

K.W. also testified that Skeens touched her private with his tongue and with his fingers. (Tr. p. 523). The touching of her private with his tongue and fingers occurred in the living room and her parents' bedroom. (Tr. p. 524). K.W. testified that she would lay on her back with Skeens below her and under her legs, which were separated. (Tr. p. 526). Skeens would then lick her private with his tongue, which felt wet and weird. (Tr. p. 527). K.W. further testified that Skeens would touch her privates with his finger while in the living room, bathroom, and her parents' bedroom. (Tr. p. 529). She indicated he touched the outside of her private and would rub. (Tr. p. 530). Skeens would use one finger on both hands to rub her privates in circles. (Tr. p. 531). He would touch where she goes potty. (Tr. p. 531). K.W. also testified Skeens would put his private in her mouth. (Tr. p. 533). That

occurred in the living room and her parents' bedroom. (Tr. p. 533). She would lay on her back while Skeens was on his belly on top of her like a push up. (Tr. p. 534). He would put his private in her mouth. (Tr. p. 535). Finally, K.W. indicated that Skeens would touch her boobs with his finger and mouth. (Tr. p. 537). He would rub her boobs with his fingers and lick them with his tongue. (Tr. p. 538).

K.W. described Skeens' privates as a long type of mushroom shape with a hole. (Tr. p. 538-39). She indicated that Skeens would show her pornographic movies, one of which was called "Real Sex." These movies would be shown on the flat screen television in the living room and on the television in the playroom. (Tr. p. 541-42). Skeens would touch her privates with his tongue, finger, and his privates while they were watching the movies. (Tr. p. 542).

On one occasion, K.W. tried to leave the bedroom while the abuse was occurring. However, Skeens told her that if she did not come back he would call the police and they would tell her mom. K.W. testified she went back because she was scared. (Tr. p. 544). K.W. testified that the intercourse, oral sex, and fondling occurred in the home located at 338 William Street in Huntington. (Tr. p. 548).

After K.W. was examined at the Sexual Assault Treatment Center, she was referred to the Bowen Center in Huntington for counseling. K.W.'s counselor testified that it was very common for children to delay before talking about sexual abuse. (Tr. p. 622). The counselor further testified that K.W. was able to sort out reality and that it had been very uncomfortable for her to talk about what happened. (Tr. p. 626-27).

6

## II. ARGUMENT

### A. The decision of the Court of Appeals was in conflict with this Court's precedent.

This Court should grant Skeens' Petition to Transfer under Appellate Rule 57(H)(2), as the decision of the Court of Appeals conflicts with the precedent of this Court. Evidence of a touching without more does not support a conviction for child molesting as a class A felony, which requires "penetration of the female sex organ." See Spurlock v. State, 675 N.E.2d 312, 315 (Ind. 1997). Proof of the slightest penetration is enough to support a conviction. See Dinger v. State, 540 N.E.2d 39, 40 (Ind. 1989). There is no requirement that the vagina be penetrated, only that the female sex organ, including the external genitalia, be penetrated. Smith v. State, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), trans. denied. However, there must be proof of even the slightest penetration.

In Spurlock, this Court addressed this issue in the context of penetration of the female sex organ during intercourse, rather than during deviate sexual conduct. In Spurlock, there was no physical or medical evidence of penetration and the child testified that the defendant "tried" to have sex with her and that she did not know whether he penetrated her. Spurlock v. State, 675 N.E.2d at 315. The child testified that her vagina was used to go to the bathroom as well as for intercourse, which showed a generalized understanding of the term and supported a view that any penetration would have been understood by her as penetration of her sex organ. Id.

In this case, Skeens was charged in Count IV with performing deviate sexual conduct with K.W. by penetrating, with an object, her female sex organ. The State submitted a jury instruction that a finger is an "object" for purposes of the criminal statute defining deviate sexual conduct and argued that Skeens should be convicted of Count IV for penetrating K.W.'s sex organ with his finger. However, the nurse examiner who performed the sexual assault examination of K.W. indicated that

7

there was no physical evidence that K.W. was the victim of sexual abuse. The nurse examiner testified that K.W. had a normal examination, meaning her hymen was perfect with no injury. The only evidence that could establish penetration of K.W.'s sex organ by Skeens' finger was the testimony of K.W.

On direct examination, K.W. was specifically asked by the State, "Did he touch your private with his finger on the outside or the inside or ....," to which K.W. replied, "The outside." (Tr. p. 530). The State subsequently asked K.W., "Did he ever touch the inside of your private with his finger?" K.W. replied, "Mm, not really." (Tr. p. 531). When K.W. was asked "Did he ever touch the, the part of your private where you go potty or anywhere like that?" K.W. replied, "Yes." (Tr. p. 531). However, K.W. never distinguished her "private" and the part "where she goes potty." When subsequently asked, K.W. reiterated that Skeens "touched the outside of it (her private)." (Tr. p. 532). The testimony of K.W. never established that Skeens penetrated her sex organ with his finger. She specifically described rubbing in soft circles on the outside of her private. The touching or rubbing of her private by Skeens would only support a conviction for child molesting as a class C felony. K.W. was able to understand the penetration of her sex organ, as she had previously testified that Skeens inserted his private inside her private. (Tr. p. 521). However, K.W. then clearly testified that Skeens only touched the outside of her private with his fingers. Thus, the State failed to present sufficient evidence that Skeens' finger penetrated, even slightly, the sex organ of K.W. to sustain a conviction for child molesting by deviate sexual conduct as charged in Count IV. The decision of the Court of Appeals was in conflict with this Court's decision in <u>Spurlock</u> and must be reversed.

## B. The sentence imposed was inappropriate and conflicts with prior decisions of this Court and the Court of Appeals.

This Court should grant Skeens' Peition to Transfer under Appellate Rule 57(H)(1) and (2) as the sentencing decision conflicts with prior decisions of this Court and the Indiana Court of Appeals. The Indiana Constitution was amended in 1970 to grant the appellate courts the authority to "provide in all cases an absolute right to ... the... review and revision of sentences for defendants in all criminal cases." Ind. Const. Art. 7, § 6. The purpose of the amendment was to provide more uniformity in sentencing. Rodriguez v. State, 785 N.E.2d 1169, 1174 (Ind. Ct. App. 2003), trans. denied. Pursuant to this authority, this Court adopted Appellate Rule 7, which provides that "[t]he court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App.R.7(B). When this Court made the change to Appellate Rule 7(B), the thrust was changed from a prohibition on revising sentences unless certain narrow conditions are met to an authorization to revise sentences when certain broad conditions are satisfied. Neale v. State, 826 N.E.2d 635, 639 (Ind. 2005).

In this case, Skeens was convicted of five counts of child molesting. K.W. testified that all of the offenses occurred while she lived at 338 William Street in Huntington. K.W. lived at that address with her mother and Skeens for ten months, from September of 2007 until June of 2008. Skeens, Rachel and K.W. had all lived together for over five years, from May of 2003 until June of 2008. During that time, Skeens had acted as her father, as K.W. had no relationship with her biological father. Even after Rachel and K.W. moved out of Skeens' home, K.W. and Skeens

9

continued to have a relationship. There was a long period of time where the relationship between Skeens and K.W. was constructive prior to the alleged molestation.

There was no evidence that Skeens inflicted substantial physical injuries on K.W.. In fact, the nurse examiner noted that K.W.'s genitalia were perfect. There was also no evidence that Skeens used force or threatened to use force to compel K.W. to participate, with the exception of one incident where K.W. indicated that Skeens threatened to tell the police, who would tell her mom, if she told anyone about the abuse. Thus, the nature of the offenses do not justify the imposition of enhanced, consecutive sentences.

The character of Skeens was shown by his complete lack of prior criminal convictions. He had custody of his five-year-old son at the time of his arrest, and had maintained steady employment for a substantial period of time. Skeens was not given the opportunity to be placed on probation, although his adult risk assessment instrument score showed a low level of supervision was needed. Thus, the character of Skeens does not support the imposition of enhanced, consecutive sentences.

In reviewing the appropriateness of sentences revised by this Court, a sentence at the advisory level for each count, to be served concurrently, is more appropriate and would provide uniformity between Skeens' sentence and that of similarly situated defendants. See Rivers v. State, 915 N.E.2d 141 (Ind. 2009) (The defendant's sentence was revised to concurrent terms of thirty years on two class A felonies for child molesting and a class C felony for child molesting where the defendant molested his seven or eight-year-old niece on two occasions, had no prior convictions, maintained steady employment, and served as a father figure to the victim for a number of years before committing his crimes.); Laster v. State, 918 N.E.2d 428 (Ind. Ct. App. 2009) (The defendant's sentence was revised to concurrent terms of thirty-six years on two class A felony convictions for

child molesting and six years on four class C felony convictions for child molesting where defendant repeatedly molested one five-year-old child, but there was no evidence the child sustained any injuries, defendant was in a position of trust, but defendant had no criminal history and maintained steady employment.); Buchanan v. State, 767 N.E.2d 967, 974 (Ind. 2002) (The defendant's 50 year sentence was reduced to 40 years where the defendant molested a five-year-old girl that he babysat, the defendant had maintained gainful employment throughout his adult life, and had a remote felony criminal history.); Harris v. State, 897 N.E.2d 927, 930 (Ind. 2008) (The defendant's sentence was revised from consecutive to concurrent sentences of 50 years each for two counts of child molesting as class A felonies where the defendant was in a position of trust when he repeatedly molested an eight-year-old girl and defendant had a prior criminal history); Monroe v. State, 886 N.E.2d 578, 580 (Ind. 2008) (The defendant's sentence was revised from five consecutive twenty-two year sentences with two years suspended, totaling 100 years, to five concurrent sentences of fifty years on five counts of child molesting as class A felonies, where the defendant was in a position of trust with his victim who he molested repeatedly over two years, and the defendant's criminal history was driving-related.) Therefore, Skeens requests that this Court grant his Petition to Transfer and exercise Its power under the Constitution of the State of Indiana and Appellate Rule 7(B) to review, revise, and reduce his sentence to the advisory sentence on each count, with the counts to run concurrently with each other, in order to provide uniformity between Skeens' sentence and prior decisions of the Court of Appeals and this Court.

### III. CONCLUSION

Eric Benson Skeens respectfully requests that this Court grant his Petition to Transfer, find that there was insufficient evidence to support his convictions, or in the alternative, find that the

sentence imposed was inappropriate in light of the nature of the offense and the character of Skeens, and for all other just and proper relief in the premises.

Respectfully submitted,

MATHENY, HAHN, DENMAN & NIX, L.L.P.

By: _____
Jeremy K. Nix, ID# 24330-35
Attorney for Appellant
45 West Market Street
Huntington, Indiana 46750
(260) 356-7030

## CERTIFICATE OF WORD COUNT

I verify that this Petition contains no more than 4,200 words.

_____
Jeremy K. Nix

## CERTIFICATE OF SERVICE

I certify that service of a true and complete copy of the above and foregoing Petition to Transfer was served by depositing the same in the United States Mail, properly addressed and with first-class postage affixed, this 24th day of September, 2010, to:

Gregory F. Zoeller
Ann L. Godwin, Deputy Attorney General
Indiana Attorney General
Criminal Appeals Division
C553 Government Center S.
402 W. Washington Street
Indianapolis, IN 46204-2770
Attorney for Appellant

_____
Jeremy K. Nix