Filed: 9/9/2020 10:40 AM

IN THE
COURT OF APPEALS OF INDIANA

No. 20A-PC-686

| | |
|---|---|
| ERIC SKEENS,<br>*Appellant-Petitioner*, | Appeal from the<br>Huntington Circuit Court, |
| v. | No. 35C01-1101-PC-4, |
| STATE OF INDIANA,<br>*Appellee-Plaintiff*. | The Honorable Davin G. Smith,<br>Judge. |

**BRIEF OF APPELLEE**

CURTIS T. HILL, JR.
ATTORNEY GENERAL OF INDIANA
Attorney No. 13999-20

JUSTIN F. ROEBEL
Supervising Deputy Attorney General
Attorney No. 23725-49

OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, Indiana 46204-2770
Telephone: (317) 232-7635
Justin.Roebel@atg.in.gov

*Attorneys for Appellee*

1

Brief of Appellee
State of Indiana

# TABLE OF CONTENTS

Table of Authorities ........................................................................4

Statement of the Issues ..................................................................8

Statement of the Case ...................................................................8

Statement of Facts .........................................................................9

Summary of the Argument ...........................................................20

Argument:

   Standard of Review .....................................................................22

     I.    Petitioner cannot bring a freestanding claim of prosecutorial
misconduct or denial of due process based on previously available
evidence ...................................................................................22

     II.   Petitioner is not entitled to PCR relief on his claims of ineffective
assistance of trial counsel ......................................................27

         A.   Petitioner has not shown that his trial counsel should have
made additional efforts to presrve an issue regarding the
mother's computer ............................................................28

         B.   Petitioner has not shown that his trial counsel should have
made additional efforts to obtain officers' disciplinary files ..........31

         C.   Petitioner has not shown that effective representation required
trial counsel to present qitnesses or to cross-examine K.W. .........33

         D.   Petitioner has not shown that trial counsel was ineffective
during closing argument by rhetorically saying "I believe her"
when discussing the State's significant burden ............................36

         E.   Petitioner has not shown that trial counsel failed to effectively
challenge the State's expert witness testimony ..............................39

     III.  Petitioner is not entitled to PCR relief on his claims of ineffective
assistance of appellate counsel .................................................43

Brief of Appellee
State of Indiana

A. Petitioner has not shown appellate counsel was ineffective for failing to raise a claim about the denial of discovery from the mother's computer ...........................................................................44

B. Petitioner has not shown appellate counsel was ineffective for failing to raise a claim about the expert testimony ......................47

C. Any other claims of ineffective assistance of appellate counsel should be deemed waived .................................................................48

Conclusion...................................................................................................49

Certificate of Word Count ........................................................................50

Certificate of Service .................................................................................50

Brief of Appellee
State of Indiana

## TABLE OF AUTHORITIES

**Cases**

*Absher v. State*, 866 N.E.2d 350 (Ind. Ct. App. 2007) ................................................ 45

*Ackerman v. State*, 51 N.E.3d 171 (Ind. 2016) ........................................................... 48

*Allen v. State*, 749 N.E.2d 1158 (Ind. 2001) ........................................... 25, 32, 33, 38

*Alvarez-Madrigal v. State*, 71 N.E.3d 887 (Ind. Ct. App. 2017),
     *trans. denied* .......................................................................................................... 42

*Autrey v. State*, 700 N.E.2d 1140 (Ind. 1998) ........................................................... 33

*Ben-Yisrayl v. State*, 738 N.E.2d 253 (Ind. 2000) ..................................................... 22

*Benefield v. State*, 945 N.E.2d 791 (Ind. Ct. App. 2011) ........................................... 33

*Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013) ...................................................... 27, 28

*Bieghler v. State*, 690 N.E.2d 188 (Ind. 1997) ........................................................... 44

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................... 25

*Brown v. State,* 929 N.E.2d 204 (Ind. 2010) .............................................................. 45

*Carter v. State,* 31 N.E.3d 17 (Ind. Ct. App. 2015), *trans. denied* ............................ 42

*Clark v. State*, 915 N.E.2d 126 (Ind. 2009) ............................................................... 44

*Cooper v. State,* 854 N.E.2d 831 (Ind. 2006) ................................................. 26, 34, 41

*Crawford v. State*, 948 N.E.2d 1165 (Ind. 2011) ................................... 29, 30, 31, 46

*Crawford v. Washington,* 541 U.S. 36 (2004) ............................................................ 47

*Davis v. State*, 791 N.E.2d 266 (Ind. Ct. App. 2003), *trans. denied* .......................... 42

*Dewitt v. State*, 755 N.E.2d 167 (Ind. 2001) .............................................................. 22

*Dillard v. State*, 257 Ind. 282, 274 N.E.2d 387 (1971) .............................................. 30

*Emerson v. State*, 812 N.E.2d 1090 (Ind. Ct. App. 2004) .......................................... 43

*Everroad v. State*, 998 N.E.2d 739 (Ind. Ct. App. 2013) ...................................... 47, 48

*Evitts v. Lucey*, 469 U.S. 387 (1985) ........................................................................... 43

*French v. State*, 778 N.E.2d 816 (Ind. 2002) ........................................................ 43

*Gavin v. State*, 41 N.E.3d 1038 (Ind. Ct. App. 2015) ............................................ 45

*Grinstead v. State*, 845 N.E.2d 1027 (Ind. 2006) .................................................. 33

*Hale v. State*, 54 N.E.3d 355 (Ind. 2016) ............................................................... 31

*Hall v. State*, 849 N.E.2d 466 (Ind. 2006) ...................................................... 30, 46

*Hampton v. State*, 961 N.E.2d 480 (Ind. 2012) .............................................. 22, 27

*Herrera v. State*, 679 N.E.2d 1322 (Ind. 1997) .................................................... 34

*Houchen v. State,* 632 N.E.2d 791 (Ind. Ct. App. 1994) ...................................... 26

*Kubsch v. State*, 934 N.E.2d 1138 (Ind. 2010) ..................................................... 27

*Lindsey v. State*, 888 N.E.2d 319 (Ind. Ct. App. 2008), *trans. denied* ...................... 23

*Lundy v. State*, 26 N.E.3d 656 (Ind. Ct. App. 2015) ............................................. 31

*Massey v. State*, 955 N.E.2d 247 (Ind. Ct. App. 2011) .................................. 22, 27, 43

*McCary v. State*, 761 N.E.2d 389 (Ind. 2002) ...................................................... 22

*McCullough v. State,* 973 N.E.2d 62 (Ind. Ct. App. 2012), *trans. denied* ................. 36

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ......................................... 48

*Myers v. State*, 33 N.E.3d 1077 (Ind. Ct. App. 2015) ............................................ 34

*Overstreet v. State*, 877 N.E.2d 144 (Ind. 2007) .................................................. 28

*Pattison v. State*, 54 N.E.3d 361 (Ind. 2016) ........................................................ 45

*Perez v. State*, 728 N.E.2d 234 (Ind. Ct. App. 2000), *trans. denied* ........................ 26

*Rhoiney v. State*, 940 N.E.2d 841 (Ind. Ct. App. 2010), *trans. denied* ..................... 22

*Rondon v. State,* 711 N.E.2d 506 (Ind. 1999) ....................................................... 36

*Rouster v. State*, 705 N.E.2d 999 (Ind. 1999) ....................................................... 23

*Ryan v. State*, 9 N.E.3d 663 (Ind. 2014) ............................................................... 26

*Sanders v. State*, 765 N.E.2d 591 (Ind. 2002) ...................................................... 23

Brief of Appellee
State of Indiana

*Skeens v. State*, No. 35A05-0909-CR-515, slip op.
(Ind. Ct. App. Aug. 25, 2010) .................................................................... 8, 13

*State v. Stidham*, 110 N.E.3d 410 (Ind. Ct. App. 2018) ............................ 23

*Stevens v. State*, 770 N.E.2d 739 (Ind. 2002) ....................................*passim*

*Strickland v. Washington*, 466 U.S. 668 (1984)................................... 27, 28

*Strickler v. Greene*, 527 U.S. 263 (1999) ................................................... 25

*Surber v. State*, 884 N.E.2d 856 (Ind. Ct. App. 2008), *trans. denied* ........ 42

*Tapia v. State*, 753 N.E.2d 581 (Ind. 2001).............................................. 34

*Taylor v. State*, 882 N.E.2d 777 (Ind. Ct. App. 2008)............................... 44

*Taylor v. State,* 929 N.E.2d 912 (Ind. Ct. App. 2010), *trans. denied* ......... 28

*Timberlake v. State*, 753 N.E.2d 591 (Ind. 2001)...................................... 23

*Trueblood v. State*, 715 N.E.2d 1243 (Ind. 1999)...................................... 43

*White v. State*, 25 N.E.3d 107 (Ind. Ct. App. 2014) .................................. 36

*Whitener v. State*, 696 N.E.2d 40 (Ind. 1998) ........................................... 37

*Whiting v. State*, 969 N.E.2d 24 (Ind. 2012) ............................................. 25

*Williams v. State*, 508 N.E.2d 1264 (Ind. 1987) ........................................ 43

*Winkleman v. State*, 22 N.E.3d 844 (Ind. Ct. App. 2014), *trans. denied* ... 45

*In re WTHR-TV*, 693 N.E.2d 1 (Ind. 1998) ................................................ 31

**Other Authorities**

Ind. Appellate Rule 46(A)(8)................................................................. 34, 41

Ind. Appellate Rule 46(A)(8)(a) .......................................................... 47, 49

Ind. Appellate Rule 46(A)(8)(b) ............................................................... 49

Ind. Evidence Rule 703............................................................................ 42, 48

Ind. Post-Conviction Rule 1(1) ................................................................. 22

Brief of Appellee
State of Indiana

Ind. Post-Conviction Rule 1(5) ................................................................ 22

Ind. Trial Rule 16.................................................................................... 39

Ind. Trial Rule 16(C)(4) ......................................................................... 39

Ind. Trial Rule 26.................................................................................... 40

Ind. Trial Rule 26(B)(4) ......................................................................... 40

Huntington County Local Rule 35-CR-21-39........................................... 40

Brief of Appellee
State of Indiana

## STATEMENT OF THE ISSUES

I.     Whether Petitioner can raise freestanding claims which were not raised in his PCR Petition.

II.     Whether the PCR court properly denied Petitioner's ineffective assistance of trial counsel claims.

III.     Whether the PCR court properly denied Petitioner's ineffective assistance of appellate counsel claims.

## STATEMENT OF THE CASE

**Nature of the Case**

Petitioner Eric Skeens appeals from the denial of post-conviction relief.

**Course of Proceedings**

In July of 2009, Petitioner was found guilty by a jury of four counts of Class A felony child molesting and one count of Class C felony child molesting (DA App. 6-7).  On August 21, 2009, Petitioner received consecutive sentences of 45 years on each Class A felony conviction and seven years for the Class C felony conviction (DA App. 301-02).  Petitioner's convictions were affirmed on direct appeal, but his sentence was found to be inappropriate.  *Skeens v. State*, No. 35A05-0909-CR-515, slip op. at 27-28 (Ind. Ct. App. Aug. 25, 2010).  This Court remanded with instructions that the trial court impose a sentence of 90 years.  *Id*.  The Indiana Supreme Court denied Petitioner's request for further review on transfer (DA Docket).

Brief of Appellee
State of Indiana

On February 21, 2011, Petitioner filed his PCR petition (PCR App. Vol. II

16-35).  The State filed an answer on February 1, 2011, and an amended answer on

February 12, 2014 (PCR App. Vol. II 37-38, 82-83).  Petitioner filed amended PCR

petitions on November 20, 2018, and July 23, 2019 (PCR App. Vol. II 112-22, 198-

206).  Following a bifurcated evidentiary hearing on August 13 and September 24,

2019, the PCR court issued findings of fact and conclusions of law on December 17,

2019, denying relief (PCR App. Vol. II 13-14, III 61-84).  Petitioner filed a motion to

correct error on January 16, 2020, which was denied on February 24, 2020 (PCR

App. Vol. II 14-15, III 85-89, 94).  This appeal follows.

## STATEMENT OF FACTS

**Petitioner was convicted of five counts of child molestation.**

Petitioner was found guilty by a jury of four counts of Class A felony child

molesting and one count of Class C felony child molesting (DA App. 6-7).  The

circumstances of his offenses were described by this Court in his direct appeal:

> K.W. was born to R.W. ("Mother") in April 2000. Skeens, who was born
> on June 22, 1980, met Mother in 2003 and married Mother in
> December 2004. Skeens and Mother were divorced in June 2006, but
> they, along with K.W., continued to live together. K.W. thought of
> Skeens as her "dad." In September 2007, Skeens, Mother, and K.W.
> moved into a home on Williams Street in Huntington, Indiana.
> Skeens's son also lived at the home "on and off."  Skeens would care for
> K.W. while Mother was at work. In June 2008, Mother moved with
> K.W. to another home on Wabash Circle in Huntington. However, even
> after moving to Wabash Circle, Mother continued to allow Skeens to
> visit with and care for K.W. because K.W. "thought of him as her
> dad."  K.W. would spend, on average, three nights per week at Skeens's
> house. In September 2008, Skeens moved to Warsaw, Indiana, but
> Mother would still make arrangements for Skeens to have K.W. on
> some weekends.

Brief of Appellee
State of Indiana

During the period of time between September 2007, when Skeens, Mother, and K.W. moved to Williams Street, and November 2008, Skeens subjected K.W. to a variety of sexual encounters. Mother would be "either at the grocery store, some type of store or [ ] she was at work." Skeens removed both his and K.W.'s clothing and placed her on top of a bathroom sink, and he had sexual intercourse with K.W. which "hurt" K.W. Skeens placed a towel underneath K.W. "to wipe up white stuff that came out" of her vagina. Afterwards, Skeens would ask K.W. to go to the bathroom, and her vagina "kind of burned."

Also, Skeens would remove his and K.W.'s clothing in either the living room, Mother's bedroom, or the bathroom and "put his tongue" on K.W.'s vagina. When in either the living room or bedroom, Skeens would remove both his and K.W.'s clothing, and K.W. would be "laying down" on her back and Skeens was "[l]like under [her] .... like under [her] legs sort of," which were "separated." Skeens would use his tongue to "lick [ ]" K.W.'s vagina which felt "[w]et" and "[w]eird" to K.W. When Skeens would put his tongue on K.W.'s vagina in the bathroom, K.W. would be "in the same position" on top of the sink as when Skeens had sexual intercourse with her. Skeens would be "kind of squatting."

Further, Skeens would touch K.W.'s vagina with his fingers in the living room, the bathroom, and the bedroom. Skeens would remove his and K.W.'s clothes and "rub" her vagina "in circles" using one finger on each hand. Skeens would also rub "the part of [K.W.'s vagina] where [she goes] potty" using one finger "on both hands and then sometimes two fingers."

Skeens would also make K.W. put his penis in her mouth in the living room and the bedroom. Skeens would remove his and K.W.'s clothes, and K.W. would lay on the floor on her back and Skeens would be "laying on top of [her] with his hands like sort of pushing up." Skeens would then put his "private" in K.W.'s mouth and "[h]e would sort of push." His "private" was "[s]ort of like a long type of mushroom shape," with "a triangle at the top with the top corner kind of curved" and a "hole." His penis felt "[w]eird" and "[k]ind of smooth."

Skeens would also touch K.W.'s "boobs" with his finger and his tongue. Skeens would remove K.W.'s and his own clothing and lick "sometimes one, sometimes both" of K.W.'s breasts. He would similarly "rub" either one or both of K.W.'s breasts with his finger.

During some of the incidents in the living room when Skeens would touch K.W.'s "privates" with "[h]is tongue, his finger and ... his

10

Brief of Appellee
State of Indiana

private," Skeens would show K.W. movies "that had people touching each other."  He would show K .W. the movies, including one called "real sex," on a "flat screen" television by "download[ing] [them] from his computer...."  The movie would depict "three or four people and they were touching each other[']s privates."

There was one incident when Skeens tried to touch K.W., and K.W. told Skeens "no," and she attempted to "go downstairs and [she] was like on the first step and then [Skeens] said if you don't come back here and do this with me, I'll call the police on you and they'll tell your mom."  K.W. "went back [because she] was scared."  Skeens then "touch[ed] [K.W.'s] privates."

If Skeens's son was home during these encounters, Skeens would "get him to go out of the room."  Once, Skeens told his son to "go play with your cars, I just bought those for you."  Skeens's son told Skeens that "no I want to go play with [K.W. ]," and Skeens went with his son to play with the cars for "a few minutes and then [Skeens] would say, oh, I'll be right back and then he would go and touch [K.W.'s] privates."  Skeens would also lock the bedroom door to keep his son out of the room. Skeens's son "would knock on the door .... [and] would say dad, let [me] in there."  Skeens would say "yeah," but then he would not go to the door.

Skeens told K.W. to not tell anyone about the touching, and that if she did K.W. would "get in big trouble."  K.W. once tried to tell Mother about Skeens but K.W. "got scared" because she "thought that [Mother] wouldn't believe [her] and then like [K.W. would] get in big trouble."

On December 5, 2008, the school counselor at K.W.'s elementary school showed a video to the class titled "Breaking the Silence, Children Against Child Abuse" and the video included "two segments ... one on physical abuse and one on sexual abuse."  After the sexual abuse segment of the video, the counselor directed the class to write in their "reflection journals," and to "write the word help on their paper" if they needed help.  While the counselor was "walking around the different table clusters," K.W. "raised her hand and whispered [']this happened to me.[']"  The counselor told K.W. that she would speak to her about it later, but when the children were leaving for lunch K.W. "asked again, [']can I talk to you about this, this happened to me,[']" and the counselor "told [K.W.] [she] would come get her after lunch."  Again, however, K.W. "found [the counselor] first," when K.W. "was walking from lunch towards recess and stopped by [the counselor's] room and said [']can I please talk to you right

Brief of Appellee
State of Indiana

now?[]"  After their conversation, the counselor called the Department
of Child Services and repeated what K.W. had reported to her.

Later that day, Nicole Allen, a family case manager at the
Department of Child Services, met with Mother to "discuss ... the
nature of the report that [she] had received."  Mother was "shocked, in
disbelief [ ], immediately just started crying and just wasn't sure what
to think about the whole situation...."  Mother agreed to take K.W. out
of school and bring her to a child advocacy center in Huntington for an
interview. At the interview, conducted by Allen, K.W. used age
appropriate language and descriptions of the events that took place
between K.W. and Skeens, and K.W. "gave a lot of information, very
detailed information about the abuse."  Mother also reported that it
had been two weeks since Skeens had seen K.W.

On December 8, 2008, Mother, Allen, and Detective Mel
Hunnicut[t] transported K.W. to the Fort Wayne Sexual Assault
Treatment Center for a physical examination. K.W. was seen by
Sharon Robison, a sexual assault nurse examiner. Robison conducted a
genital examination and concluded that her genitals were "normal,"
meaning that "her hymen was perfect.... [T]here was no [ ] injury to her
hymen and her anus was perfect also."

On December 16, 2008, K.W. began seeing Lynn Baker, a
counselor at the Bowen center in Huntington. K.W. continued to see
Baker once a week to help her deal with "behavioral issues," including
K.W.'s nightmares and bed-wetting.  Most of the sessions were in the
play therapy room, which "is used to allow a child to use any of the
therapeutic toys available ... in a way that they need in order to work
through why they're there."

On December 10, 2008, the State charged Skeens with Count I,
child molesting as a class A felony which alleged that Skeens
performed or submitted to sexual intercourse with K.W.; Count II,
child molesting as a class A felony which alleged that Skeens
performed oral sex on K.W.; Count III, child molesting as a class A
felony which alleged that Skeens submitted to oral sex from K.W.;
Count IV, child molesting as a class A felony which alleged that Skeens
penetrated K.W.'s female sex organ with an object; and Count V, child
molesting as a class C felony which alleged that Skeens touched or
fondled K.W. with the intent to arouse or satisfy his own or K.W.'s
sexual desires.

On July 21, 2009, the trial court held a jury trial. At trial,
Sharon Robison testified that, for victims of sexual abuse ages zero to

12

Brief of Appellee
State of Indiana

thirteen, there is a seventy-two hour window after vaginal penetration and a twenty-four hour window after an "oral ... or anal assault" to collect DNA samples. Robison also testified that K.W. told her that Skeens "would put his fingers inside [her] private and would suck [her] boobs." Robison testified that it is not common to find evidence of penetration in a young child "[b]ecause the hymen is elastic tissue that expands and goes back ...." Robison also testified that recent studies have concluded that eighty-five to ninety-five percent "of pre-pubertal [female] children [who have been molested] ... do not have any type of genital injury." Robison testified that this is so because "the internal female sex organ is [ ] very vascular, which means there's a lot of blood flow.... [A]ny injury to that area would heal very quickly," and that based upon the information provided by K.W. "and the time lapse between ... the last time it happened and the time that she came to see [her]," she did not expect to find any injuries to K.W.'s genitalia. Robison also testified that she did not do any DNA collection because "[i]t was past the time frame."

Baker testified at trial that it is "common for younger children to delay or wait to tell about sexual abuse." When asked whether K.W. was prone to exaggerate in sexual matters, Baker testified that "quite the opposite, it's been very, very uncomfortable for her to talk about anything that's happened." Baker also testified that K.W.'s behavior at "her play therapy reflects [ ] a child as extremely in emotional pain. The farther we move in to what's actually happened in the abuse the more painful she feels."

*Skeens*, slip op. at 2-7 (internal citation omitted).

On direct appeal, Petitioner challenged the sufficiency of the evidence, whether the trial court properly identified sentencing considerations, and the appropriateness of his sentence. *Id*. at 2, 23. This Court found sufficient evidence supported the convictions and that the trial court did not abuse its discretion at sentencing. *Id*. at 14, 23. But this Court found Petitioner's 187-year sentence to be inappropriate and remanded with instructions that the trial court impose a sentence of 90 years. *Id*. at 27-28. The Indiana Supreme Court denied Petitioner's request for further review on transfer (DA Docket).

Brief of Appellee
State of Indiana

**Petitioner now seeks post-conviction relief.**

In February of 2011, Petitioner filed his PCR petition (PCR App. Vol. II 16-35). He later filed amended petitions, by counsel, in 2018 and 2019 (PCR App. Vol. II 112-22, 198-206). As amended, Petitioner raised claims of ineffective assistance of trial and appellate counsel (PCR App. Vol. II 114-15). With regard to trial counsel, Petitioner alleged ineffective assistance based on failing to adequately confront and cross-examine witnesses, failing to present evidence, failing to object to expert testimony from a medical provider, telling the jury "I believe her" during closing argument, and failing to challenge the denial of a discovery request regarding K.W.'s mother's computer (PCR App. Vol. II 115, 117-21, 201-06). With regard to appellate counsel, Petitioner alleged ineffective assistance based on failing to raise preserved challenges to hearsay evidence and failing to follow the *Davis-Hatton* procedure (PCR App. Vol. II 121).

At an evidentiary hearing, Petitioner presented the record of his direct appeal, exhibits, and testimony from 10 witnesses (PCR Tr. Vol. III 35-242). Petitioner's trial counsel testified that Petitioner maintained his innocence and would not accept a plea agreement (PCR Tr. Vol. III 42-43). As far as a theory of defense, his plan was to present witnesses "in the event that there were holes in the State's case" (PCR Tr. Vol. III 76). Counsel testified that he interviewed every potential witness identified by Petitioner and subpoenaed those witnesses for trial (PCR Tr. Vol. III 67-68). At trial, he decided to not call witnesses because none of them—except for Petitioner's young son—were present during any of the criminal

14

Brief of Appellee
State of Indiana

acts and counsel believed the jury would be sufficiently bothered by the lack of

physical evidence in light of the extensive allegations (PCR Tr. Vol. III 77).  Counsel

decided to focus the defense on whether the State proved its case beyond a

reasonable doubt (PCR Tr. Vol. III 77-78).  Counsel discussed this strategy with

Petitioner, and Petitioner signed a statement indicating he did not want to testify

(PCR Tr. Vol. III 78-82; PCR Ex. A).  Counsel testified at the PCR hearing that he

would have called a witness or allowed Petitioner to testify if Petitioner had

requested (PCR Tr. Vol. III 83-84).  Counsel recorded some of his conversations with

Petitioner, and transcripts of two of their pre-trial conversations were presented as

PCR evidence (PCR Ex. 6, 8).

During trial, counsel decided not to question K.W. about her description of

Petitioner's penis (PCR Tr. Vol. III 103-04, 108).  Petitioner had told counsel he did

have an unusual "red ring" birthmark on his penis (PCR Tr. Vol. III 99).  While this

mark is somewhat different than what K.W. described in her forensic interview,

counsel decided not to ask K.W. about Petitioner's penis because an accurate

description at trial "would be the nail in his coffin" (PCR Tr. Vol. III 103-04, 108).

With regard to the forensic nurse's testimony at trial, counsel believed that he

objected and moved for mistrial based on expert evidence not being disclosed prior

to trial (PCR Tr. Vol. III 64-67).[1]  However, counsel acknowledged that he was not

---

[1] The trial transcript does not reflect a request for mistrial based on inadequate
expert discovery (DA Tr. 591-95).  However, trial counsel did unsuccessfully move
for a mistrial during the testimony of SANE Nurse Robison when challenging the
nurse's testimony that K.W. reported to her that Petitioner had penetrated her
genitalia with his fingers (DA Tr. 583-84).

Brief of Appellee
State of Indiana

surprised by the testimony because he had been in other trials where similar testimony was permitted from forensic nurses about the likelihood of finding physical evidence of a sexual assault (PCR Tr. Vol. III 85-86).

Counsel recalled that he tried through discovery to gain access to the mother's computer in Huntington because he believed it might contain exculpatory evidence related to K.W.'s statement about viewing pornography (PCR Tr. Vol. III 50, 54-55). In K.W.'s forensic interview, K.W. had stated that Petitioner showed her pornography at their "old house"—in Huntington—but normally did not at his "new house"—in Warsaw (PCR Tr. Vol. III 72-73). Counsel acknowledged he did not know whether there would be evidence of the pornography on "any particular computer," but wanted access to the mother's computer "to see if there was anything there" while still acknowledging there was "no indication there was anything there" (PCR Tr. Vol. III 89-90). Counsel did not recall Petitioner having specific knowledge that there was pornography on the mother's computer (PCR Tr. Vol. III 90).

Trial counsel also testified that he was aware the State's lead investigator, Officer Melbourne Hunnicutt, had been in trouble for viewing pornography at work, but he did not know if he had that information at the time of trial (PCR Tr. Vol. III 61-63). Regardless, counsel believed there were strategic reasons to not call Officer Hunnicutt as a witness and that the officer's disciplinary problems would likely not have been admissible at trial (PCR Tr. Vol. III 60-62, 87).

Brief of Appellee
State of Indiana

Petitioner's appellate counsel also testified at his PCR hearing (PCR Tr. Vol.

III 111).  Appellate counsel did not consider pursuing the *Davis-Hatton* procedure

because his public defender contract for the case only covered the direct appeal

(PCR Tr. Vol. III 119).  Counsel reviewed all transcripts from this cause (PCR Tr.

Vol. III 121).  After consulting with Petitioner, appellate counsel narrowed the focus

of the appeal to the three or four issues he thought were most likely to succeed (PCR

Tr. Vol. III 123-24).  Counsel remembered reviewing the hearing regarding the

search of the mother's computer and did not believe it presented a strong issue for

appeal (PCR Tr. Vol. III 126-27).  He also did not raise any of the preserved

objections to evidence because he believed they were unlikely to succeed under the

abuse of discretion review standard (PCR Tr. Vol. III 127).

Officer Hunnicutt testified that he was the lead detective in the case but did

not testify at trial because he was being disciplined for looking at pornography on a

police computer (PCR Tr. Vol. III 144-45).  The discipline did not involve any police

investigation, and he was ultimately allowed to remain on the force until his

retirement in 2017 (PCR Tr. Vol. III 155-56).  He was present, but in another room,

during K.W.'s forensic interview (PCR Tr. Vol. III 139).  Based on her statement, he

believed K.W. had viewed pornography in Warsaw (PCR Tr. Vol. III 152).  However,

Officer Hunnicutt acknowledged after reviewing K.W.'s statement that she had

instead said that she viewed the videos at her old house—in Huntington (PCR Tr.

Vol. III 152).  He claimed his testimony at the March 30, 2009 hearing "was a

mistake [and he] wasn't trying to … lie or deceive anyone" (PCR Tr. Vol. III 157).

Brief of Appellee
State of Indiana

He never searched the mother's computer and was not aware of anyone else

searching her computer (PCR Tr. Vol. III 146).  The officer testified he had no

reason to believe there was exculpatory evidence on the mother's computer (PCR Tr.

Vol. III 154-55).

     Petitioner testified that he expected that he and his witnesses would testify

at trial, but his counsel told him that if they testified he "would not be fully

represented" (PCR Tr. Vol. III 226).  Petitioner understood this to be "almost like a

threat" (PCR Tr. Vol. III 227).  Petitioner felt like he "had no choice but to sign"

waivers agreeing that he and witnesses would not testify and that he had no time to

consider what he was signing (PCR Tr. Vol. III 227-28).  Petitioned testified that

trial counsel "told [him] he knew what he was doing and [Petitioner] trusted him"

(PCR Tr. Vol. III 239).  But Petitioner thought that counsel should have introduced

a drawing from K.W.'s journal of Petitioner's penis which he believed "didn't match

anything" (PCR Tr. Vol. III 228-29; PCR Ex. 15).  Petitioner acknowledged there

was discoloration on two parts of his penis (PCR Tr. Vol. III 233-34).  Petitioner also

acknowledged he was not present when the drawing was made and never discussed

with K.W. what the marks in her drawing were meant to indicate (PCR Tr. Vol. III

231-32, 237).  With regard to the mother's computer, Petitioner acknowledged that

he did not know what was on that computer, but Petitioner thought pornography

might be on there because K.W.'s mother "looked at porn quite often" (PCR Tr. Vol.

III 240).

Brief of Appellee
State of Indiana

The remaining witnesses included the officer who conducted the search of

Petitioner's residence in Warsaw, Petitioner's former fiancé who trusted Petitioner

with her children, Petitioner's brother who trusted Petitioner with his children and

never observed inappropriate conduct, a detective who examined Petitioner's

computer, the investigator from the prosecutor's office, and Petitioner's son (PCR

Tr. Vol. III 131, 163, 168-69, 174, 182, 194-95). The son testified that he was always

with his dad and was never locked out of a room (PCR Tr. Vol. III 175). However,

the son had just turned six at the time of Petitioner's arrest and would have been

approximately four years old at the time of the incidents in Huntington County (Tr.

175-76). The State presented an affidavit from K.W. who reaffirmed that she

"testified truthfully about the sexual touches that [Petitioner] committed against"

her (PCR Ex. C).

**The PCR court denied relief.**

Following the evidentiary hearing, the PCR court denied relief (PCR App.

Vol. III 61-84). The PCR court found Petitioner had not shown he received

ineffective assistance of trial counsel based on decisions regarding evidence or based

on counsel's statements during closing argument (PCR App. Vol. III 69-76). The

court observed trial counsel only said "I believe her" one time and it was in a

hypothetical comparing the civil and criminal burdens of proof (PCR App. III 74).

The court observed that the only evidence that Petitioner wanted to testify at trial

was "Petitioner's own self-serving, post-conviction statements" (PCR App. Vol. III

74). The PCR court also found Petitioner "failed to prove that there is reasonable

Brief of Appellee
State of Indiana

probability that, but for counsel's unprofessional errors, the result of Petitioner's trial would have been different" (PCR App. Vol. III 77).  With regard to appellate counsel, the PCR court found Petitioner had not shown he was prejudiced by counsel's decision to not raise issues regarding discovery or Petitioner's right to confront witnesses finding "he has not provided any evidence that there is reasonable probability the outcome of his appeal would have been different but for the inclusion of these issues" (PCR App. Vol. III 77- 79).  Similarly, the PCR court found no prejudice from appellate counsel not invoking the *Davis-Hatton* procedure (PCR App. Vol. III 79).

Finally, the court noted that any freestanding claims regarding the computer discovery issue were not available in PCR proceedings because the issues were known and available at the time of the direct appeal (PCR App. Vol. III 80).  Further, the court noted that issue lacked merit as a claim of ineffective assistance of trial counsel because counsel went to "great lengths" to access the mother's computer despite admittedly having no knowledge that it contained any relevant evidence (PCR App. Vol. III 83).

## SUMMARY OF THE ARGUMENT

I.  Petitioner's freestanding claims regarding the denial of non-party discovery to search K.W.'s mother's computer are not available in post-conviction proceedings.  The issues were known and available at the time of the direct appeal.  Petitioner also cannot show harm or grave peril because he was not denied access to material discovery.

Brief of Appellee
State of Indiana

II.     The PCR court properly denied all of Petitioner's claims of ineffective assistance of trial counsel.  At the outset, many of his claims are not available because they are different than the issues he raised in his PCR petition.  Only issues raised in the PCR petition are available in a PCR appeal.  Petitioner also has not shown the PCR court erred in denying his claims of ineffective assistance of trial counsel.  Effective representation did not require counsel to make further efforts to search the mother's computer because counsel had no knowledge indicating the computer contained material evidence.  Counsel's decisions regarding witnesses and closing argument were part of a reasonable trial strategy.  Finally, Petitioner has not shown that counsel failed to make valid objections regarding the expert testimony or that he was prejudiced.

III.    The PCR court also properly denied all of Petitioner's claims of ineffective assistance of appellate counsel.  Petitioner cannot raise a claim about whether appellate counsel should have raised the computer discovery issue because that claim was not included in his PCR petition.  The issue was also waived for purposes of direct appeal because it was not preserved at trial.  Appellate counsel did not fail to raise a clearly stronger claim challenging SANE Nurse Robison's reliance on scientific studies as the issue lacked merit.  Finally, Petitioner makes no argument showing that he was prejudiced by counsel not raising claims based on other preserved issues or by forgoing a *Davis-Hatton* appeal.

Brief of Appellee
State of Indiana

# ARGUMENT

## Standard of Review

Petitioners who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a PCR petition. Ind. Post-Conviction Rule 1(1). The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. *See* Ind. Post Conviction Rule 1(5); *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012); *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 170 (Ind. 2001); *see also Massey v. State*, 955 N.E.2d 247, 253 (Ind. Ct. App. 2011). The PCR court's denial of relief will be affirmed unless the petitioner shows that the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002); *Rhoiney v. State*, 940 N.E.2d 841, 844 (Ind. Ct. App. 2010), *trans. denied*. Appellate courts do not defer to the PCR court's legal conclusions, but do accept its factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002).

## I.
## Petitioner cannot bring a freestanding claim of prosecutorial misconduct or denial of due process based on previously available evidence.

Petitioner's first issue—a freestanding claim of prosecutorial misconduct and a denial of due process based on false testimony by Officer Hunnicutt at the discovery hearing—cannot be raised in this PCR proceeding because it is based on

Brief of Appellee
State of Indiana

evidence that was known and available at the time of trial and the direct appeal. A

PCR proceeding is a collateral attack on the validity of a criminal conviction and is

limited to the grounds enumerated in the PCR rules. *Timberlake v. State*, 753

N.E.2d 591, 597 (Ind. 2001). "Postconviction procedures do not afford a petitioner

with a super-appeal, and not all issues are available." *Id*. "In post-conviction

proceedings, complaints that something went awry at trial are generally cognizable

only when they show deprivation of the right to effective counsel or issues

demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State*,

765 N.E.2d 591, 592 (Ind. 2002). Freestanding claims of error are generally

unavailable to petitioners in this context. *State v. Stidham*, 110 N.E.3d 410, 418

(Ind. Ct. App. 2018). This includes claims of fundamental error. *Lindsey v. State*,

888 N.E.2d 319, 325 (Ind. Ct. App. 2008), *trans. denied*. "If an issue was known and

available, but not raised on direct appeal, it is waived." *Timberlake*, 753 N.E.2d at

597 (citing *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999)).

As the PCR court found and Petitioner largely conceded in his amended PCR

petition, Petitioner's freestanding claims cannot support PCR relief because the

issues were known and available at the time of trial and his direct appeal (PCR

App. Vol. II 114-15, III 80). His claims are based on Officer Hunnicutt misstating

K.W.'s allegations regarding pornography during the hearing on the motion seeking

non-party production to search K.W.'s mother's computer (Appellant Br. 13-24). It

does appear that a misstatement occurred—Officer Hunnicutt acknowledged at the

PCR hearing after reviewing K.W.'s statement that the child had said she viewed

Brief of Appellee
State of Indiana

the pornography at the "old house" in Huntington County (PCR Tr. Vol. III 152)—

and the trial court relied on that misstatement when denying non-party discovery of

the mother's computer (DA App. Vol. I 86).  But the officer was merely misstating

K.W.'s forensic statement.

While K.W.'s forensic statement is not in the present record because it was

not entered into evidence at either the trial or the PCR hearing, there is ample

evidence that Petitioner already reviewed K.W.'s forensic statement even prior to

the discovery hearing and could have raised the issue at the time of the trial:

- The statement would have necessarily been provided to the defense during pre-trial discovery as it was listed by the State as a potential exhibit (DA App. Vol. I 112).

- PCR Exhibit Eight is a transcript of a conversation between Petitioner and his counsel approximately a month before the discovery hearing. Therein, trial counsel referred to K.W.'s statements "on the tape" and questioned Petitioner about the accuracy of K.W.'s statement (PCR Ex. 8 at 2, 11).

- PCR Exhibit Eight also shows that Petitioner had reviewed the statement as he tells his counsel "everything she said" on the DVD "was false" (PCR Ex. 8 at 11).  Petitioner also later told the probation officer preparing his PSI that K.W.'s statement showed he was innocent (DA App. III. 357).

- Petitioner had a transcript of K.W.'s statement during the PCR hearing (PCR Tr. Vol. III 99).

- Petitioner admits on appeal that his trial counsel "should have known the testimony Hunnicutt gave was false" (Appellant Br. 27).

- At trial, K.W. again stated that Petitioner showed her the pornography in Huntington County (DA Tr. 539-41).

Brief of Appellee
State of Indiana

Thus, any claim that Officer Hunnicutt misstated K.W.'s statement could have been raised in a motion to reconsider the denial of discovery, at trial, or on direct appeal. Therefore, the issue is not available in PCR proceedings.

Despite his prior acknowledgement that the issue was unavailable, Petitioner now suggests a freestanding claim can be reviewed as structural error (Appellant Br. 26, n.1). But invoking the structural error doctrine does not avoid procedural default. *See Whiting v. State*, 969 N.E.2d 24, 31-32 (Ind. 2012) ("[A]lmost any claim, structural or not, can be forfeited through procedural default."). Also, Petitioner's new claim of structural error was not included in his PCR petition. "Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001). Moreover, Petitioner cites no authority for his assertion that violations of *Brady v. Maryland*, 373 U.S. 83 (1963), are even considered structural error, and U.S. Supreme Court precedent indicates they are not. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) (finding a remedy for failure to disclose exculpatory evidence under *Brady* only if "there is a reasonable probability that the suppressed evidence would have produced a different verdict").

Waiver aside, a claim of prosecutorial misconduct based on Officer Hunnicutt's misstatement would have failed because Petitioner did not suffer grave

Brief of Appellee
State of Indiana

harm.[2]  Where a claim of prosecutorial misconduct is preserved in the trial court, a

reviewing court determines "(1) whether misconduct occurred, and if so, (2) 'whether

the misconduct, under all of the circumstances, placed the defendant in a position of

grave peril to which he or she would not have been subjected' otherwise." *See Ryan*

*v. State*, 9 N.E.3d 663, 667(Ind. 2014) (quoting *Cooper v. State,* 854 N.E.2d 831, 835

(Ind. 2006)).  "The gravity of peril is measured by the probable persuasive effect of

the misconduct on the jury's decision rather than the degree of impropriety of the

conduct."  *Cooper,* 854 N.E.2d at 835 (citations omitted).

Here, as the PCR court found, the evidence shows Petitioner was not

subjected to peril or prejudice (PCR App. Vol. III 80-81).  Petitioner and his trial

counsel acknowledged at the PCR hearing that they had no actual knowledge of

there being any evidence of pornography on the mother's computer (PCR Tr. Vol. III

89-90, 240).  Petitioner claims he still should have been granted access to the

mother's computer because K.W. was claiming that Petitioner showed her

pornography in Huntington County (Appellant Br. 16).  But Petitioner's recorded

conversation with his counsel, which he entered into evidence at the PCR hearing,

specifically indicated that any pornographic movies in Huntington County were

accessed on yet a different computer: "on the old computer not the one (inaudible)

---

[2] Indiana courts have found that a testifying police officer can unilaterally cause
harm tantamount to prosecutorial misconduct.  *Perez v. State*, 728 N.E.2d 234, 237
(Ind. Ct. App. 2000), *trans. denied*; *see also Houchen v. State,* 632 N.E.2d 791, 794
(Ind. Ct. App. 1994) (reversing a conviction finding "one police officer took it upon
himself to guarantee a conviction by tossing out an evidentiary harpoon that the
jury could not ignore").

Brief of Appellee
State of Indiana

she has at home" (PCR Ex. 8 at pg. 1).[3]  To the extent Petitioner wanted to show

that K.W.'s mother had viewed pornography on her own computer and that K.W.

had access to the same computer, the mother admitted as much at trial (DA Tr. 485-

87).  Despite the apparent misstatement by Officer Hunnicutt, Petitioner has not

shown that he was harmed or even that he was denied relevant evidence.  This

claim is not available and lacks merit.

## II.
## Petitioner is not entitled to PCR relief
## on his claims of ineffective assistance of trial counsel.

The PCR court's denials of Petitioner's claims of ineffective assistance of trial

counsel are not clearly erroneous.  When a petitioner claims ineffective assistance of

counsel, he must overcome the two-pronged burden of proving that trial counsel

performed deficiently and that counsel's deficient performance prejudiced him.

*Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kubsch v. State*, 934

N.E.2d 1138, 1147 (Ind. 2010).  To demonstrate deficient performance, a petitioner

must establish that counsel's representation was objectively unreasonable in light of

prevailing professional norms.  *Hampton*, 961 N.E.2d at 491; *Massey*, 955 N.E.2d at

253.  That is, counsel's unprofessional errors were so serious as to have denied the

petitioner his constitutional right to counsel.  *Bethea v. State*, 983 N.E.2d 1134,

1138 (Ind. 2013).  In this analysis, "counsel's performance is presumed effective, and

---

[3] In another part of this recorded statement, Petitioner does say that the mother
had the same computer for five or six years.  However, this statement was made in
reference to what computer K.W. had access to and may have otherwise been able to
"get on … and watch" pornography (PCR Ex. 8 at 5).  He did not suggest that
computer was the one connected to the television.

Brief of Appellee
State of Indiana

a defendant must offer strong and convincing evidence to overcome this presumption." *Overstreet v. State*, 877 N.E.2d 144, 1552 (Ind. 2007). To demonstrate prejudice from counsel's deficient performance, a petitioner must establish that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Bethea*, 983 N.E.2d at 1139.

To determine "whether a defendant proves his claim of ineffective assistance of counsel, the fact-finding court is guided by various important guidelines." *Stevens*, 770 N.E.2d at 746. First, the court strongly presumes "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (citing *Strickland*, 466 U.S. at 690). Second, counsel has "considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review." *Id.* at 746–47 (citing *Strickland*, 466 U.S. at 689). Third, "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* at 747. Petitioner has not met this significant burden.

## A. Petitioner has not shown that his trial counsel should have made additional efforts to preserve an issue regarding the mother's computer.

Petitioner has not shown ineffective assistance or prejudice regarding his trial counsel not raising objections or making other efforts to search the mother's computer. To prove ineffective assistance for failure to make a motion, a petitioner must establish that the motion would have been granted. *See Taylor v. State,* 929 N.E.2d 912, 918 (Ind. Ct. App. 2010) ("Stated another way, the petitioner must

Brief of Appellee
State of Indiana

demonstrate that had the objection been made, the trial court would have had no

choice but to sustain it."), *trans. denied*.

Petitioner has not shown that he would have been entitled to discovery from

the mother's computer if counsel had challenged the accuracy of Officer Hunnicutt's

testimony.  Pursuant to the trial rules, our Supreme Court has established a three-

step test that should be used to determine discoverability in criminal cases:

> (1) there must be sufficient designation of the items sought to be
> discovered (particularity); (2) the items requested must be material to
> the defense (relevance or materiality); and (3) if the first two
> requirements are met, the trial court must grant the request unless
> there is a showing of "paramount interest" in nondisclosure.

*Crawford v. State*, 948 N.E.2d 1165, 1168 (Ind. 2011) (addressing a request for non-

party discovery).

The trial court denied the discovery because Petitioner's "inspection [of the

computer] would not lead to relevant evidence" (DA App. 86).  While the trial court

cited Officer Hunnicutt's testimony claiming that K.W. alleged being shown the

pornography in a different county, the decision to deny the discovery would have

been equally supported by Petitioner's admission that it was a different computer

connected to the television: "the old computer not the one (inaudible) [K.W.'s

mother] has at home" (PCR Ex. 8 at pg. 1).  Petitioner and his trial counsel both

have since admitted at the PCR hearing that they had no knowledge of whether

there would be evidence of the pornography on the mother's computer (PCR Tr. Vol.

III 89-90, 240).

Brief of Appellee
State of Indiana

Based on Petitioner's lack of knowledge, the PCR reasonably found that Petitioner would not have been entitled to search the mother's computer even if Officer Hunnicutt had testified accurately (PCR App. Vol. III 83). The PCR court observed that if Petitioner and his counsel had no knowledge that evidence of K.W.'s accusation would be on the computer, then the discovery request was merely a "fishing expedition" (PCR App. Vol. III 83). Petitioner even acknowledged he was also requesting the discovery to see if the mother's computer might contain some other relevant evidence—which he speculated might be "chat rooms" discussing the accusations or "pornographic sites that may have [been] access[ed] by the child" (DA Tr. 81). As the State argued to the trial court, such conjecture does not meet the requirements for discovery (DA Tr. 82). *See Dillard v. State*, 257 Ind. 282, 290, 274 N.E.2d 387, 391 (1971) ("We do not require … that the criminal defendant be allowed a fishing expedition."); *see also Crawford*, 948 N.E.2d at 1168 (finding the particularity requirement "prohibits the requesting party from engaging in an impermissible 'fishing expedition'"). Petitioner has not shown ineffective assistance because he has not shown that competent counsel would have made additional efforts to access the mother's computer or would have been granted access.

Petitioner also presented no evidence of prejudice. Petitioner "has the burden of demonstrating by a preponderance of the evidence that he is entitled to post-conviction relief." *Hall v. State*, 849 N.E.2d 466, 473 (Ind. 2006). Petitioner made no showing that relevant evidence actually existed on the computer, but instead admits he does not know what was on the computer (PCR Tr. Vol. III 89-90,

30

Brief of Appellee
State of Indiana

240).  Additionally, Petitioner's claims for discovery focused on the possibility that

the computer might contain an alternative source for K.W. "getting this information

[of sexual acts] … which she has used to make allegations against" Petitioner (DA

Tr. 81, 87-88).  But Petitioner did not need to search the mother's computer to make

that argument as the mother admitted at trial that she had downloaded

pornography to her computer and that K.W. had access to the same computer (DA

Tr. 485-87).  Without any evidence even suggesting that the computer contained

additional evidence relevant to K.W.'s accusations, Petitioner has not shown that he

is entitled to relief.

### B.  Petitioner has not shown that his trial counsel should have made additional efforts to obtain officers' disciplinary files.

Petitioner also has not shown ineffective assistance or prejudice regarding his

trial counsel not raising objections or making other efforts to search officers'

disciplinary files.  Again, a criminal defendant is only entitled to discover evidence

if he can show the items requested are "material to the defense (relevance or

materiality)."  *Crawford*, 948 N.E.2d at 1168.  "An item is "material" if it appears

that it might benefit the preparation of the defendant's case."  *In re WTHR-TV*, 693

N.E.2d 1, 7 (Ind. 1998); *see also Lundy v. State*, 26 N.E.3d 656, 661 (Ind. Ct. App.

2015).  "[T]hese requirements are not to be construed strictly against the defendant

but should be administered so as to maximize pre-trial discovery and the benefits to

the judicial system which flow therefrom."  *Hale v. State*, 54 N.E.3d 355, 359 (Ind.

2016).

Brief of Appellee
State of Indiana

Here, Petitioner has not shown that counsel would have been entitled to discovery about the officers' disciplinary record—or that it would have benefitted the defense—because there is no evidence that the discipline was relevant. Officer Hunnicutt testified at the PCR hearing that his discipline was not related to any police investigation and was not related to this case (PCR Tr. Vol. III 156). The PCR court found that Petitioner had not proven materiality because "[t]here was no nexus between evidence Mel Hunnicutt viewed adult pornography while employed as detective and Petitioners criminal offenses" (PCR App. Vol. III 82). This conclusion was not clearly erroneous.

In his motion to reopen evidence, Petitioner also sought to present evidence that Officer Faucett—an officer involved in the search of Petitioner's apartment in Warsaw—was disciplined around the time of Petitioner's arrest (PCR App. Vol. III 26). But this issue is not properly before this Court because Petitioner raised no claim in his PCR petition regarding counsel's failure to investigate Officer Faucett (PCR App. Vol. II 117-21). Instead, Petitioner conceded in his second motion to amend his PCR petition that he had not raised a claim regarding Officer Faucett (PCR Vol. III 200). Again, issues not raised in the PCR petition cannot be raised for the first time in the post-conviction appeal. *Allen*, 749 N.E.2d at 1171. Additionally, Petitioner presented no evidence in support of this claim as the PCR court denied his request to supplement the record (PCR App. Vol. II 14, III 33). And Petitioner's motion to re-open the evidence does not even suggest that Petitioner even now knows the nature of Officer Faucett's discipline and instead admits that

Brief of Appellee
State of Indiana

Faucett's employer "has not yet decided whether to reveal further details concerning these matters" (PCR App. Vol. III 26).  Petitioner's evidence shows neither ineffective assistance nor prejudice from failing to obtain the officers' files.

### C.  Petitioner has not shown that effective representation required trial counsel to present witnesses or to cross-examine K.W.

The PCR court also properly rejected Petitioner's claim that trial counsel should have presented evidence and cross-examined K.W.  Counsel has "considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review." *Stevens*, 770 N.E.2d at 746-47.  "'[T]rial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness.'" *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (quoting *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998)).  Evidentiary decisions are a question of trial strategy and an appellate court "will not second-guess what appears to be the sort of reasonable choice litigators make." *Grinstead v. State*, 845 N.E.2d 1027, 1035 (Ind. 2006).

At the outset, much of Petitioner's claim regarding counsel's failure to present evidence is waived because it was not included in his PCR petition.  Again, "[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen*, 749 N.E.2d at 1171.  In his amended PCR petition, Petitioner did not claim counsel should have called J.S. or Dawn Rose as witnesses (PCR App. Vol. II 112-21).  Petitioner did raise a claim that counsel should have deposed J.S. in preparation for trial, but the PCR court properly

Brief of Appellee
State of Indiana

rejected that claim observing "[t]he mere fact that trial counsel did not depose witnesses does not in and of itself demonstrate ineffective assistance of counsel. *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997)." (PCR App. Vol. III 16).

The only part of this claim presented in the PCR petition was Petitioner's contention that counsel should have cross-examined K.W. (PCR App. Vol. II 120). However, Petitioner does not present any argument explaining why effective representation required cross-examination. Bald assertions of counsel's omissions or mistakes are inadequate to support a PCR claim of ineffective assistance of counsel. *Tapia v. State*, 753 N.E.2d 581, 587-88 (Ind. 2001); *see also* Ind. App. Rule 46(A)(8) (requiring appellate arguments to be supported by cogent reasoning and authority); *Cooper v. State,* 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the failure to present a cogent argument or citation to authority constitutes waiver of issue for appellate review). This issue should also be found waived.

Moreover, arguments about the scope of cross examination generally will not support a claim of ineffective assistance because "[i]t is well settled that the nature and extent of cross-examination is a matter of strategy delegated to trial counsel." *Myers v. State*, 33 N.E.3d 1077, 1101 (Ind. Ct. App. 2015). Here, Petitioner contended in his amended PCR petition that counsel should have used cross-examination to "have [K.W.] describe the unusual marking on [Petitioner's] penis" (PCR App. Vol. II 120). However, counsel decided not to question K.W. about her description of Petitioner's penis because an accurate description at trial "would be the nail in his coffin" (PCR Tr. Vol. III 103-04, 108). Additionally, as K.W. was

Brief of Appellee
State of Indiana

providing clear and consistent descriptions of Petitioner's crimes (DA Tr. 516-38,

542-49), any efforts to cross-examine her may have only undermined counsel's

planned defense.  Petitioner has not shown that forgoing cross-examination was

anything other than a reasonable trial strategy.

For the waived claims, Petitioner even now does not show that effective

representation required his counsel to call J.S. or Petitioner's girlfriend as

witnesses.  Instead, the PCR court reasonably found that both witnesses had little if

any relevant knowledge of K.W.'s allegations (PCR App., Vol. II 71). With regard to

J.S., the PCR court observed that the child's testimony would not have been

persuasive:

> [J.S.] would have been four years-old when the crimes for which
> Petitioner was convicted occurred. [J.S.] indicated that he is upset
> about Petitioner being convicted and he wants to help Petitioner.
> Furthermore, [J.S.]'s family has frequently discussed Petitioner's case
> in his presence since he was young child and he has acquired
> information about Petitioner's case from the internet. [J.S.]'s testimony
> is suspect given that he is biased and was extremely young when
> Petitioner's crimes occurred. As such, Petitioner has failed to establish
> how [J.S.]'s testimony would have been persuasive for Petitioner's case
> at trial.

(PCR App. Vol. III 71).  The PCR court observed that the girlfriend's PCR testimony

"did not indicate that [she] was an eyewitness" and would only provide evidence

that "there was nothing weird or disturbing and she trusted her children with

Petitioner" (PCR App. Vol. III 71).  This was not important or particularly probative

evidence.

Instead of presenting weak evidence, Petitioner's counsel decided to forgo

presentation of evidence and focus the defense on whether the State proved its case

Brief of Appellee
State of Indiana

beyond a reasonable doubt (PCR Tr. Vol. III 77-78).  This was a reasonable trial

strategy because none of the available witnesses had any knowledge that would

contradict the State's evidence—except arguably J.S. whose knowledge related only

to a small detail of the crimes and would likely be found unreliable because of his

young age.  Without presenting evidence, counsel could still focus on the lack of

physical evidence supporting the extensive allegations.  A "counsel's strategy to put

the State to its burden and not present a defense, like other strategic decisions, is a

legitimate trial strategy." *White v. State*, 25 N.E.3d 107, 134 (Ind. Ct. App. 2014)

(citing *Rondon v. State,* 711 N.E.2d 506, 520 (Ind. 1999)), *trans. denied.*  It was also

not unreasonable to adopt this strategy midtrial, even with witnesses available,

because "as a trial unfolds, events occur, some unexpected, that counsel must react

to in real time." *McCullough v. State,* 973 N.E.2d 62, 76 (Ind. Ct. App. 2012), *trans.*

*denied.*  Petitioner has not shown that this was an unreasonable strategy or that he

suffered prejudice. Indeed, there is no reason to think that a defense focused on

claims of good character, the memory of a four-year old who was not in the same

room, or attempts to challenge the victim though cross-examination would have

been more successful.

**D.  Petitioner has not shown that trial counsel was ineffective during**
**closing argument by rhetorically saying "I believe her" when discussing**
**the State's significant burden.**

Petitioner also has not shown he was entitled to relief based on his counsel's

closing argument.  When viewed in context, Petitioner's challenged statements were

part of a reasonable trial strategy and did not suggest that counsel personally

Brief of Appellee
State of Indiana

believed Petitioner to be guilty.  A reviewing court "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

Petitioner claims counsel used "damaging phrases" during closing argument including "I believe her" and "Eric is guilty" that amounted to ineffective assistance (Appellant Br. 356-36).  The challenged statements were part of the defense's strategy to argue the State could not meet its significant burden—despite K.W.'s testimony—without corroborating evidence:

> No witnesses, no eye witness, no DNA, because there's no evidence that they went to look for any to tell us one way or the other.  But yet, he's accused.  We submit that the evidence is that [K.W.'s] testimony is unsubstantiated.  That it is not enough.  We submit that you may return verdict of not guilty based upon the unsubstantiated testimony of [K.W.].  There is nothing to use [to] corroborate what she said.  There is nothing to substantiate.  Now, it doesn't mean that you cannot believe her, if you were in civil court, you certainly could. I believe her, it's more likely than not, but clearly under the standard of clear and convincing evidence, or probably. But in criminal court, we're submitting that as juror you should require some, you should require corroboration to exclude any reasonable doubt.
>
> ...
>
> Not guilty. You can't convict on suspicion. Possibly guilty?  No. Preponderance of the evidence?  On civil case we could, we're in a criminal case, so it's not enough here.  Is he probably guilty? Can't do it here.  Maybe in a civil case. Clear and convincing evidence?  In civil case maybe, but not here.  Reasonable doubt? Not in criminal court, it has to be only if it's beyond reasonable doubt.
>
> ...
>
> There is no evidence that anybody checked for a stain on a towel, ... dried semen, any evidence in that house.  That creates reasonable

Brief of Appellee
State of Indiana

> doubt.  A reasonable doubt can arise from the uncorroborated
> testimony of the witness.  You could listen to [K.W.] and doubt it.  You
> don't have to accept it.  You could accept it, but again it has to be
> beyond a reasonable doubt.  All reasonable doubt must be excluded
> before you can return verdict of guilty.
>
> …
>
> Eric Skeens must not be convicted on suspicion, speculation, or that
> you believe he is probably guilty.  It's not enough for the State to show
> he is probably guilty.  Look for that instruction, it's there … it's not
> enough.  Even if you think the evidence is shown that Eric's probably
> guilty, that is not enough.  You must return verdict of not guilty.
> Listen to the Judge's instructions. You will hear probably guilty is not
> enough to convict.  It is the Prosecutor's complete obligation to prove to
> each of you individually beyond reasonable doubt that Eric is guilty.
> He is not required to prove or explain anything.

(DA Tr. 672-76).  While maybe it was possible to make the same arguments without

using the phrases Petitioner cites, the challenged phrases were important to

counsel's argument that the jurors could believe K.W. and still not find that the

State had met its heavy burden.  Using those terms was part of a reasonable trial

strategy, and "[i]solated mistakes … [and] instances of bad judgment do not

necessarily render representation ineffective."  *Stevens*, 770 N.E.2d at 746.  This

Court should reject Petitioner's invitation to view phrases out of context or to

second-guess the most effective wording for his argument.

Additionally, as the PCR court found below, the amended PCR petition only

claimed ineffective assistance for counsel using the phrase "I believe her" (App. Vol.

II 119, III 74).  Other parts of this claim are waived because issues not raised in the

PCR petition are unavailable on appeal.  *See Allen*, 749 N.E.2d at 1171.  The PCR

Court reasonably found that counsel's use of the phrase "I believe her" while

Brief of Appellee
State of Indiana

attempting "to persuade the jury to find that the State failed to meet its burden of proof without corroborating evidence, even if the jury believed the victim under lesser standard than proof beyond reasonable doubt" established neither ineffective assistance nor prejudice (PCR App. Vol. III 74). Petitioner has not shown that this finding was clearly erroneous.

### E.  Petitioner has not shown that trial counsel failed to effectively challenge the State's expert witness testimony.

Petitioner has not shown his trial counsel was ineffective for "allowing … witnesses to testify as experts" based on his claim the witnesses "were never identified as experts and … never disclosed their testimony prior to trial, in the discovery, as was requested and as is required by law" (Appellant Br. 38-39).

At the outset, the State observes that Petitioner is again improperly raising a different claim than he raised in his PCR petition.  In his amended petition, Petitioner alleged the expert evidence could be excluded because the State did not make disclosures he argued were required by Indiana Trial Rule 16 (PCR App. Vol. II 119).  However, as the PCR court found, that argument lacked merit as Indiana Trial Rule 16 only requires a party to identify witnesses and does not require that the witnesses be identified as experts (PCR App. Vol. III 79).  *See* Ind. Trial Rule 16(C)(4).  Instead, the PCR Court reasonably found "the State complied with Indiana Rule of Trial Procedure 16(C)(4) and was not required to provide summary of the content and basis of witness testimony" (PCR App. Vol. III 7).

Brief of Appellee
State of Indiana

On appeal, Petitioner instead contends that expert disclosures were

requested and required under Trial Rule 26(B)(4), which permits a party to seek

expert discovery through interrogatories:

> (a)(1) A party may through interrogatories require any other party to
> identify each person whom the other party expects to call as an expert
> witness at trial, to state the subject matter on which the expert is
> expected to testify, and to state the substance of the facts and opinions
> to which the expert is expected to testify and a summary of the
> grounds for each opinion.

However, there is no evidence that Petitioner ever availed himself of this procedure.

On appeal, Petitioner repeatedly asserts this information was requested, but

he cites only to his "Motion for Pretrial Discovery" requesting an order which would

have required the State to produce "[a]ny report or statements of experts"

(Appellant Br. 37-39; PCR App. Vol. II 22-23).  But even that request did not ask

the State to identify expert witnesses, to identify studies experts would rely on, or

to summarize the expected expert testimony (PCR App. Vol. II 22-23).  More

importantly, Petitioner's motion for a pre-trial discovery order was denied, and the

parties were instead instructed to use the Court's "standard order" for discovery

(PCR App. 25).  *See* Huntington County Local Rule 35-CR-21-39 (standard discovery

order for criminal cases in Huntington County).  There is simply no evidence

suggesting Petitioner ever sought expert discovery pursuant to Trial Rule 26.

Petitioner also cites to federal cases requiring the disclosure of expert opinions

(Appellant Br. 38), but federal rules regarding discovery and the admission of

expert testimony—including federal procedural requirements for identification of

expert witnesses and disclosure of expected expert testimony—have no application

Brief of Appellee
State of Indiana

to Petitioner's state proceedings.  *See* Fed. Rules Crim, Proc. 1 (limiting application

to criminal action in federal court), 16 (allowing parties to request expert

disclosures).

    While his present claim should be found waived, Petitioner also has not

shown that his counsel was ineffective for failing to demand expert discovery or

adequately seeking to exclude that evidence at trial.  Petitioner makes no argument

alleging the testimony from K.W.'s play therapist, Lynn Baker, was inadmissible or

should have otherwise been addressed by counsel.  That issue should be found

waived.  *See* App. R. 46(A)(8); *Cooper,* 854 N.E.2d at 834 n.1.

    With regard to SANE Nurse Robison's expert testimony, Petitioner claims his

trial counsel "did not obtain the appropriate discovery" and "should have deposed

the SANE" nurse and moved to suppress the evidence (Appellant Br. 39).  But

Petitioner fails to show that the testimony could have been excluded or even that

his counsel was unprepared for the evidence.  Instead, the record shows that his

counsel knew exactly the type of evidence he would face and that it was admissible

(PCR Tr. Vol. III 85-86).  At the PCR hearing, trial counsel acknowledged that he

was not surprised by the expert testimony about the limited likelihood of finding

physical evidence of a sexual assault because he had other trials where similar

testimony was permitted from forensics nurses (PCR Tr. Vol. III 85-86).  Knowledge

about the nature and significance of injuries from sexual abuse is squarely within

the area of expertise of a SANE nurse.  Petitioner also had no evidentiary basis to

exclude the evidence because Indiana allows experts to testify "based on

Brief of Appellee
State of Indiana

inadmissible evidence, provided that it is of the type reasonably relied upon by

experts in the field." Ind. Evid. Rule 703.

Indeed, Indiana case law is replete with similar or identical testimony from

medical providers explaining why they would not necessarily expect to find an

injury or physical evidence from child sexual abuse. *See Alvarez-Madrigal v. State*,

71 N.E.3d 887, 891 (Ind. Ct. App. 2017) ("overall about 4 to 5 percent of children

who have been victims of sexual abuse will have some kind of obvious physical

evidence of penetration or sexual abuse. In my experience I've probably seen one."),

*trans. denied*; *Carter v. State,* 31 N.E.3d 17, 25 (Ind. Ct. App. 2015) ("lack of injury

does not mean an assault did not occur and that, in the vast majority of cases, there

is no visible injury"), *trans. denied*; *Surber v. State*, 884 N.E.2d 856, 861 (Ind. Ct.

App. 2008) (in child molest case, community hospital nurse was not surprised by the

lack of physical evidence because in 95% of child abuse sex abuse cases, physical

evidence is not present), *trans. denied*. As counsel had reason to expect this

evidence and no valid way to exclude it, Petitioner cannot show that he was

somehow harmed by counsel's failure to conduct additional discovery or otherwise

challenge Nurse Robison's claims.

Additionally, much of Nurse Robison's testimony was from her own extensive

experience with prior victims of sexual assault (DA Tr. 555, 593). Because this

knowledge is based on her own experience and observations, that testimony was

admissible as skilled witness testimony—which is different than expert testimony.

*See Davis v. State*, 791 N.E.2d 266, 269 (Ind. Ct. App. 2003) (finding officer could

Brief of Appellee
State of Indiana

testify on intent to deliver as a skilled witness based on his 16 years' experience as

a police officer including over six years concentrating on drug crimes), *trans. denied*.

Again, Petitioner has not shown that the PCR court clearly erred in denying relief.[4]

### III.
### Petitioner is not entitled to PCR relief
### on his claims of ineffective assistance of appellate counsel.

The PCR court also properly denied Petitioner's claims of ineffective

assistance of appellate counsel.  The Sixth Amendment entitles a criminal

defendant to the effective assistance of counsel not only at trial but also during his

first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  "The standard of

review for a claim of ineffective assistance of appellate counsel is the same as for

trial counsel."  *Trueblood v. State*, 715 N.E.2d 1243, 1256 (Ind. 1999).  Indiana

courts recognize three different grounds for claims of ineffective assistance of

appellate counsel:  (1) denial of access to an appeal; (2) failure to raise issues on

appeal; and (3) failure to present issues well.  *Massey*, 955 N.E.2d at 258.

---

[4] Petitioner also argues cumulative error as part of his final claim of
ineffective assistance of trial counsel.  Errors by counsel "that are not individually
sufficient to prove ineffective representation may add up to ineffective assistance
when viewed cumulatively."  *French v. State*, 778 N.E.2d 816, 826-27 (Ind. 2002).  A
conviction based upon an accumulation of defense attorney errors, when counsel's
mistakes do substantial damage to the defense, must be reversed.  *Id.* (citing
*Williams v. State*, 508 N.E.2d 1264, 1268 (Ind. 1987)).  However, this issue was not
raised in his amended petition for post-conviction relief (PCR App. Vol. II 112-21).
Issues not raised in a petition for post-conviction relief may not be raised for the
first time on appeal.  *Emerson v. State*, 812 N.E.2d 1090, 198-99 (Ind. Ct. App.
2004).  And Petitioner has not shown any ineffective assistance.  Therefore, the
alleged errors cannot amount to cumulative error.

Brief of Appellee
State of Indiana

**A. Petitioner has not shown appellate counsel was ineffective for failing to raise a claim about the denial of discovery from the mother's computer.**

Petitioner has not shown that effective representation required appellate counsel to raise a claim about the request for discovery from the mother's computer. To establish deficient performance for failing to raise an additional appellate issue, a petitioner must show that the unraised issue was "clearly stronger" than the issues that were raised. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997). Even if counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail. *Stevens*, 770 N.E.2d at 760 (appellate counsel's strategic decision to include or exclude issue should be deferred to unless it is "unquestionably unreasonable"). This Court "rarely find[s] appellate counsel's performance ineffective when the issue is counsel's failure to raise a claim on direct appeal." *Taylor v. State*, 882 N.E.2d 777, 782 (Ind. Ct. App. 2008)

At the outset, this claim should be found waived because it was not presented in the PCR petition (PCR App. Vol. II 121). As explained above, only claims raised in the PCR petition can be raised in a PCR appeal. Here, Petitioner only claimed that appellate counsel failed to raise "issues that were preserved at trial"—and this issue was not preserved at trial (PCR App. Vol. II 121). On appeal, Petitioner appears to contend this was a "preserved issue" based on the pretrial motion (Appellant Br. 43). But a claim of error must generally be raised during trial in order to preserve the issue for appeal. *See Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009).

44

Brief of Appellee
State of Indiana

Waiver aside, the issue could have only been raised on direct appeal as fundamental error. Fundamental error is an "extremely narrow exception" to the contemporaneous objection requirement. *Gavin v. State*, 41 N.E.3d 1038, 1042 (Ind. Ct. App. 2015). The fundamental error exception addresses only blatant violations of basic principles which render the trial unfair to the defendant, and thereby deprives the defendant of fundamental due process. *Pattison v. State*, 54 N.E.3d 361, 366 (Ind. 2016); *see also Winkleman v. State*, 22 N.E.3d 844, 849 (Ind. Ct. App. 2014), *trans. denied*. To qualify as fundamental error, the "error must be so prejudicial to the rights of the defendant as to make a fair trial impossible" and must "constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Absher v. State*, 866 N.E.2d 350, 354 (Ind. Ct. App. 2007). Thus, the fundamental error exception is available only in "egregious circumstances." *Brown v. State,* 929 N.E.2d 204, 207 (Ind. 2010).

As described above, Petitioner's appellate counsel could not have shown error or fundamental error based on denial of the computer discovery. While the PCR evidence indicates that Officer Hunnicutt misstated during the discovery hearing K.W.'s allegation of where K.W. was shown pornography, the trial court was never presented with evidence of this misstatement or asked to reconsider the denial of the request for non-party discovery. On appeal, Petitioner speculates that appellate counsel would still have raised the discovery issue "had he obtained the hearing from the probable cause/search warrant hearing" (Appellant Br. 43). But that

45

Brief of Appellee
State of Indiana

hearing was entered as evidence at the PCR hearing and does not discuss the

location of where K.W. was shown the pornography (PCR Ex. 2). Moreover, the

direct appeal record does not show the discovery would have been allowed but for

the officer's misstatement. Even if K.W. was claiming she watched the pornography

in Huntington County, Petitioner presented no evidence showing that those

pornographic films shown by Petitioner were from the mother's computer or that

the computer otherwise had evidence of her allegations.[5] Thus, no viable appellate

claim existed because the record did not show that Petitioner was being denied

discovery of material evidence. *See Crawford*, 948 N.E.2d at 1168 (requiring

evidence be relevant or material to be entitled to discovery).

Petitioner also cannot establish that raising this claim on direct appeal would

have changed the result of his appeal. *See Stevens*, 770 N.E.2d at 760. A PCR

petitioner "has the burden of establishing his grounds for relief by a preponderance

of the evidence." *Hall v. State*, 849 N.E.2d 466, 472 (Ind. 2006). Petitioner has

never presented any evidence indicating the mother's computer actually contained

exculpatory evidence and instead admitted that he has no knowledge of evidence on

the computer (PCR Tr. Vol. III 89-90, 240). Petitioner also hoped the computer

---

[5] And we now know Petitioner could not have made such a showing because he knew a different computer was used to view the pornographic videos on the television at the Huntington County residence— "the old computer not the one (inaudible) she has at home" (PCR Ex. 8 at pg. 1). Also, Petitioner and his trial counsel both acknowledged during the PCR proceedings that they had no knowledge that the mother's computer actually contained relevant evidence (PCR Tr. 89-90, 240).

Brief of Appellee
State of Indiana

might have evidence that K.W. could have otherwise been exposed to pornography and could have used that knowledge to craft allegations (DA Tr. 81). But such evidence would not have aided the defense as the mother admitted viewing unrelated pornography on her personal computer and that K.W. had access to the same computer (DA Tr. 485-87). While this claim of ineffective assistance is waived, Petitioner also has not shown that the claim had merit or would entitle him to any relief.

**B. Petitioner has not shown appellate counsel was ineffective for failing to raise a claim about the expert testimony.**

There is also no merit to Petitioner's claim that appellate counsel failed to raise a clearly stronger claim challenging SANE Nurse Robison's testimony about studies and injuries to child victims of sexual abuse. On appeal, Petitioner makes only a passing claim that hearsay expert testimony may implicate confrontation rights if a defendant is not afforded the opportunity to review the underlying information (Appellant Br. 44). This undeveloped claim should be found waived. *See* Ind. Appellate Rule 46(A)(8)(a) ("argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning"). Also, such a direct appeal claim would not have succeeded.

Expert testimony based on scientific studies does not violate the federal Confrontation Clause. Instead, "the Confrontation Clause applies only to testimonial statements, that is, '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Everroad v. State*, 998 N.E.2d 739, 742 (Ind. Ct. App. 2013) (quoting *Crawford v. Washington,* 541 U.S. 36, 51 (2004)),

47

Brief of Appellee
State of Indiana

*trans. denied.* A scientific study prepared for publication—and not for litigation—compiling statistics on sexual assault injuries is not testimonial. *See Ackerman v. State*, 51 N.E.3d 171, 189 (Ind. 2016) (finding autopsy report was non-testimonial); *Everroad*, 998 N.E.2d at 742 (evidence from a glossary of terms is non-testimonial); *cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (finding there is a right confront an analyst who prepares a scientific report for trial). Petitioner is mistaken that he has a constitutional right "to cross-examine the persons who prepared the data on which the expert opinion is based" (Appellant Br, 44). Instead, Petitioner had a constitutional right to cross-examine Nurse Robison about her expert testimony and did cross-examine her at length including about her reliance on the injury data (DA Tr. 596-607).[6] No violation of Petitioner's right to confront occurred.

## C. Any other claims of ineffective assistance of appellate counsel should be deemed waived.

Finally, Petitioner makes passing claims that his appellate counsel was ineffective for failing to raise appellate claims based on other preserved objections—which he lists without explanation or argument (Appellant Br. 45)—and based on appellate counsel not availing the *Davis-Hatton* procedure (Appellant Br. 45-46). However, Petitioner provides no authority or argument showing that counsel failed

---

[6] Petitioner also objected that Nurse Robison's testimony was hearsay (DA Tr. 591-92). However, expert testimony is not subject to exclusion based on the rule against hearsay. *See* Ind. Evid. Rule 703. Instead, our evidence rules allow an expert to "testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." *Id.*

Brief of Appellee
State of Indiana

to raise valid appellate claims. *See* Ind. Appellate Rule 46(A)(8)(a), (b) (requiring

appellants to support their arguments with cogent reasoning, citations to relevant

authority, and the applicable standard of review). With regard to the *Davis-Hatton*

argument¸ Petitioner does not explain or even suggest how he was somehow harmed

by the separate proceedings.

The PCR court properly rejected these claims:

> Petitioner has not shown that he was prejudiced by appellate counsel
> not including additional arguments in the appeal as he has not
> provided any evidence that there is reasonable probability the outcome
> of his appeal would have been different but for the inclusion of these
> issues.

(PCR App. Vol. III 78-79). Because Petitioner has not shown this finding to be

clearly erroneous, this Court should affirm that decision.

## CONCLUSION

For the foregoing reasons, the State respectfully urges that the PCR court be

affirmed.

Respectfully submitted,

CURTIS T. HILL, JR.
Attorney General of Indiana
Attorney No. 13999-20

/s/ Justin F. Roebel
Justin F. Roebel
Supervising Deputy Attorney General
Attorney No. 23725-49

*Attorneys for Appellee*

Brief of Appellee
State of Indiana

## CERTIFICATE OF WORD COUNT

I verify that this brief contains no more than 14,000 words. This brief contains 12,062 words. The word count was conducted by selecting all portions of the brief not excluded by Indiana Appellate Rule 44(C) and selecting Review/Word Count in Microsoft Word, the word-processing program used to prepare this brief.

/s/ Justin F. Roebel
Justin F. Roebel
Supervising Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that on September 9, 2020, I electronically filed the foregoing document using the Indiana E-Filing System (IEFS). I also certify that on September 9, 2020, the foregoing document was served upon opposing counsel via IEFS, addressed as follows:

Cynthia M. Carter
attorneycarter@cynthiamcarterlaw.com

/s/ Justin F. Roebel
Justin F. Roebel
Supervising Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 West Washington Street, Fifth Floor
Indianapolis, Indiana 46204-2770
Tel: (317) 232-7635
Justin.Roebel@atg.in.gov