## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 30 2020, 10:56 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Benson Skeens, *Appellant-Petitioner,* | November 30, 2020 |
| | Court of Appeals Case No. 20A-PC-686 |
| v. | Appeal from the Huntington Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Davin G. Smith, Judge |
| | Trial Court Cause No. 35C01-1101-PC-4 |

**Weissmann, Judge.**

[1] Convicted of five felony counts of child molestation and now serving ninety years in prison, Eric Skeens appeals the denial of his petition for post-conviction relief because he believes he received ineffective assistance of counsel. His claims boil down to reconsideration of legal strategies as well as unsubstantiated conjecture concerning the possible existence of pornography he failed to obtain in time for trial. Skeens's arguments are unavailing, and we therefore affirm the trial court's order denying relief.

# Facts

[2] A jury convicted Skeens of five felony counts of child molestation involving his stepdaughter, K.W., who was seven and eight years old at the time of the crime. The trial court subsequently sentenced Skeens to an aggregate sentence of 187 years, but this Court deemed his sentence inappropriate and reduced the sentence to ninety years.

[3] Skeens filed a petition for post-conviction relief, raising a myriad of ineffective assistance of counsel claims. Finding none of Skeens's allegations meritorious, the trial court denied Skeens's post-conviction petition. We find no fault with that decision.

# Discussion and Decision

[4] The applicable standards for post-conviction relief are well-established:

> Post-conviction proceedings are civil proceedings in which a defendant may present limited collateral challenges to a conviction and sentence. Ind. Post-Conviction Rule 1(1)(b);

> *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). The scope of potential relief is limited to issues unknown at trial or unavailable on direct appeal. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). "Issues available on direct appeal but not raised are waived, while issues litigated adversely to the defendant are res judicata." *Id.* The defendant bears the burden of establishing his claims by a preponderance of the evidence. P.-C.R. 1(5). When, as here, the defendant appeals from a negative judgment denying post-conviction relief, he "must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Ben-Yisrayl v. State,* 738 N.E.2d 253, 258 (Ind. 2000). When a defendant fails to meet this "rigorous standard of review," we will affirm the post-conviction court's denial of relief. *DeWitt v. State*, 755 N.E.2d 167, 169–70 (Ind. 2001).

*Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019). Most free-standing claims of error are not available in a postconviction proceeding because those claims should have been presented in prior proceedings. However, because ineffective assistance of counsel claims are properly presented in a postconviction proceeding, a defendant may use a potential legal mistake to bolster his claim that his attorneys failed to effectively represent him. *Timberlake v. State*, 753 N.E.2d 591, 597-98. (Ind. 2001).

[5] Skeens initially argues that a legal error occurred when he suffered a *Brady* violation. A *Brady* violation occurs when the prosecution withholds material evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83 (1963); *Minick v. State*, 698 N.E.2d 745 (Ind. 1998). We are unconvinced Skeens had a viable *Brady* claim. Assuming he did, the claim was waived because it was not raised at trial or in his direct appeal. *See Timberlake*, 753 N.E.2d at 597. We consider

Skeens's *Brady* claim under his ineffective assistance of trial counsel claim instead.

[6] To prove ineffective assistance of counsel, Skeens must show: "(1) that his counsel's performance fell short of prevailing professional norms, *and* (2) that counsel's deficient performance prejudiced his defense." *Gibson*, 133 N.E.3d at 682 (citing *Strickland v. Washington*, 466 U.S. 668, 683 (1984)) (emphasis in original). The *Gibson* court stated:

> A showing of *deficient performance* under the first of these two prongs requires proof that legal representation lacked "an objective standard of reasonableness," effectively depriving the defendant of his Sixth Amendment right to counsel. *Overstreet v. State*, 877 N.E.2d 144, 152 (Ind. 2007) (citing *Strickland*). To demonstrate *prejudice*, the defendant must show a reasonable probability that, but for counsel's errors, the proceedings below would have resulted in a different outcome. *Wilkes*, 984 N.E.2d at 1240-41 (citing *Strickland*).

*Id.* (emphases in original). There is a strong presumption that counsel acted reasonably, and counsel's discretion in making strategic decisions receives deferential review. *Id.* Counsel's "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* (quoting *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002)).

## I. Trial Counsel

[7] Skeens argues that his trial counsel was ineffective for: (1) failing to preserve issues related to Mother's computers; (2) failing to obtain police disciplinary

records; (3) failing to lodge a vigorous defense, which should have included exculpatory witnesses and cross-examination of K.W.; (4) failing to properly prepare for and object to expert witness testimony; and (5) bolstering the prosecution's argument in closing.

## A.  Mother's Computers

[8]  First, Skeens argues that trial counsel was ineffective for failing to preserve a *Brady* claim.[1] Skeens alleges the State elicited false testimony that prevented him from accessing Mother's computers, which he believes might have contained pornography. According to Skeens, this information might have convinced the jury that K.W. created a false molestation narrative using information gained from the graphic sexual display. This argument has no traction because: (1) the record does not show the State knew the contents of Mother's computers and then knowingly withheld that information from Skeens; (2) Skeens presented no evidence that Mother's computer contained pornography or that if it did, K.W. saw the images; and (3) even if K.W. had observed pornography on Mother's computers, Skeens has not explained how K.W. could have used pornography alone to testify to her personal experience of sex acts.

---

[1] Skeens also gestures toward a claim of prosecutorial misconduct.  We will not address this claim because he did not make a cogent argument with citation to relevant authorities.  *See* Ind. Appellate Rule 46(A)(8)(a) (requiring appellant to support contentions in brief with cogent argument and citations to supporting authority).

[9] *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *Minick*, 698 N.E.2d at 755 (Ind. 1998).

[10] Skeens's *Brady* claim centers on K.W.'s assertion she watched pornography on a computer located in Huntington. At a pretrial hearing, Officer Hunnicutt wrongly claimed K.W. only saw pornography in a different county. At the PCR hearing, the officer admitted this testimony was wrong. PCR Tr. Vol. III p. 151-53. The trial court relied at least in part on Officer Hunnicutt's misstatement of the evidence to deny Skeens's pre-trial motion to access Mother's computers, which were in Huntington. Direct Appeal Appellant's App. Vol. I p. 99. Skeens believes Mother's computers would have shown that Mother, not Skeens, was the source of K.W.'s knowledge of adult sex acts. He also argues that the State purposefully presented false testimony with the intent to prevent him from accessing this exculpatory evidence.

[11] Skeens offers no evidence that the State ever possessed or searched Mother's computers. PCR Tr. Vol. III p. 146, 212. Nor is there anything in the record, other than Skeens's conjecture, to indicate Mother's computers contained pornography. Appealed Order p. 21-23.

[12] Even if trial counsel should have addressed the possibility of pornography, Skeens cannot show prejudice. If the record had contained evidence that Mother's computers contained sexual images, Skeens still would have had to prove K.W. saw those graphic sexual images. And even if he jumped that evidentiary hurdle, he would have faced the formidable task of convincing the jury that pornography was the sole source of the young child's testimony that Skeens's penis felt "smooth," it "hurt" when Skeens penetrated her, and her vagina "burned" afterwards. Direct Appeal Tr. Vol. III p. 22, 24, 37. Skeens offers no basis other than speculation that Mother's computer possessed exculpatory evidence which had been suppressed by the State. Therefore, the post-conviction court did not err by finding trial counsel was not ineffective on this basis.

## B. Police Disciplinary Records

[13] Second, Skeens argues that trial counsel should have obtained disciplinary records for Officer Hunnicutt, who was disciplined for viewing pornography at work at the time of Skeens's trial.[2] Skeens argues Hunnicutt's disciplinary history is relevant because K.W. testified Skeens showed her pornography. However, Skeens fails to establish any connection between his charges and Officer Hunnicutt's discipline other than they both involved pornography. PCR Tr. Vol. III p. 15. Moreover, if trial counsel had obtained this information, it is

---

[2] Skeens also seems to argue that trial counsel should have obtained the disciplinary record of a second investigating officer. This argument is so vague and non-cogent, we are unable to address it.

unclear what he would have done with it. Neither party called Officer Hunnicutt as a witness at Skeens's trial, and he does not challenge that omission.

[14] Failing to obtain Officer Hunnicutt's disciplinary record was not objectively unreasonable. Therefore, the post-conviction court did not err in finding that trial counsel was not ineffective on this basis.

## C. Vigorous Defense

[15] Third, Skeens argues that trial counsel was ineffective for failing to cross-examine K.W. and failing to present exculpatory witnesses. Skeens argues that trial counsel should have asked K.W. about the unusual markings on his penis. Appellant's App. Vol. II p. 120. Trial counsel testified that he ultimately elected to forego this line of questioning for fear of corroborating K.W.'s story. PCR Tr. Vol. II p. 84, 103. We owe this strategic decision deferential review. *See Gibson*, 133 N.E.3d at 689. Under that lenient standard, we cannot find counsel's performance deficient.

[16] Trial counsel's decision not to present other witnesses also was strategic. The post-conviction court found that trial counsel met with and interviewed the witnesses Skeens identified. Appealed Order p. 10. Some of these potential witnesses, like Skeens's ex-fiancée and his brother, were of limited usefulness. They were not present when the alleged abuse occurred and could not contradict directly K.W.'s account. Trial counsel testified:

> [O]ur trial strategy at the conclusion of the case was that the evidence was insufficient for that jury to conclude beyond a reasonable doubt if these things happened. . . . had we called witnesses or put [Skeens] on . . . the cross examination would've been a rehashing of all the evidence the jury already heard. . . . [The witnesses] really didn't do anything to be able to challenge that child's testimony because they weren't there.

PCR Tr. Vol. III p 78. Deciding not to call these witnesses was not unreasonable.

[17] As for trial counsel's decision not to call Skeens's son, J.S., we again defer to trial counsel's strategy. Though J.S. was the only other person in the house during the crime, he was not in the room when the sex acts occurred, and he was a small child. Trial counsel testified that calling child witnesses is risky because "you don't know exactly what they're going to say." PCR Tr. Vol. 3, pp. 86-87.

[18] In the post-conviction hearing, J.S. testified that his testimony would have contradicted K.W.'s testimony that Skeens locked the bedroom door to molest her uninterrupted. Direct Appeal Tr. Vol. III p. 46. J.S. stated that doors at his father's house were never locked. PCR Tr. Vol. III p. 175. Skeens fails to convince us of the utility of J.S.'s testimony. Moreover, counsel's strategic decision not to call the small child as a witness was not unreasonable. Therefore, the post-conviction court did not err by finding that trial counsel was not ineffective on this basis.

## D. Expert Witness Testimony

[19] Fourth, Skeens argues that trial counsel was ineffective in his pre-trial preparation and cross-examination of State's witnesses Sharon Robison, the sexual assault nurse examiner, and Lynn Baker, K.W.'s therapist. Skeens argues that both witnesses were undisclosed expert witnesses who relied on studies that trial counsel was never provided and did not obtain. Skeens argues that trial counsel was deficient because "he failed to move to suppress Robison's testimony after he failed to conduct an adequate investigation before trial by not obtaining Robison's testimony in discovery or through a deposition." Appellant's Br. p. 40.

[20] "Failure to interview or depose State's witnesses does not, in itself, constitute ineffective assistance of counsel." *Williams v. State*, 724 N.E.2d 1070, 1076 (Ind. 2000). Skeens must show what additional information would have been discovered and how he was prejudiced by its absence. *Id.*

[21] Though trial counsel did not depose Robison or receive the studies she referenced ahead of trial, he frequently objected to her testimony and subjected her to vigorous cross-examination. Appealed Order p. 15, PCR Tr. Vol. III p. 85. Indeed, trial counsel moved for her testimony to be stricken and for a mistrial. PCR Tr. Vol. III p. 64; Direct Appeal Tr. Vol. III p. 84-85. Trial counsel testified that he anticipated the substance of Robison's testimony based on her testimony in past sexual assault trials. PCR Tr. Vol. III p. 85. Had trial counsel deposed Robison or accessed the studies she referenced in her

testimony, his objections and cross-examination likely would have been largely the same. This appears true of Baker as well; trial counsel cast doubt on her veracity and highlighted inconsistencies in K.W.'s statements to Baker. Appealed Order p. 10. We cannot agree with Skeens that trial counsel's performance was deficient in this respect. Therefore, the post-conviction court did not err by finding that trial counsel was not ineffective on this basis.

### E. Bolstering the Prosecution's Argument

[22] Fifth and finally, Skeens argues that trial counsel was ineffective for attesting to the victim's veracity, implying Skeens's guilt. In his closing arguments, trial counsel made the following statements:

> There is nothing to corroborate what [K.W.] said. Now, it doesn't mean that you cannot believe her, if you were in a civil court, you certainly could. *I believe her, it's more likely than not*, but clearly under the standard of clear and convincing evidence, or probably. But in a criminal court, we're submitting that as a juror you should require some, you should require corroboration to exclude any reasonable doubt. . . .

Direct Appeal Tr. Vol. III p. 162-78 (emphasis added).

[23]  Assuming that a reasonable attorney would not have made this statement,[3] we consider whether Skeens was prejudiced. Again, to demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result would have been different. *Gibson*, 133 N.E.3d at 682.

[24]  In this case, the evidence of Skeens's guilt was so substantial that it is not reasonably likely that trial counsel's ill-advised statement affected the result. A child molesting conviction may rest solely on the testimony of the alleged victim. *Baber v. State*, 870 N.E.2d 486, 490 (Ind. Ct. App. 2007). K.W. testified extensively to the abuse she suffered. Her testimony was specific and detailed. She described how Skeens would remove her clothing and then prop her up on the sink to penetrate her vagina with his penis. Direct Appeal Tr. Vol. III p. 18-22. She said it "hurt." *Id* at 22. She testified that he would place a towel under her to "wipe up white stuff that came out," and that when she used the

---

[3] The ambiguity of trial counsel's statement leads us to assume, without deciding, that it was unreasonable. The jury may have understood trial counsel to be saying, "I, Skeens's defense counsel, believe the victim when she says my client molested her, something he vociferously denies." Just as easily, the jury may have understood him to be saying, "You, the jury, may think to yourself: 'I believe the victim.'"

The former communication bears some similarity to that in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). In *McCoy*, the United States Supreme Court determined that trial counsel's formal concession of guilt against defendant's wishes violated defendant's Sixth Amendment-secured autonomy. In other words, trial counsel improperly decided for defendant that defendant would admit guilt. Because defendant's autonomy was at issue, rather than counsel's competence, the Court did not apply *Strickland*. Instead, the Court classified the error as structural and granted the defendant a new trial without requiring a showing of prejudice. *Id.* at 1511. Unlike ineffective assistance of counsel, abrogating defendant's autonomy in this manner impugns the legitimacy of the entire trial. *Id.*

This case is distinguishable. Although trial counsel implied that he disbelieved Skeens, he did not out-and-out assert, "[my client] committed these crimes," as counsel did in *McCoy*. *Id.* at 1506. Additionally, conceding guilt was not an intentional part of trial counsel's strategy in this case. Though we strongly urge attorneys to avoid this type of statement, trial counsel did not abrogate Skeens's Sixth Amendment-secured autonomy in making it.

bathroom afterward, her "private kind of burned." *Id.* at 19, 24. She further testified Skeens put his tongue on her vagina, and it felt "[w]et" and "[w]eird." *Id.* at 28. She said that he would use his fingers to "rub" her vagina and "the part where she goes potty" in "circles." *Id.* at 31-32. She said that sometimes he would make her "put his private in [her] mouth." *Id.* at 34. She described how his penis looked, and how it felt. *Id.* at 37, 40. She testified she was scared to tell anyone. *Id.* at 45. K.W.'s counselor reported that K.W. was in "emotional pain." *Id.* at 131. K.W.'s mom said K.W. suffered from frequent nightmares and bedwetting. Direct Appeal Tr. Vol. II p. 234.

[25] In closing, trial counsel repeatedly emphasized that the State had not proved Skeens guilty beyond a reasonable doubt. *Id.* at 161-180. Reasonable doubt—not the compelling nature of K.W.'s testimony—was the focus of trial counsel's argument. Skeens has not shown a reasonable probability that but for counsel's isolated ambiguous sentence in an eleven-page closing argument, the outcome would have been different.

## II. Appellate Counsel

[26] Skeens argues that appellate counsel was ineffective for: (1) failing to raise issues preserved at trial and (2) failing to pursue an early post-conviction proceeding. In evaluating whether appellate counsel was ineffective, we apply the same two-part *Strickland* test: (1) whether counsel was deficient and (2) whether that deficiency prejudiced the accused. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). When appellants argue that appellate counsel was

ineffective for failing to raise issues, we further consider whether the unraised issues were "significant and obvious upon the face of the record." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997). If so, we then compare those issues to those actually raised by counsel, only finding deficient performance when "ignored issues are clearly stronger than those presented." *Id.*

[27] Skeens first argues that appellate counsel on direct appeal was ineffective for omitting certain arguments. Though he lists alternate bases for appeal, Skeens neglects to identify which of those appellate counsel should have pursued, let alone what the arguments might be. In fact, appellate counsel aptly identified an error which convinced this Court to reduce Skeens's sentence by *half*—from 187 to 90 years. *Skeens*, No. 35A05-909-CR-515. Given Skeens's failure to explore the arguments he believes should have been made and counsel's actual success on direct appeal, we find the post-conviction court did not err by finding that appellate counsel was ineffective on this basis.

[28] Second, Skeens argues that appellate counsel's decision not to pursue a *Davis/Hatton* procedure was unreasonable. The *Davis/Hatton* procedure is a tool used in rare instances to allow defendants to pursue post-conviction relief prior to direct appeal. *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (Ind. 1977); *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993). Skeens implies that this unusual relief was the only reasonable course of action because early development of the record prior to direct appeal would have changed the outcome of the case. Had Skeens pursued a petition for post-conviction relief at an earlier stage, we have no reason to believe that his arguments—which we have addressed herein—

would have been any more successful than they are now. The post-conviction court did not err by finding that appellate counsel was not ineffective for failing to pursue or to advise Skeens concerning the *Davis/Hatton* procedure.

[29] The judgment of the post-conviction court is affirmed.

Bailey, J., and Vaidik, J., concur.